UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                               )
Etta Jalloh, on behalf of her
 minor child, R.H.,                            )

              Plaintiffs,                      )

              v.                               )          Civil Action No.07-0063 (RMC)
District of Columbia,
                                               )
              Defendant.                       )
_____)

## <u>NOTICE OF FILING ADDITIONAL PAGES OF</u> <u>ADMINISTRATIVE RECORD</u>

Defendant herewith submits for filing pages 196 through 235 of the

administrative record, which were inadvertently omitted when defendant filed the

administrative record on April 30, 2007.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

May 25, 3007

hearing.

HEARING OFFICER RUFF:  Right.

MR. TYRKA:  And the inference that we're asking for is, specifically that the records show that R███████ has not been making adequate progress at Hamilton.

HEARING OFFICER RUFF:  Yes, but I've got -- even if I were to make that threshold inference, she's, I'm going to give her the opportunity to put on her case. So I'm not going to make an inference that is despising the case.        MR. TYRKA: Well the defendant is always allowed to defend it's case.

HEARING OFFICER RUFF:  Of course.

MR. TYRKA:  That's the inference that I'm asking for.

HEARING OFFICER RUFF:  I've heard your request.

MR. TYRKA:  Okay.  Is the Hearing Officer prepared to rule on that request now I guess is my?

HEARING OFFICER RUFF:  No, I'm not.  But did you want to say something on the inference?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                    (202) 234-4433

196

MS. RAMJOHN-MOORE:  I'm itching to say something about the inference.

HEARING OFFICER RUFF:  Okay.

MS. RAMJOHN-MOORE:  In Title 5 of the DCMR, we're not certain of the cite, the student records request cite.  I believe it's Chapter 26.  It calls for records to be produced, if not given access, but within not more than 45 days.  And if you look at the Records Request Hearing Officer, which you pointed to just a few minutes ago.  It's dated September 5th, 2006.  Well 45 days has not elapsed since September 5th, 2006, Hearing Officer.

HEARING OFFICER RUFF:  But we're in hearing Ms. Moore.

MS. RAMJOHN-MOORE:  So I would say that that is not right for adjudication.  I mean, you can't you can't, okay first of all let's go with the IDEA.  The IDEA says, you're to provide access.  It doesn't say you're to provide copies.  You're to provide access.  No where in this record, that Mr. Tyrka could have provided himself, is there a letter stating Mr. Hugogey (phonetic), I

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C. 20005-3701         (202) 234-4433

197

want to come and review my clients records
on such and such a date.  There are no
telephone logs of any such conversations.
There is no evidence of any such
conversations.  There is on this on
plaintiff's counsel to secure records for
his client.  He has to zealously represent
his client.  You can't put all the burden on
DCPS.  There has to be some leg work on his
part as well.

Secondly, Hearing Officer, the
District of Columbia Municipal Regulations
Chapter 26 specifically states, "That it is
to be no more than 45 days for the request
to be fulfilled."  45 has not elapsed.
There is no violation as far as the District
is concerned.  And there definitely is not a
violation of IDEA.

So that whole inference request
based on records that aren't in his
Disclosure, that's that's not proper or is
appropriate for there to be an effort
negatively towards DCPS.

Secondly, Hearing Officer, the
issue of invalid IEP's.  All IEP's were

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433              WASHINGTON, D.C. 20005-3701              (202) 234-4433

198

attended by the parent and the advocate.
Any -- if you look at the notes, there was
no objection to any of the goals or
objectives that were written.   There were no
objections to any of the data concerns, that
Mr. Tyrka brings today.

The whole idea of the re-
authorization of 2004 was to bring about a
more positive relationship between the
school system and the parent.  This is a
joint effort.  This isn't just the school
system making decisions regarding Mrs.
Jallow's child.  This is a joint effort
between Mrs. Jallow and the District of
Columbia Public Schools.

At no time during any of these
IEP meetings was there any objection to any
of the information that was placed in the
IEP, to any of the social emotional
behavioral goals, to any of the academic
goals, to any goal or objective written.

It is disingenuous to show up to
hearing today and state that all of the
IEP's are inappropriate when the parent has
been an integral member of the team from the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

199

beginning.

Secondly, Hearing Officer, let's look at the psycho-ed review dated August 31st, 2006.  At that time --

HEARING OFFICER RUFF:  Which document?

MS. RAMJOHN-MOORE:  This is DCPS 1, and it's also in Mr. Tyrka's disclosure. I believe it's his 14.

HEARING OFFICER RUFF:  Okay.

MS. RAMJOHN-MOORE:  "The purpose of this meeting is to review Henry's psychological psycho-educational evaluation and also process service notes provided by the clinician.  All participants introduced themselves.  Ms. Millis expressed that she requested a, for a new psycho-ed, but Ms. Hugo responded that the psycho-ed on file was current.  Evaluations were done January 17th, 2005."

Funny how they didn't make their way in to Mr. Tyrka's Disclosure.  "Ms. Millis also wanted DCPS to provide her with an FBA and a BIP."  Then lets jump down to, "The team agrees --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

200

HEARING OFFICER RUFF:  Where are we?

MS. RAMJOHN-MOORE:  On page 2 of that same.

HEARING OFFICER RUFF:  I got a --

MS. RAMJOHN-MOORE:  Okay.  So go to page 3.  I'm sorry.  Page 3 of these same documents.  One, two, three paragraph.  The team, "The team agrees --

MR. TYRKA:  Where are we?

HEARING OFFICER RUFF:  So that's listed as 2 of 2.

MS. RAMJOHN-MOORE:  Yes.  Here, the team agrees, "The team agrees to tentatively meet on October 4th, 2006 at 9:30 a.m.  All requested items will be faxed to Ms. Millis on," whatever her number is.  The recommendations down at the bottom. "Educational evaluation why or (inaudible). This has been completed.  Functional behavioral assessment, due October 1st. Behavioral intervention plan, due October 1st.  Social history to be completed, due October 1st."

So everyone at the table came to

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

201

the agreement that these evaluations although requested by the parent, would be provided by October 1st. So how do you come to a hearing today and complain in your opening that they have not been completed to the Hearing Officer.

And for that reason there's been a denial of faith. Or that the placement is inappropriate when the parent has been an integral part of the team from the very beginning and has agreed to the items as discussed on August 31st, 2006. And agreed to the IEP as written July 16th, 2006.

And I would like to put on my witnesses if Mr. Tyrka doesn't have any.

HEARING OFFICER RUFF: I think he does.

MR. TYRKA: Well, first I would like to respond to some of that. First off, the, I think DCPS again is confusing the two different Records Request Regulations. The generic Records Request Regulation does say within a reasonable time and (inaudible) 45 days.

The one that kicks in once a

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                    (202) 234-4433

202

hearing has been scheduled does not have

that 45 day maximum for the very good reason

that once a hearing is never scheduled 45

days in advance.  So obviously you can never

have that much notice.

Regarding the agreements, the

IEP's that's just completely false.  Our

Disclosure number 4 is the first page of '04

IEP.  The agreement is not indicated by

signature.  Furthermore, in the notes from

that meeting, our number 5.  First page.

HEARING OFFICER RUFF:  Wait a

minute.  What -- because it's not checked,

"Did I agree?"

MR. TYRKA:  It's not checked and

this is something that's very important to

DCPS.  They get the signature when they can

get it.

HEARING OFFICER RUFF:  And then

where are you?

MR. TYRKA:  I'm on our number 5.

HEARING OFFICER RUFF:  Yes.

MR. TYRKA:  Now first off, as I

said throughout these notes, DCPS itself is

saying the IEP can't be completely done.  I

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

203

already gave you a quote from that.  It says, you know, "Because of the lack of current information, goals are not so accurate as we would hope.  Therefore recommending a 30 to 60 day review."  Etcetera, etcetera.

So you hardly need a parent objection when DCPS is saying it in it's own notes that the IEP is not valid.  But we have the parent advocate, "Feels even with the lack of information, the goals and objectives are not appropriate and do not address the intensity of degree of the disability deficits and have modification additions to what has been proposed done now."  So that's in her own language.

We also have on the next page about midway through.  Placement discussion, Millis, that's the parent's advocate.  "Has proposed Episcopal, Rock Creek, and High Road.  She feels that they offer very small class size."  Etcetera, etcetera.  And so there's her representation of what placement she would like.  If I may have a second.

Page 2 our Disclosure number 6.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

204

DCPS's notes of what Ms. Millis said in which she questions the disability.  And wants an investigation to the possibility of ADHD.  She also specifically asked for a psychiatric evaluation.  Our number 7 are Ms. Millis's own notes.  Reporting TOE is inadequate and contradictory to the observations in the parent report.  Parent request a new speech and language eval.  I mean, it kind of just goes on.  So I don't know how it could ever be said that there was agreement to the IEP and placement back then.  Yes, the parent's representative was there, and she did her job  objecting.

If we know go to the July 19th IEP which is our number 11.  Again, again on the first page there is no signature indicating agreement with the IEP.  It's just as in the case in the other one.

Then we go to the notes which is our number 12.  Go to page 3 of number 12.  Parent requested for a change of placement.  Look at Ms. Millis's notes which are our number 13.  Progress reports and portfolio information to determine if these goals and

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

205

objectives have been met.  And construct new
goals and objectives that the advocate
requested were not available.  So she states
that she requested these evaluations, these
records, the same ones we're talking about
right now, at the July 19th meeting and they
were not provided to her.

        HEARING OFFICER RUFF:  The
student's teacher was not there.  Right?

        MR. TYRKA:  The teacher was not
there.  She also complained about there has
been no IEP since June 16th.  And the
clinician states, can verbally confirm the
meeting -- well, okay, it just admits they
had a meeting scheduling.  At the bottom of
the page, there's no current academic levels
for him.  So it's impossible to determine
the goals and objectives are appropriate.  I
mean, again this is not the notes --

        MS. RAMJOHN-MOORE:  Which exhibit
were your reading from just then?

        MR. TYRKA:  This is from RH 13
which are the advocate from July 19th
meeting.

        MS. RAMJOHN-MOORE:  Those are the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

206

advocate notes.  Right?

MR. TYRKA:  I'm sorry.  Was that not clear to the Hearing Officer.

MS. RAMJOHN-MOORE:  No, you did.

MR. TYRKA:  Was the Hearing Officer, do you understand --

HEARING OFFICER RUFF:  Yes, I understood.

MS. RAMJOHN-MOORE:  I didn't understand and that's why I asked for clarification.

MR. TYRKA:  Okay.  So that was on the last -- on the bottom that, "There's no current academic goals for him."  So whether DCPS would admit that it happened orally or whether it was by handing these notes to DCPS at the meeting.  They are part of the record.  The advocate certainly made clear her dissatisfaction with the process there.

HEARING OFFICER RUFF:  This is all in August or July and August.

MR. TYRKA:  That was in July. There was the stuff in June '04 that we already talked about.  That was in July '06. And because the representation by DCPS was

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

207

that the parent and advocate participate in
all these meetings and therefore we have
waived all objections.

Then we have in August.  First
page of our number 14.  "Ms. Millis
expressed that she requested a new psycho-
ed."  And they have this disagreement with
Mr. Hugey in which is in reference to the
January 17th --

HEARING OFFICER RUFF:  Hugogey
(phonetic).

MR. TYRKA:  What is it?

MS. RAMJOHN-MOORE:  Hugogey.

MR. TYRKA:  My apologies to him
if he hears this.  And there's a discussion
of something done in January 17th, '05.  Now
there was also rather a suggestion rather,
well in any case, there was a suggestion
rather heavily made by DCPS that there's,
somehow we should be indited for not
including this evaluation.  I already stated
I don't have a psycho-ed evaluation.  And
DCPS has not disclosed it.  This is again
part of their failure to give us any
records.  So I'm not sure why we would be

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

208

indited for the absence of the psycho-ed

from the record.

        HEARING OFFICER RUFF:  Is there

any indication that that's available?

        MS. RAMJOHN-MOORE:  Yes.

        HEARING OFFICER RUFF:  And is --

was there an IEP Meeting in '05?

        MS. RAMJOHN-MOORE:  Mr. Hugogey

can speak to that.

        HEARING OFFICER RUFF:  Okay.  All

right.

        MR. TYRKA:  Then we have on page

2 of these notes.  "Ms. Millis is requesting

educational evaluation.  Ms. Millis

expressed some of R▓▓▓▓▓▓ parent's

concerns.  One had, excuse me, A: have the

teacher come up with the goals;" etcetera,

etcetera.  So again I don't see how there's

any indication of any kind of waiver here.

What we do have --

        MS. RAMJOHN-MOORE:  What you read

was how did the teacher --

        MR. TYRKA:  You know what, I'd

really like to continue presenting my

argument to the Hearing Officer if I could

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

209

be allowed to do so.

        MS. RAMJOHN-MOORE:  I'm sorry,
but you mis-spoke.

        HEARING OFFICER RUFF:  Ms.
Ramjohn-Moore.

        MR. TYRKA:  It's not counsel's
job to correct me.

        HEARING OFFICER RUFF:  I'll give
you opportunity to correct whatever
misstatement he's made.

        MS. RAMJOHN-MOORE:  Okay.

        HEARING OFFICER RUFF:  Go ahead.

        MR. TYRKA:  I don't see any of
these as indicating in any way shape or form
agreement or waiver regarding these IEP's.
To the contrary it is a consistent statement
saying, you haven't given us sufficient
information to talk about any of these
IEP's.  And a consistent request for new
placements out of a failure of DCPS's to
show any kind of progress at the existing
placement because they haven't put up
anything.

        Now what we do have at the bottom
of these notes created by DCPS on page 2,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

210

recommendations these are recommendations of

DCPS, educational evaluation.  We've know

heard a representation from counsel that

this is done.  I haven't seen it.  It's not

in the record.  It's not in counsel's

disclosures.              And then we have

these other things that are going to be due

on August 1st.  We also have, "The team

agrees to tentatively meet on October 4th, '06

at 9:30 a.m."  Now I don't have any mention

of that in Ms. Millis's notes.  However I

don't know of an invitation that's come

after that meeting or a confirmation.  I

haven't, I don't see anything in counsel's

record regarding an invitation or a

confirmation.            Regardless, I think

it is more then a little unfair for DCPS to

give us a rant about, how dare we come in

with this complaint when there was this

agreement on August 31st when that agreement

came more than a month after the filing of

this complaint, if that agreement ever

existed.              In any case as far as I

can tell the only agreement was among the

team members.  Ms. Millis who can testify at

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

211

this point if necessary on rebuttal, Ms.
Millis does not make her own schedule.
That's all done through -- she's doing a
meeting for us, she does it through my
office.  She'll tell you that.  And that's
the way it's always been.

        HEARING OFFICER RUFF:  Okay.

        MR. TYRKA:  So, you see it's
still on this topic of whether there's going
to be an inference and what it would be.

        HEARING OFFICER RUFF:  Well the
inference that you're, that I heard you
asking for is an inference specifically with
regard to whether he received services that
are outlined in the IEP.  And the only IEP
that we have is that, for the two years that
he was at Hamilton.  And there may be
another one, but we don't have it here yet,
is the '04 IEP.

        MR. TYRKA:  That's correct.
That's one inference.

        HEARING OFFICER RUFF:  Yes, the
services weren't provided and that he made
insufficient progress.

        MR. TYRKA:  Yes.  Those are the

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

212

inferences that I'm asking for.

HEARING OFFICER RUFF:  Yes.  I mean, I'll consider those inferences.  I'm not going to determine that's just dispositive of whether or not there was a denial of faith at this point.

MR. TYRKA:  I understand.

HEARING OFFICER RUFF:  Do you understand?

MR. TYRKA:  I understand.

HEARING OFFICER RUFF:  Okay.  So I've got six issues outlined.  And you've got two witnesses.

MR. TYRKA:  I'm not sure I'm putting on any witnesses.

HEARING OFFICER RUFF:  Your not sure you are?  Okay.

MR. TYRKA:  Given, if there was an inference that he is not --

HEARING OFFICER RUFF:  Yes, but understand, well understand I guess, then you can call perhaps witnesses a rebuttal, but she's going to put on her case.  Mr. Hugogey is going to put forth evidence and then if I've got to make decision based on

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433                WASHINGTON, D.C.  20005-3701                (202) 234-4433

213

that, I mean, I'll do that.  But at this point you have an opportunity to put the witnesses on strategically.  If you don't want to that's fine.  We've got 55 minutes left in our schedule time, right now.

MR. TYRKA:  Understood.  The only inference, I mean, given that we're starting with that inference, my case, my case has been made, I think.  Obviously the respondent will make their case and I guess we'll see where we are from there.  But I'm not asking obviously the case is not --since the Hearing Officer denied the default, obviously the case is not decided based on that inference.  So I understand that.

HEARING OFFICER RUFF:  Are you calling Mr. Hugogey?

MS. RAMJOHN-MOORE:  Yes, but I have ths psychologist available also.  I don't know if she's still there.  With this burden we may have to figure out --

HEARING OFFICER RUFF:  Go off.

(Audio file provided ends.)

(Audio file provided begins.)

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                                      (202) 234-4433

214

MS. RAMJOHN-MOORE:  Okay.  Ms.
Sturman (phonetic) is going to go first.

HEARING OFFICER RUFF:  Who's
going?

MS. RAMJOHN-MOORE:  Ms. Sturman.
She's the psychologist.

HEARING OFFICER RUFF:  Ms.
Thurman?

MS. RAMJOHN-MOORE:  Sturman.

HEARING OFFICER RUFF:  Sturman.

MS. RAMJOHN-MOORE:  Yes.  She's
not there yet.

HEARING OFFICER RUFF:  Put her
name here.

MS. RAMJOHN-MOORE:  Yes.  Thank
you.  She's the one that was conducting the
Wyatt (phonetic).

HEARING OFFICER RUFF:  Is that
the most recent one?

MS. RAMJOHN-MOORE:  Yes.

MR. TYRKA:  I am going to object
to any --

HEARING OFFICER RUFF:  Was she,
was she present at any of the meetings
prior?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

215

MS. RAMJOHN-MOORE:  I think she
was at that August meeting.  Yes.  She was.
She was at the August meeting.

HEARING OFFICER RUFF:  She was at
the August meeting.

MR. TYRKA:  I'm going to object
to any testimony by a document that hasn't
been disclosed.

HEARING OFFICER RUFF:  What's the
relevance of the document?  What's the
relevance of her testimony?

MS. RAMJOHN-MOORE:  Well just to
talk about how this recommendation has been
followed through with.  I mean that is part
of his case and it's pretty, you know,
unfair to now say he's going to object to
her testimony to this.

MR. TYRKA:  Well it's actually
not part of my case.  But --

HEARING OFFICER RUFF:  Well
you're saying, she's conducted an evaluation
with students.

MS. RAMJOHN-MOORE:  Yes.

HEARING OFFICER RUFF:  Well
irrespective of whatever documents she's

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

216

produced, if it's been produced, she can
testify about her evaluation.

    MS. RAMJOHN-MOORE:  Her
knowledge.

    HEARING OFFICER RUFF:  Her
knowledge of the student.

    MR. TYRKA:  I'm sorry what was?

    HEARING OFFICER RUFF:  I mean her
knowledge of the student, her evaluation of
the student is separate from any documents
she produced regarding that.

    MR. TYRKA:  Okay.  Right.  My
objection is to her testimony about an
existing evaluation, if it hasn't been
disclosed.

    HEARING OFFICER RUFF:  Okay.

    MR. TYRKA:  I didn't understand
the Hearing Officer.  And incidently our
complaint, I mean, obviously was before the
August meeting.  Our complaint would have to
have any -- but it doesn't say any --

    HEARING OFFICER RUFF:  I will
give her some leeway to see what, what of
substance there is in her testimony.

    She's calling us back or she's

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

217

got us on hold or?

MS. RAMJOHN-MOORE:  He has us on hold.  Someone went to go get her.  Because some people from another agency came to visit him since we're late calling him.

MR. TYRKA:  She works with him.

MS. RAMJOHN-MOORE:  Yes.

MR. TYRKA:  She's there.

MS. RAMJOHN-MOORE:  She's the psychologist Hamilton Center.  I don't know if she works for DCPS.  I know she's a --

MR. HUGOGEY:  Hello.

MS. RAMJOHN-MOORE:  Yes.  Hello.

HEARING OFFICER RUFF:  Hello.

MR. HUGOGEY:  How are you doing? This is Charles C. Hugogey here.

HEARING OFFICER RUFF:  Mr. Hugogey, you are, are you available to testify?

MR. HUGOGEY:  Yes, sir.

HEARING OFFICER RUFF:  You are. You want to shift gears?

MS. RAMJOHN-MOORE:  Yes.

HEARING OFFICER RUFF:  And go with him?

MS. RAMJOHN-MOORE:  Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

218

HEARING OFFICER RUFF:  Okay.
Great.  This is Mr. Ruff, the Hearing
Officer.  Along with Ms. Moore, your
attorney, Mr. Tyrka, the parent's attorney,
is here and the parent.  Okay.

MR. HUGOGEY:  Okay.

HEARING OFFICER RUFF:  All right.
I need you to identify yourself.

MR. HUGOGEY:    Charles C.
Hugogey, Special Education Coordinator
Hamilton Center.

HEARING OFFICER RUFF:  And I want
to put you under oath now.
Whereupon,

CHARLES C. HUGOGEY

was called as a witness by counsel and,
having been first duly sworn, was examined
and testified as follows:

HEARING OFFICER RUFF:  Okay.
Great.  Ms. Moore is going to ask you
questions first.  Then Mr. Tyrka.  And I may
have some.

DIRECT EXAMINATION

BY MS. RAMJOHN-MOORE:

Q    Mr. Hugogey, are you familiar

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

219

with a student by the name of R██████ H█████?

    A    Yes, ma'am.

    Q    How are you familiar with him?

    A    He was at Hamilton Center.

    Q    How long has Rashaw been attending Hamilton Center?

    A    About three years.  Three to four years.  Yes.

    MR. TYRKA:  I'm going to --

    HEARING OFFICER RUFF:  Mr. Hugogey.

    MR. TYRKA:  It's --

    HEARING OFFICER RUFF:  Wait a minute.

    MR. TYRKA:  Sure.

    HEARING OFFICER RUFF:  Mr. Hugogey.

    THE WITNESS:  Yes.

    HEARING OFFICER RUFF:  If I get an objection, what I'm going to do is put you on mute so you don't hear that discussion.  So don't think that we're gone.

    THE WITNESS:  Okay.

    HEARING OFFICER RUFF:  In that, in those, in those instances.  And then

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

220

we'll come right back to you.  Okay?

THE WITNESS:   Thank you, sir.

HEARING OFFICER RUFF:  I'm going
to put you on mute now.

MR. TYRKA:  It's pretty small.
In order to avoid what may be a recurring
objection of mine.

HEARING OFFICER RUFF:  Yes.

MR. TYRKA:  I'm going to object
unless counsel can establish foundation for
Mr. Hugogey.  I believe that he is pretty
new at Hamilton Center.

MS. RAMJOHN-MOORE:  No, he's not.

MR. TYRKA:  Unless I am, unless I
am confused.  As I acknowledge the
possibility of.  So help me avoid those
objections if that can be established.

MS. RAMJOHN-MOORE:  Fine.

BY MS. RAMJOHN-MOORE:

Q    Mr. Hugogey.  Can you hear me?
Mr. Hugogey.  Take me off speaker because
when I'm on speaker and you're on speaker it
doesn't work.  Now I can.  Hold on.  Can you
hear me now?

A    Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

221

Q      Mr. Hugogey, how long have you been at the Hamilton Center?

A      Five years.

Q      And in what capacity?

A      As a psychologist.  The first as a Special Education Coordinator, second year.

Q      And what is your educational level?

A      Completion of a Doctorate Degree. I have Masters at this point, moment.

Q      Okay.  In your capacity as Special Education Coordinator, what are your duties?

A      My duties include monitor to supervise in the clinical staff.  Admitting students into the Center by reading up on the evaluations to make sure that we are able to provide services for the prospective students.  To provide training for staff as well as the parent training.  To implement the Behavior Level System for Hamilton Center.  And a whole array of other services.  Meetings and so on and so forth.

Q      What is the level system?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

222

A     The level system is the behavior division model that we use in providing services for the students, you know, behavior while they are here at Hamilton Center.

Q     And is that mostly for the emotionally disturbed population?

A     Yes, it's for the ED students.

Q     Is R██████ H█████ ED?

A     Yes, he is.

Q     What are the related services provided on his IEP?

A     The related services are --

MR. TYRKA:  I'm sorry, is the question what are the services on the IEP or is the question what is he being provided?

MS. RAMJOHN-MOORE:  What are the related services on his IEP?

MR. TYRKA:  Okay.

THE WITNESS:  Hello.

MS. RAMJOHN-MOORE:  Yes.

BY MS. RAMJOHN-MOORE:

A     Yes, he received specialized instructions and he received psychological counseling.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

223

Q    And to your knowledge, is he receiving his psychological counseling at the Hamilton Center?

A    Yes, he is.

Q    How do you know that?

A    Because I supervise the clinician that provides the services.  And I see that clinician every Friday for supervision and discussion of the cases.

MR. TYRKA:  I'm going to object to and ask that his testimony regarding his receiving services be stricken because it is hearsay.  And more specifically, it is hearsay that comes either from documents which we have requested which they haven't produced.  And it's hearsay from -- we compelled the attendance of Paul Williams who I believe is the counselor.  And furthermore it's hearsay from a DCPS employee which they are fully capable of producing.

MS. RAMJOHN-MOORE:  I have no control to -- have no subpoena power to insure that people are present physically. However I have people available via

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

224

telephone and that is how I have my
witnesses available.

MR. TYRKA:  Not by subpoena
power, this is DCPS, they can order their
employees to be where they want.

MS. RAMJOHN-MOORE:  Not when they
are providing services to students.

MR. TYRKA:  Can order their
employees to be wherever they need them to
be or be available by telephone.  I'm not
insisting on in person.

And this all goes back to this
fundamental fairness.  I think the days have
to be passed when DCPS can come to the table
and put on an SEC who then tells a very long
story about this child when the refuse to
give up records, they refuse to produce
testimony, and we can't track the
credibility of this witness, in the least.

HEARING OFFICER RUFF:  Okay.  I'm
going to allow this testimony, I'm going to
allow this testimony with regard to his
knowledge for the services that were
provided.  And I'll overrule the objection
on hearsay.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

225

MS. RAMJOHN-MOORE:  Thank you.

BY MS. RAMJOHN-MOORE:

Q     Mr. Hugogey, I'm sorry for the delay.

A     I'm here.

Q     Okay.  Are Encounter Tracker Forms the physical sheets, are they still used?

A     The what, the Encounter Tracking Form?

Q     Yes.

A     Yes.

Q     How are they collected?  How is the data collected?

A     The clinician document the documentation upon provision of services, the clinician writes up documents of the times where the services took place, where they did not take place, and the reason why it did not take place.

Q     On August 31st, 2006, did you have a meeting to discuss Re████ H████?

A     Yes, I believe we did.

Q     Did you promise Ms. Sharon Millis that you would fax her some Encounter

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

226

Tracking Forms?

    A    At that meeting, I don't recall that. No. She was here, so I'm not sure if I made her any promises of encounter because the clinician who provide the services was here. So if anybody would have given her that, that would have come from the clinician who was the, he was a part of the MDT. So I did not promise I was going to send her any encounter forms.

    Q    It says here on the MDT meeting notes --

    A    Yes.

    Q    That let's see, indulgence, I guess it doesn't say that.

    Did Ms. Millis request a psychological evaluation?

    A    Yes, ma'am. She did.

    Q    And what did you, did the team determine at that time?

    A    Well the team determined that the evaluation would be completed. And when they are meeting for schedule for October 5th, which is next week.

    Q    Okay. Did you did you confirm

227

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

that meeting with Ms. Millis?

   MR. TYRKA:  Objection.

Objection.

   MS. RAMJOHN-MOORE:  Hold on.

   MR. TYRKA:  Are we talking about

a written confirmation?  That document has

not been submitted in to evidence.

   MS. RAMJOHN-MOORE:  I didn't say

written.

   HEARING OFFICER RUFF:

(Inaudible.)

   MS. RAMJOHN-MOORE:  Thank you.

   MR. TYRKA:  Then I'll ask for an

instruction that the witness only testify

regarding any oral conversations.

   MS. RAMJOHN-MOORE:  But I think

that the witness should be able to testify

to what source of confirmation he, he

doesn't even know what --

   HEARING OFFICER RUFF:  Well let's

get the (inaudible) question answered first.

   MS. RAMJOHN-MOORE:  Okay.

   BY MS. RAMJOHN-MOORE:

  Q Mr. Hugogey.

  A Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433  WASHINGTON, D.C.  20005-3701  (202) 234-4433

228

Q    Did you confirm this date with Ms. Millis?

A    The meeting was confirmed.  Yes.

Q    How was it confirmed?

A    It was confirmed, we sent a meeting note, a confirmation note. Initially we agreed on (inaudible).  She wanted the office to be notified.  We did that and yes, it was confirmed.  In fact, she came here the day before yesterday.  And also was aware that we are meeting on the 5th of October.

Q    Now --

MR. TYRKA:  I'm sorry.  I missed the last statement.

HEARING OFFICER RUFF:  That we were meeting on the 5th of October.

MR. TYRKA:  I thought he said something about yesterday or --

HEARING OFFICER RUFF:  I'm sorry. Answer that again.  Say what you said again.

THE WITNESS:  The meeting was confirmed with Ms. Millis.  And we also sent a confirmation.  And she was here visiting the school two days ago.  And myself, Ms.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                              (202) 234-4433

229

Thurman who did the evaluation, we all

chatted.  And she was aware.  She said, she

would see us on the 5th.  We said, okay.

BY MS. RAMJOHN-MOORE:

Q    I'm sorry.  Could you repeat,

maybe I'm just confused, did you say that

you confirmed with Ms. Millis verbally, but

then she required a writing?

A    No, it was confirmed verbally, in

writing, and another verbal discussion took

place two days ago.  And it was also

reconfirmed again during our little tete-a-

tete.  We just had a chat in the main

office, and where, she came to visit.  And

she says "okay, we see you on the 5th."  And

that was it.  You know, so it was written

and it was verbal.

Q    Okay.  Good.

A    Yes.

Q    And when and when was the written

confirmation sent?

MR. TYRKA:  Same objection.

MS. RAMJOHN-MOORE:  Hold on.

HEARING OFFICER RUFF:  Clarify

for me, what's the relevance?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

230

MS. RAMJOHN-MOORE:  I just want,
I just want the information.  I just want to
know the information.

MR. TYRKA:  Well it's doesn't say
-- well it's obviously --

HEARING OFFICER RUFF:  You can
always, if you intend to call Ms. Millis,
I'll go ahead and allow it then.

BY MS. RAMJOHN-MOORE:

Q    Sir.

HEARING OFFICER RUFF:  I'll note
your objection.

BY MS. RAMJOHN-MOORE:

Q    Hello.

A    Yes, I'm here.

Q    When was it sent?

MR. TYRKA:  And now I'm going to
object that he's referring to a document and
reading off of it.  I'm going to object on
that basis.

HEARING OFFICER RUFF:  Do you
know, Mr. Hugogey?

BY MS. RAMJOHN-MOORE:

Q    Do you know off the top of your
head, Mr. Hugogey?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

231

A    Yes.

MR. TYRKA:  I can hear him shuffling the papers.

HEARING OFFICER RUFF:  Do you know without looking at the document, Mr. Hugogey?

THE WITNESS:   I know for a fact that the meeting was confirmed.  I'm not even sure if Ms. Millis will be asking about that.  So I'm not getting very distant.  She knows when it was sent to her.  In fact it was sent to her.  It was confirmed.

BY MS. RAMJOHN-MOORE:

Q    Mr. Hugogey.

A    Yes.

Q    Was there an agreement to complete a Functional Behavioral Assessment and a Behavioral Intervention Plan?

A    Yes.

Q    As well as a social history?

A    Yes.

Q    Why were those items written?

A    The advocate approached us for it.  It was during that time that we scheduled and give a date for the time line

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

232

for her to receive this October 1st before

our meeting on October 5th.

    Q    Have any of those evaluations

been completed?

    A    The evaluations are completed.

    MR. TYRKA:  I'm going to object

to the testimony that these are the

documents that weren't produced in to

evidence.  I ask that it be stricken.

    BY MS. RAMJOHN-MOORE:

    Q    Excuse me.  Hold on one second.

    MR. TYRKA:  I mean I don't like -

-

    HEARING OFFICER RUFF:  Where

beyond that are heading?  Anywhere?

    MS. RAMJOHN-MOORE:  No.

    HEARING OFFICER RUFF:  Okay.  I

note your objection.

    BY MS. RAMJOHN-MOORE:

    Q    Mr. Hugogey.

    A    I'm here.

    Q    When R█████ came to the Hamilton

Center, where did he come from?

    A    I believe he came from a school

on K Street.  I forget the name of the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

233

school.

Q    No.  I just --

A    It was effective move from Martin

Cherry from a -- can't remember the name of

the school.

Q    I'll move on to the next

question.

HEARING OFFICER RUFF:  Maybe that

is a point that I did have because it seemed

that Martin Cherry was at Watkins.  But did

he know, did he go from, did he stop at

Watkins before Hamilton?

MR. TYRKA:  I don't think so.  I

think if they had it there because --

He didn't spend any time, R████

didn't spend any time?

MS. RAMJOHN-MOORE:  Walker-Jones.

MR. TYRKA:  Walker-Jones to

Hamilton.  Right?

MS. RAMJOHN-MOORE:  Yes.

MR. TYRKA:  I think it was

because it was the home school.  Walker

Jones was the home school.  So they held the

meeting there or the Walker-Jones personnel

did the meeting.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

234

HEARING OFFICER RUFF:  Okay.

MR. TYRKA:  The CLE was in a strange statement.

HEARING OFFICER RUFF:  Because they said it was closed.

MR. TYRKA:  They have since closed.  I don't think they were closed then.  I don't really know.

HEARING OFFICER RUFF:  Okay.

BY MS. RAMJOHN-MOORE:

Q     Mr. Hugogey.

A     Yes, Center for Life Enrichment. Yes, go ahead.

Q     Okay.  And did he come to Hamilton Center with an IEP?

A     Yes, he did.

Q     And what was the date on that IEP?

A     The date June 16th, '04.

Q     When did Hamilton Center update his IEP?

MR. TYRKA:  I'm going to -- well I'm going to object to the degree this conflicts with anything that's already, that's in the record.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

235