UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
Etta Jalloh, on behalf of her
 minor child, R.H.,                     )

            Plaintiff,                   )

            v.                           )        Civil Action No.07-0063 (RMC)
District of Columbia,
                                        )
            Defendant.                   )
_____)

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

Comes now defendant District of Columbia, by counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and hereby respectfully moves this honorable Court to grant summary judgment in its favor in the captioned action and to deny the plaintiff's motion for Summary Judgment. As established by the accompanying supporting memorandum and the statement of material facts as to which there is no genuine dispute, the challenged administrative determinations under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. §1400 *et seq*. were entirely appropriate.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2


/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

July 6, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
Etta Jalloh, on behalf of her
 minor child, R.H.,                         )

          Plaintiff,               )

          v.                       )          Civil Action No.07-0063 (RMC)
District of Columbia,
                                   )

          Defendant.               )
_____)

### DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This action seeks review of an administrative decision by a Hearing Officer, issued on October 13, 2006, following a hearing conducted pursuant to the Individuals With Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1400 *et seq.* ("IDEIA"), on September 29, 2006. At the hearing the plaintiff sought to establish that the District of Columbia Public Schools ("DCPSl") denied the minor plaintiff a Free Appropriate Public Education ("FAPE") because DCPS failed to conduct psycho-educational and speech evaluations, failed to provide the student with appropriate Individualized Education Plans ("IEP"), and failed to provide the student with an appropriate placement.  (R. at 5-6)  In the challenged ruling, the Hearing Officer  ("HO") found that DCPS conducted a psycho-educational evaluation of the student in January 2005, and that the parent failed to meet her burden of proof that a speech evaluation was

not completed.  (R. at 10)  The HO further concluded that the parent sustained her burden

of proof that DCPS failed to provide the student with appropriate IEPs, but also found

that the student's current placement was appropriate.  (R. at 9-10)

In her Complaint and Motion for Summary Judgment, plaintiff seeks funding for

a private school placement, and declaratory and injunctive relief related to compensatory

education.  (Pl's Memorandum at 1)  "Plaintiff asks the court to rule in her favor solely

on the basis of DCPS' egregious procedural violations."  (Pl's Memorandum at 1)

**FACTUAL BACKGROUND**

The minor plaintiff is a 12 year old student, who has been determined to be

eligible for special education and related services as emotionally disabled.  On June 16,

2004, DCPS conducted a Multidisciplinary Team Meeting ("MDT") and determined that

the student was in need of 26 hours per week of specialized instruction and 1.5 hours of

psychological services.  (R at 31, 47) While the parent proposed sending her child to a

private school, specifically Episcopal School, Rock Creek Academy, or High Road

Academy, because these schools offered "small class size, behavior intervention, support

staff … [and] a very small setting," DCPS proposed the Hamilton Center, a public

school. (R at 43)  The DCPS members of the MDT team determined that Hamilton was

an appropriate placement, concluding that Hamilton "also offers small class size,

behavior intervention, [and] related services."  (R at 43)   DCPS issued a Prior to Action

Notice on June 16, 2004, placing the student at Hamilton Center.  (R at 52)   An Initial

Placement notice was also provided to the parent and her advocate, but both refused to

sign it.  (R at 51)  Nonetheless, the student began attending Hamilton at the start of

school year 2004-05.

On July 19, 2006, DCPS convened another MDT/IEP meeting to develop a new IEP for the student, to review the services that were being provided to him, and to discuss current placement.  (R at 61)  The parent expressed her desire for a change in placement for the student because she believed the student was not making sufficient progress at Hamilton.  The staff at the Hamilton Center, on the other hand, opined that the student has made progress in the program and that his current placement was appropriate.  (R at 63)    On July 31, 2006, parent's counsel filed a due process complaint in which he alleged that DCPS had failed "to conduct and review evaluations in all areas of suspected disability," failed "to develop adequate IEPs," failed "to provide necessary special education and related services," and failed "to provide an appropriate placement."  (R at 111)

On August 16, 2006, DCPS filed its Response to the due process complaint denying "the allegation that it failed to complete a speech and language evaluation and psycho-educational evaluation."  (R at 116)  DCPS further denied the allegation that "the Hamilton Center is not reasonably calculated to provide a Free and Appropriate [Public] Education to this student."  (R at 116)  Lastly, DCPS stated that "[r]ecommendations are not mandates for the MDT team to follow."  (R at 116)

At the due process hearing, held on September 29, 2006, plaintiff's counsel moved for a default judgment, claiming that DCPS' Response to the due process complaint was inadequate pursuant to Section 1415 of the IDEIA.  (R at 160-162) Plaintiff further sought to have DCPS deemed to have waived any defenses that were not raised in its Response, and to have the Hearing Officer ("HO") make an inference that the

student was denied a FAPE because DCPS allegedly failed to provide the parent with copies of the student's records. (R at 193)

At the hearing, the HO concluded "that DCPS' response to the complaint did not warrant a default decision and concluded that DCPS was not strictly limited to assertions made in its response in presenting its defense to any alleged violations and/or denials of FAPE." (R at 8) The HO further found that "[p]ursuant to IDEIA Sec. 1415(f)(3)(E)(ii) in matters alleging a procedural violation a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the child's right to FAPE, significantly impeded the parent's opportunity to participate in the decision making process regarding provision of FAPE, or caused the child a deprivation of educational benefits." (R at 7) Lastly, the HO concluded that "[t]here was no evidence DCPS denied the parent or her counsel access to the student's records." (R at 8) It is these rulings plaintiff seeks to overturn.

## **ARGUMENT**

### I.    **The criteria for granting summary judgment.**

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." Farmland Industries, Inc. v. Grain Board of Iraq, 248 U.S. App. D.C. 276, 904 F. 2d 732, 735 (1990)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[1]

---

[1] Anderson v. Liberty Lobby, Inc, supra, 477 U.S. at 248, similarly describes the rule for determining materiality:

   As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . Any proof or

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[2]

To meet the initial burden of showing "the absence of a genuine issue of material fact" on an essential element of the non-movant's case, the movant may demonstrate that the respondent has no evidence to support an essential element of his or her case. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). In answer, the respondent must "present affirmative evidence" in order to defeat the motion, and "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion for summary judgment should be granted. Id.

## II.    The criteria for review of administrative decisions under IDEIA.

IDEIA provides for judicial review in state or federal court to "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. 20 U.S.C. §1415(c). In conducting such review, the reviewing court "shall receive the records of the administrative proceeding, shall hear additional evidence at the request of a party,

---

evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinning of those disputes.

[2] Celotex Corp. v. Cantrett, supra, is one of three cases decided by the U.S. Supreme Court in 1986 that govern the standard for granting motions for summary judgment. Celotex Corp., supra; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Company v. Zenith Radio Corporation, 475 U.S. 574 (1986). Celotex Corp. held that Rule 56 was to be administered with due regard to those opposing claims, as well as those advancing them, and that the purpose of the Rule was to dispose of claims that had no reasonable factual basis. 477 U.S. at 327, 323. Anderson held that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. 477 U.S. at 248, 254. Matsushita held that where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." 475 U.S. at 587.

> . . . [T]aken together, these three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials and lower courts have responded accordingly.

10 A. Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2727, n. 25 (1998).

and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(e).  However, the "preponderance of the evidence" standard "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  Board of Education of Hendrick Hudson Central School Dist. v. Rowley, 458 U.S. 176, 206 (1982).

The party challenging the hearing officer's determination bears the burden of persuading the court that the Hearing Officer was incorrect.  Angevine v. Smith, 959 F.2d 292, 295 (D.C. Cir. 1992); Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988); Lyons v. Smith, 829 F.Supp. 414, 417 (D.D.C. 1993).  While the Court is authorized to make an independent determination, the Court "must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education."  Lyons v. Smith, supra, 829 F.Supp. at 418.

Accordingly, before this Court may reverse the Hearing Officer's decision, the Plaintiffs must show by a "preponderance of the evidence," giving the Hearing Officer's finding "due weight," that the Hearing Officer was wrong.

### III.    The Hearing Officer Ruled Correctly When He Refused to Grant Plaintiff's Motion for a Default.

### A.    DCPS' Response to the Due Process Complaint Met the Requirements of 20 U.S.C. Sec. 1415(c)(2)(B)(i)(I)

Plaintiff claims that the HO erred when he denied plaintiff's motion for a default judgment based on DCPS' alleged "failure to serve a response" in accordance with 20 U.S.C. Sec. 1415(2)(B)(i)(I).  (Motion at 11-12)  Defendant is at a loss to understand this

argument as the administrative record in this case clearly indicates that DCPS timely filed a Response to Parent's Administrative Due Process Complaint Notice on August 16, 2006. (R at 116)

In plaintiff's second argument, she acknowledges that a response was filed but contends that DCPS' response was inadequate under the IDEIA and, accordingly, the HO should have granted plaintiff's Motion for a Default Judgment. 20 U.S.C. Sec. 1415 (B)(i)(I) and (II)(ii) set forth the requirement for a Response to a complaint:

> (i) (I)    In general. **If the local education agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice,** such local educational agency shall, within 10 days of receiving the complaint, send to the parent a response…. (Emphasis added)
>
> (II) (ii)    Except as provided in clause (i), the non-complaining party shall, within 10 days of receiving the complaint, send to the complain[ant] a response that specifically addresses the issues raised in the complaint.

In the instant case, on June 16, 2004, DCPS held an MDT meeting on behalf of the student, which produced an IEP, MDT notes and a Notice of Placement, wherein it was discussed where the student could be appropriately placed. (R at 31-56)  The student's IEP notes, under the heading "Least Restrictive Environment Determination/ Service Alternatives," that "[b]ecause of the intensity necessary, [the student] cannot be educated in a general ed setting." (R at 41)  The IEP further states under the heading of "Placement Considerations and Justification" that a general education combined with a special education setting is rejected because of the potential for failure, while an Out of General Education setting is accepted. (R at 41)  The MDT notes reflect that a discussion regarding placement occurred between the child's educational advocate and DCPS, with the advocate proposing a private placement at either Episcopal, Rock Creek or High

Road.  These schools were proposed because they allegedly offered small class size, behavior intervention, and a support staff that includes a psychologist.  DCPS, on the other hand, proposed Hamilton Center, which also offers small class size, behavior intervention, and related services.  (R at 43-44)  Accordingly, an Initial Placement was issued placing the student at the Hamilton Center.  (R at 51)  The Prior to Action Notice gives a "Description and Explanation of agency action proposed or refused."  "DCPS feels that Hamilton Center is an appropriate placement that can meet [the student's] needs."  (R at 52)  In the box for "Description of Other Options Considered and reasons for rejection of each option, DCPS wrote "Parents [/] advocate – disagree and have proposed Episcopal, High Road and Rock Creek.  When DCPS has an appropriate program it gives first priority to that prog[ram]."  (R at 52)

Thus, DCPS complied with the response requirements in section 1415 of the IDEIA in that a prior written notice to the parent "regarding the subject matter contained in the parent's due process complaint notice…" had previously been sent to the parent. Additionally, DCPS also timely sent a response to the complaint which "address[ed] the issues in the complaint."

However, even if the Court should determine that neither the Prior Notice of Placement nor DCPS' response to the due process complaint fully complied with the provisions of section 1415, the Court should nonetheless find that the HO was correct in not granting a default judgment, based on these possible procedural violations.

**B.    No Exceptional Circumstances Exist in This Case to Warrant a Default Judgment.**

Plaintiff acknowledges that "the IDEA is silent on the question of the proper remedy for the failure of a local educational agency ("LEA") to file a response under 20 U.S.C. Sec. 1415(2)(B)(i)(I)."  (Motion at 17)  Thus, plaintiff proposes that the court look to an analogous state rule that could be applied to the instant case.  Specifically, plaintiff asks this federal court to apply the District of Columbia Superior Court Rules of Civil Procedure 12(a) (5) and 55(a).  (Motion at 20).

Defendant is unclear why plaintiff believes that the District of Columbia Superior Court rules of Civil Procedure should be applied in this federal court, which has a complete system of rules of civil procedure of its own.  Accordingly, the use of District of Columbia Superior Court Rules of Civil Procedure 12(a) (5) and 55(a) is completely inappropriate in the instant case.

Further, while a court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics, courts strongly favor resolution of disputes on their merits. *Keegel v. West & Caribbean Trading Co.,* 627 F.2d 372, 375 n.5 (D.C. Cir.1980); *Jackson v. Beech,* 636 F.2d 831, 835 (D.C. Cir. 1980).  "[B]ecause 'it seems inherently unfair' to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgments." *International Painters and Allied Trades Industry Pension Fund v. K & J Erectors LLC*, Civ. No 04-1236, (D.D.C. 2006) citing *Jackson v. Beech,* 636 F.2d 831, 835 (D.C. Cir. 1980).

"[A]lthough a district court may enter default judgment against a defendant who has failed to respond to a complaint against him, default judgments should only be entered if exceptional circumstances exist that prejudice the plaintiff." *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1316-17 (11th Cir. 2002). "Because entry of a default judgment is such an extreme sanction, the court has made clear that it should be imposed only upon a 'showing of severe circumstances.' *District of Columbia v. Greene,* 539 A.2d 1082, 1083-84 (quoting *Ungar Motors v. Abdemoulaie,* 463 A.2d 686, 688 (D.C. 1983)); *Hinkle v. Sam Blanken & Co., Inc.,* 507 A.2d 1046, 1049 (D.C. 1986) Such 'severe circumstances' arise from the nonmovant's deliberate or willful noncompliance with court rules and orders…." *Iannucci v. Pearlstein,* 629 A.2d 555, 559 (D.C. 1993)

In the instant case, there is no question that DCPS filed a response to plaintiff's due process complaint. Thus, there can be no finding of "deliberate or willful" noncompliance with any IDEIA requirement. Further, even if this Court were to conclude that DCPS' response to the due process complaint was somehow technically deficient, this would still not constitute grounds for a default. In a case cited by plaintiff,[3] *Restaurant Equip. and Supply Depot, Inc. v. Gutierrez,* 452 A.2d 951 (D.C. 2004), the court refers favorably to *Iannucci v. Pearlstein, supra*, where the defendant filed two answers that were stricken for various procedural defects. Nonetheless, the court concluded that "Iannucci's failure to file a valid answer was not a basis on which the judge could properly conclude that she was in default under Rule 12 (a) and consequently Pearlstein was not entitled to a default judgment under Rule 55 (b)(2)….Instead her

---

[3] Motion at 23

failure to file a valid answer constituted a technical rather than an actual failure….

('Where defendant's failure to plead or otherwise defend is merely technical, or where

the default is de minimis, the court should generally refuse to enter a default judgment')."

(citations omitted)

C.      **Plaintiff Has Not Established That the Student Suffered Educational Harm As a Result of any Procedural Deficiency in DCPS' Response to Due Process Complainti.**

Additionally, noncompliance with IDEIA's procedural provisions does not

constitute a per se violation warranting relief.  To recover under IDEIA for violation of a

procedural provision, a plaintiff "must show harm to [the student] as a result of the

alleged procedural violations." *Weiss v. School Bd. of Hillsborough County*, 141 F.3d

990, 996 (11th Cir. 1998).  See *Metropolitan Bd. of Pub. Educ. v. Guest*, 193 F.3d 457,

464-65 (6th Cir. 1999) (school district's failure to comply with IDEIA's procedural

requirements constitutes denial of FAPE only if such violation causes substantive harm to

child or his parents); *Gadsby v. Grasmick*, 109 F.3d 940, 956 (4th Cir. 1997) ("To the

extent that the procedural violations did not actually interfere with the provision of a free

appropriate public education, these violations are not sufficient to support a finding that

an agency failed to provide a free appropriate public education."); *Cordrey v. R.J.*

*Euckert*, 917 F.2d 1460, 1467 (6th Cir. 1990)(procedural objections inadequate where no

showing of loss of educational opportunity to student); *Doe v. Alabama State Dept. of*

*Ed.*, 915 F.2d 651, 660 (11th Cir. 1990) (notice deficiencies did not violate IDEA's

predecessor where parents had full and effective participation in IEP process); *Burke*

*County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir. 1990) (refusing to award

compensatory education when "the procedural faults committed by the Board . . . did not

cause [the student] to lose any educational opportunity"); *Daugherty v. Hamilton County Schools*, 21 F.Supp.2d 765, 772 (E.D.Tenn. 1998) (school district's failure to comply with IDEA's procedural requirements constitutes denial of FAPE only if such violation causes substantive harm to the child or his parents); *Evans v. Board of Educ.*, 930 F.Supp. 83, 93-94 (S.D.N.Y. 1996 (relief is warranted only if procedural violation is found to have affected student's right to FAPE).  See also, e.g., *MM v. School Dist. of Greenville County*, 303 F.3d 523, 533-35 (4th Cir. 2002)(procedural failure does not violate IDEA where no resultant lost educational opportunity); *Board of Educ. of Montgomery County v. Brett Y.*, 1998 U.S.App.LEXIS 13702, * 36 (4th Cir. 1998)("To support a finding that a student has not been provided with a FAPE, procedural violations must be serious and cause the student to lose educational opportunity"); *Board of Educ. of Arlington Heights School Dist. No. 25 v. Illinois State Bd. of Educ.*, 2001 U.S.Dist.LEXIS 6994 (N.D.Ill. 2001)(defendant not entitled to compensatory education where imperfect procedural implementation of IEP process did not deny defendant FAPE); *Barber v. Bogalusa City School Board*, 2001 U.S.Dist.LEXIS 8156, *14 (E.D.La. June 12, 2001)

Here, there has been no showing that any substantive harm resulted to either the parent or the student or that the student lost any educational opportunity as a result of any deficiency in DCPS' response to the due process complaint.  Accordingly, the HO was correct when he concluded that DCPS' response to the complaint did not warrant a default decision.  (R. at 8)

**IV.** **The Hearing Officer Was Correct When he Found No Evidence that DCPS Denied the Parent of Her Counsel Access to the Student's Records.**

Plaintiff alleges that the parent requested some of the student's school records and, because not all were received, the HO should have "held DCPS accountable and made an inference that Hamilton had not been providing R.H. adequate education and services, and could not do so going forward." (Motion at 29) The relevant section of the DCMR regarding a parent's access to a student's educational records is 5 DCMR 3021 which provides:

> In accordance with the confidentiality procedures of 34 CFR 300.560 - 300.576 and 34 CFR 99, the parent of a child with a disability shall be <u>given the opportunity</u> to inspect and review and to copy at no cost to the parent all of the child's records relating to the identification, evaluation, and educational placement and the the provision of FAPE.

Section 800.2 of the Student Hearing Office-Standard Operating Procedures[4] provides:

> Right to examine pupil records: Parents have the <u>right to examine</u> all records maintained by the school that are related to their child. <u>Parents should call or write their individual LEA or school(s) to request access</u> to the pupil records. Parents may authorize counsel, advocates, investigators or other individuals to review and obtain copies of their children's records.

While the HO found that the parent's counsel requested the student's records in a letter dated September 5, 2006, he further found that there was "no evidence the parent and/or her representative made an effort to go to Hamilton and copy the student's records….The above cited provisions indicate counsel must do more than merely request copies of documents by letter. There was no evidence DCPS denied the parent or her counsel access to the student's records." (R. at 9)

Plaintiff does not contend here, nor did any witness testify at trial, that the parent or any of her representatives went to Hamilton school to view and copy the student's

---

[4] "SHO-SOP"

records and were denied access.  Plaintiff's counsel merely claimed at the hearing that it was "not fair" for the parent to have to obtain the records herself, gratuitously arguing, without evidentiary support, that it would take six months to a year of fighting to get the records. (Motion 190) Accordingly, the HO was correct when he stated that he could not conclude, "based solely on the absence of records…that DCPS denied the student FAPE."  (R. at 9)

## V.    The Confrontation Clause of the Sixth Amendment is Inapplicable to the Instant Case.

Plaintiff contends that the case presented by DCPS at the administrative hearing was based in large part on hearsay and should not have been permitted.  (Motion at 29) While plaintiff concedes "[t]he IDEA does not explicitly prohibit hearsay in hearings," she then inexplicably invokes the Confrontation Clause of the United States Constitution to argue that the alleged hearsay testimony should have been barred.  The Confrontation clause, which is applicable to <u>criminal</u> cases, "in conformance with the Framers' preference for <u>face-to-face accusation</u>…establishes a rule of necessity….[T]he prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes <u>to use against the defendant</u>."  *Idaho v. Wright*, 497 U.S. 805,814 (1990).

This is not a criminal case.  Nor is there any potential witness who could or would have accused the plaintiff of any misdoing at the hearing.  Thus the Confrontation Clause and any potential penalty that might be assessed for not conforming to it, are completely inapplicable here.

Nonetheless, even if this Court were to determine that the rationale for the Confrontation Clause was applicable to this administrative hearing, plaintiff has failed to

establish why it should be applied.  At the administrative hearing plaintiff's counsel

asserted that he had "compelled" the attendance at the hearing of the student's counselor,

Paul Williams, and because that witness was not present, the testimony of his supervisor,

Mr Ugoji, should be stricken.  (R. at 224)  However, plaintiff's counsel presented no

evidence that he had complied with the applicable procedures for compelling witnesses

and, in fact, appeared to assume it was the responsibility of DCPS to assure the presence

of plaintiff's witnesses.[5]

> Section 800.1.4 of SHO-SOP provides:
>
> A party has the right to compel the presence of witnesses.  <u>It is the responsibility of the party seeking relief to secure the presence of their witnesses</u> for due process hearings by serving the witness with a Notice to Appear or other form of notification.  Only if a relevant witness refuses to appear at the hearing voluntarily, the party requesting the witness has the right to request the hearing officer to issue a "Notice to Appear" to the requested party.  Any Notice to Appear shall be issued by the Chief Hearing Officer and shall be served by the party requesting the Notice….
>
> <u>It is the responsibility of the requesting party to serve the Notice to Appear</u>.  The Notice to Appear must be served by delivering a copy to the witness by certified mail, fax transmission or hand delivery.  If the witness is a party, or an employee of a party, the Notice to Appear shall be served on the witness' attorney of record.  (Emphasis added)

Plaintiff's counsel does not claim that he served Mr. Paul Williams or any other

potential witness with a Notice to Appear.  Rather he believes that he complied with the

provision of "other form of notification" when he sent a letter to Ms. Stephanie Ramjohn

Moore, an assistant general counsel for DCPS, stating that he "hereby compels" the

presence of a series of both named and unnamed persons.[6]  There can be no question that

---

[5] Mr. Tyrka: "[I]t's hearsay from a DCPS employee which they are fully capable of producing….[DCPS] can order their employees to be wherever they need them to be…:  R. at 224-225.

[6] "1. Any DCPS employee and/or agent who has drafted notes of any meeting or telephone conversation, which DCPS intends to submit as evidence at this hearing….5. All of this child's current special and general education teachers…."  (R at 22)

such a letter does not conform to section 800.1.4 of SHO-SOP.  Just as in any court of law, the burden of producing a party's witnesses at an administrative hearing or a trial, rests with the party seeking their presence, not with the opposing party.  Plaintiff does not claim that he attempted to secure the presence of his desired witnesses and that they refused to appear at the hearing voluntarily.  Nor does he claim that he ever requested that the Chief Hearing Officer issue a Notice to Appear to a non-cooperative witness.  Thus, the HO's decision to deny plaintiff's motion to strike was correct and should be upheld.

Further, the type of testimony to which plaintiff objects, is the same type of testimony that is consistently elicited at an administrative hearing, where the rules of evidence are much more relaxed that in a judicial forum.  For example, plaintiff's counsel objects to the fact that his own client, when asked by the HO if she had any conversations with the student's teachers, responded, without objection by counsel: "[w]ell his teachers and all, say that he's doing good in class."  (R at 253)  Plaintiff's counsel further objects to that part of the testimony of Mr. Ugoji, the special education coordinator at Hamilton Center, where he stated that the he knew the student had received specialized instruction and psychological counseling, because as a supervisor he discussed the student's case with the clinician providing the services.  (R at 224)   In the first instance, there was no objection to the testimony of plaintiff, and thus no objection can be raised now.  Secondly, her testimony would fall under a party's admission exception to the hearsay rule.  With regard to the testimony of Mr. Ugoji, it is not hearsay, as there was no out of court "statement" referenced.  *See* Federal Rule of Evidence 801.

**VI.     Plaintiff Has Failed to Establish that DCPS Did Not Provide R.H. With Necessary Instruction and Services.**

Plaintiff seeks in her motion, as she did at the hearing, that the Court make an inference that because DCPS did not produce documentation that the student was receiving the services required by his Individualized Education Plan ("IEP"), the services were not given.  Plaintiff's argument fails for a number of reasons.  First, the burden of proof is the responsibility of the party seeking relief.  *See 5 DCMR 3030.3.*  At the due process hearing it was the parent who was seeking relief and had the burden of proof that the action and/or inaction or proposed placement was inadequate to provide the student with FAPE."  However, other than seeking an inference that because DCPS did not present all of the student's records, he must not be receiving the required services, plaintiff presented no evidence that the services were not being provided.

DCPS, on the other hand, presented a witness, Charles Ugoji, Special Education Coordinator at the Hamilton Center, who testified "credibly" that the student received the full time specialized instruction and related services required by his 2004 IEP.  (R. at 11, 223)  The only objection at the hearing to Mr. Ugoji's testimony was that it was hearsay. (R. at 224)  However, as stated above, this testimony of Mr. Ugoji was not hearsay since there was no out of court "statement" referenced.  Further, the administrative record contains plaintiff's exhibit, a Clinical Psychological Report dated 7/18/06, which states that the student "receives 24.5 hours per week of special instruction, with the related services of counseling."  (R. at 23)  Accordingly, the HO was correct to not base his decision on the inference sought by plaintiff, -- that because DCPS did not provide certain records, the instruction and services were not provided.

19

**VII.    DCPS Provided the Student With an Appropriate Placement**

Plaintiff alleges that because the written prior notice DCPS provided the parent when it initially placed the student at Hamilton did not contain all the information spelled out in 20 U.S.C. Sec. 1415 (c) (1), the placement itself was inappropriate.  However, plaintiff neglects to state that all the information she believes is missing was elicited at the MDT/IEP meeting, held on 6/16/2004, which both the parent and the child's advocate attended.  (R. at 42)  At the meeting, there was a discussion among DCPS psychologist, Denise Daniels, Brenda Kinsler, principal at Hamilton, Etta Jalloh, the child's parent, and the child's advocate Sharon Millis, concerning the student's evaluations and their significance.  The school psychologist determined that, based on a review of the student's clinical evaluation, as well as observations and school assessments, R.H. qualified for special education as a student with an emotional disability ("ED") and that he needed a full time program and counseling.  (R. at 45)  Ms. Millis questioned the finding of "ED," opining that the student may have "ADHO", but agreed with the team that the student needed a full time therapeutic program and counseling.  (R. at 47)  The team further discussed that the Center for Life Enrichment, a private school, where the student had been attending, had not submitted any reports to DCPS and no one from the school was present at the meeting.  (R. at 46)

As a result of their discussions the team determined that the student should be removed out of a regular education classroom.  Thus, under "Placement Considerations and Justification," DCPS "rejected" both a general education classroom setting and a combination of general education and special education setting because of "continued school failure."  (R. at 41)  The team "accepted" an "out of general ed" setting.  (R. at 41)

The team also discussed extra school year ("ESY") services and determined that "the severity of [the student's] behavior warrants ESY service." (R. at 41) The team further discussed what placement would be appropriate for the student. The child's advocate proposed Episcopal, Rock Creek and High Road on the grounds that those schools offer small class size, behavior intervention, and support staff that includes a psychologist. (R. at 43). Brenda Kinsler, principal at Hamilton Center, discussed why that school was appropriate. "Hamilton also offers small class size, behavior intervention, [and] related services." (R at 43) The DCPS team members also opined that Hamilton could provide the services required by the student's IEP. (R at 44)

Thus, in its Prior to Action Notice DCPS wrote in the box for "Description and Explanation of agency action proposed or refused" that "DCPS feels that Hamilton Center is an appropriate placement that can meet R.H.'s needs." (R. at 52) In the box labeled "Description of Other Options Considered and reasons for rejection of each option" it was noted that the "Parent & advocate disagree - and have proposed Episcopal, High Road & Rock Creek. When DCPS has an appropriate program it gives first priority to that prog[ram]."[7] (R. at 52) Accordingly, it is clear that DCPS followed both the letter of the law – 20 U.S.C. Sec. 1415 (c)(1) – as well as the spirit of the law when it provided "an explanation of why the agency proposes or refuses to take [an] action; provided "a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;" provided "a description of

---

[7] 38 D.C. Code §2501(c) provides that special education placements shall be made in the following order of priority provided that the placement is appropriate for the student:

      (1) DCPS schools or District of Columbia public charter schools;
      (2) Private or residential District of Columbia facilities; and
      (3) Facilities outside of the District of Columbia.

other options considered by the IEP Team and the reasons why those options were rejected;" and provided "a description of the factors that are relevant to the agency's proposal or refusal."

While the HO determined that the student's 2004 IEP was inappropriate because not all of the student's evaluations had been completed, he nonetheless correctly determined that because the IEP called for full time specialized instruction and related services, which were provided, the parent failed to sustain her burden of proof that Hamilton was an inappropriate placement.

Additionally, the HO was correct in his determination that the Hamilton Center continued to be an appropriate placement for the student. "The parent testified that she has received report cards and progress reports for the student that indicated he is making progress.[8] Although the parent testified she does not believe he has made progress, her testimony alone was insufficient for the Hearing officer to conclude Hamilton is an inappropriate placement…There was insufficient evidence presented by Parent's counsel, given the student was provided specialized instruction and related services at Hamilton, that the student was denied FAPE." (R. at 11)

Plaintiff further tries to establish that Hamilton is an inappropriate placement by stating that two recent evaluations of the student indicate that some of his test scores have decreased. (Motion at 34-36). Plaintiff asks the Court to infer that the drop in test scores is the result of Hamilton not having provided the student with the instruction and services he needs. (Motion at 36) However, plaintiff ignores the diagnostic impression of the Licensed Psychologist and Licensed Professional Counselor when they state that "[i]n

---

[8] As stated above, the plaintiff testified at the due process hearing that "his teachers and all, say that he's doing good in class." (R at 253) Plaintiff also testified that his report cards indicate that he is doing well at school. (R. at 252)

most areas [the student's] academic functioning appears to be lower than would be expected based on the reported WISC-IV scores.  The exception is [the student's] Listening Comprehension skills.  <u>This discrepancy may be related to his history of emotional issues, as described in the clinical evaluation.  That is, these emotional issues may be interfering with his academic achievement."</u>  (Def's Ex. 3 attached to Amended Complaint—Psycho educational Report, Re-evaluation)  Thus it would have been completely improper for the HO to infer that any lack of progress on the part of the student was based on an improper placement.

**VIII.   When a D. C. Public School Can Provide a Student with an Appropriate Placement, It Must be Given Priority Over a Private Placement.**

Plaintiff argues that because the HO concluded that Rock Creek Academy can provide the student with the specialized instruction and related services prescribed in his most recent IEP, this Court should order the student placed there.  However, plaintiff ignores the mandate of 38 D.C. Code §2501(c), which provides that priority must be given to placing a student in a D.C. public school, which can provide an appropriate placement where he will receive educational benefits, over a private placement.  Here, DCPS followed the statutory guidelines in determining the student's educational placement.

The student was initially placed at Hamilton because the MDT/IEP team agreed that the student was in need of a full time specialized education program and counseling, which Hamilton could offer.  (R. at 47, 44) The parent and the child's advocate also opined that the student should be in a school with a small class size, behavior intervention, support staff and a psychologist, all of which Hamilton has.  (R. at 43)   The

parent testified at the due process hearing that the student's teachers and his report cards indicate that the student has done well during his time at Hamilton.  Accordingly, the HO correctly concluded that the plaintiff failed to sustain her burden of proof that Hamilton was not an appropriate placement.  (R. at 11)

IX.    **Plaintiff Can Receive No Further Relief Concerning Her Allegation That DCPS Did Not Perform a Speech/Language Evaluation between June 16, 2004 and July 31, 2006,**

Plaintiff seeks to have this Court make a finding that DCPS did not perform a speech and language evaluation that was recommended in the student's June 16, 2004, IEP.  (Motion at 37)  However, while the HO made one finding that plaintiff had failed to meet her burden of proof that the evaluation was not completed, based on his refusal to accept plaintiff's "blanket claim [that] DCPS did not provide [plaintiff] with the student's records….," and thus infer that the evaluation was not competed, he also found that plaintiff had met her burden of proof that DCPS denied the student FAPE by failing to provide an appropriate IEP at the July 19, 2006, MDT meeting because the IEP was not based on current evaluations.  (R. at 10)  As a result, the HO ordered DCPS to conduct a speech/language evaluation. (R. at 12)  Accordingly, since the HO ordered the sought relief, there is not further relief this Court can provide.

## CONCLUSION

For the reasons stated above, this Court should deny plaintiff's Motion for Summary Judgment and grant defendant's Cross Motion for Summary Judgment.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2


/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov


July 6, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
Etta Jalloh, on behalf of her
 minor child, R.H.,                        )

   Plaintiffs,              )

    v.                         )   Civil Action No.07-0063 (RMC)
District of Columbia,
         )

   Defendant.              )
_____)

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
NOT IN DISPUTE**

1. On June 16, 2004, DCPS convened an MDT/IEP meeting for R.H., the student.  (R. at 31)

2. At the meeting the MDT/IEP team developed an IEP for R.H.  R. at 31)

3. The team determined that the student was in need of 26 hours per week of specialized instruction and 1.5 hours of psychological services.  (R at 31, 47)

4. At the meeting the parent proposed sending her child to a private school, either Episcopal School, Rock Creek Academy, or High Road Academy, because these schools offered small class size, behavior intervention, support staff and a small setting.  (R. at 43)

5.      At the meeting DCPS proposed the Hamilton Center, a public school, which also offered small class size, behavior intervention, and related services.  (R at 43)

6.      The DCPS members of the MDT team determined that Hamilton was an appropriate placement which could meet the student's IEP requirements. (R. at 44)

7.      The student's IEP notes, under the heading "Least Restrictive Environment Determination/ Service Alternatives," states that "[b]ecause of the intensity necessary, [the student] cannot be educated in a general ed setting."  (R at 41)

8.      Under the heading of "Placement Considerations and Justification," the IEP states  that a general education combined with a special education setting is rejected because of the potential for failure, while an Out of General Education setting is accepted.  (R at 41)

9.      The MDT notes from the meeting reflect that a discussion regarding placement occurred between the child's educational advocate and DCPS, with the advocate proposing a private placement at either Episcopal School, Rock Creek Academy or High Road Academy.  (R at 43)

10.      DCPS proposed Hamilton Center.  (R at 43-44)

11.       DCPS issued a "Prior to Action Notice" regarding the student on June 16, 2004.  (R. at 52)

12.      The Prior to Action Notice gives a "Description and Explanation of the agency action which was proposed or refused."  "DCPS feels that

Hamilton Center is an appropriate placement that can meet [the student's] needs."  (R at 52)

13.    In the box for "Description of Other Options Considered and reasons for rejection of each option, DCPS wrote "Parents [/] advocate – disagree and have proposed Episcopal, High Road and Rock Creek.  When DCPS has an appropriate program it gives first priority to that prog[ram]."  (R at 52)

14.    The student's parent did not request a speech/language evaluation at any time after the June 16, 2004, meeting until September 29, 2006, the date of a due process hearing.  (R. at 116)

15.    DCPS convened an MDT/IEP meeting on behalf of the student on July 19, 2006.  (R. at 61)

16.    Neither the parent nor her advocate requested a speech/language evaluation on July 19, 2006.  (R. at 61-65)

17.    The MDT/IEP meeting was reconvened on August 31, 2006.  (R. at 66)

18.     Neither the parent nor her advocate requested a speech/language evaluation on August 31, 2006.  (R. at 66-68)

19.    DCPS attempted to hold an MDT/IEP meeting in 2005, but received no cooperation from the parent or her advocate.  (Amended Answer, Ex. 2)

20.    DCPS issued verbal and written requests for the parent and/or her advocate to attend an IEP meeting on March 23, May 13, May 24, June 8, 2005, but received no response.  (Amended Answer Ex. 2)

21.    On June 29, 2006, an MDT/IEP meeting was confirmed for July 14, 2006, but neither the parent nor her advocate showed up.  (Amended Answer Ex. 2)

22.    On July 19, 2006, DCPS convened an MDT/IEP meeting to develop a new IEP for the student, to review the services that were being provided to him, and to discuss current placement.  (R at 61)

23.    At the July 19th meeting the parent expressed her desire for a change in placement for the student because she believed the student was not making sufficient progress at Hamilton.  (R. at 63)

24.    The staff at the Hamilton Center stated at the meeting that the student has made progress in the program and that his current placement was appropriate.  (R at 63)

25.    At the hearing, the plaintiff testified that the student's teachers told her R.H. was doing well in his classes.  (R. at 253)

26.    The plaintiff also testified at the hearing that the student's report cards indicate he is doing well. (R. at 252)

27.    Charles Ugogi is the special education coordinator at the Hamilton Center. (R. at 17, 222)

28.    Mr. Ugogi's duties include monitoring and supervising the clinical staff at Hamilton Center.  (R. at 222)

29.    Mr. Ugoji testified at the due process hearing that the student received specialized instruction and psychological counseling.  (R. at 223)

30.     The Hearing Officer found the testimony of Mr. Ugoji to be credible.  (R. at 11)

31.     At no time between June 16, 2004 and September 29, 2006, has the parent or her advocate or counsel contacted the Hamilton Center to review and copy the student's records.  (R. 1-269)

32.     DCPS did not deny the `parent, her advocate, or her attorney access to the student's records.  (R. at 9)

33.     On July 31, 2006, the parent filed a due process complaint.  (R. at 111).

34.     On August 16, 2006, DCPS filed a Response to the due process complaint. (R. at 116-117)

35.     In its Response DCPS denied that it failed to complete a speech and language evaluation and psycho-educational evaluation."  (R at 116)

36.      In its Response DCPS denied that the Hamilton Center was not reasonably calculated to provide a Free and Appropriate Public Education to this student.  (R at 116)

37.     In its Response DCPS also set forth a defense that recommendations are not mandates for the MDT team to follow.  (R at 116)

38.     Plaintiff did not serve any potential witness with a Notice to Appear.  (R. at 224-225)

39.    Plaintiff did not request the Chief Hearing Officer to issue a Notice to

Appear to any non-cooperative witness.  (R. at 224-225)

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

July 6, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
Etta Jalloh, on behalf of her
  minor child, R.H.,                                   )

        Plaintiffs,                    )

         v.                          )           Civil Action No.07-0063 (RMC)
District of Columbia,
                          )

        Defendant.                    )
_____ )

### **DEFENDANT'S STATEMENT OF MATERIAL FACTS WHICH ARE IN DISPUTE**

Paragraph numbers below correspond to the paragraph numbers in the Plaintiff's Statement of Material Facts.

3.      Defendant disputes plaintiff's material fact numbered 3. At the June 16, 2004 meeting, DCPS developed an individualized education program ("IEP") for R.H., in which goals and extended school year ("ESY") services were provided, and an appropriate placement was determined.  (R. at 43, 44)

4.      Defendant disputes plaintiff's material fact numbered 4.  At the June 16, 2004 meeting, the MDT team recommended a review of the IEP in 30-60 days. (R. at 42)

6.      Defendant disputes plaintiff's material fact numbered 6.  The parent did not request a speech and language evaluation after the June 16, 2004, MDT/IEP meeting until the September 29, 2006, due process hearing.  (R. at 116)

7.      Defendant disputes plaintiff's material fact numbered 7.   DCPS issued verbal and written requests for the parent and/or her advocate to attend an IEP meeting on March 23, May 13, May 24, June 8, 2005, but received no response.  On June 29, 2006, an MDT/IEP meeting was confirmed for July 14, 2006, but neither the parent nor her advocate showed up.  (Ex. 2 of Amended Answer)

9.       Defendant disputes plaintiff's material fact numbered 9.  At the July 19, 2006, meeting plaintiff requested a change of placement for R.H., but DCPS concluded the student had made progress at the Hamilton Center and this his current placement was appropriate. (R. at 63, Amended Answer at par. 15)

11-12.  Defendant disputes plaintiff's material facts numbered 11-12. These material facts do not contain any reference to the record as required by LCvR 66.1.

14. On August 16, 2006 DCPS served on Plaintiff's counsel a Response to the due process complaint. (R. at 116-117).

17.      Defendant disputes plaintiff's material fact numbered 17.  Ms. Millis did not request to see or copy R.H.'s school records at the July 19, 2006, meeting.  (R. at 62, 64-65)

18.      Defendant disputes plaintiff's material fact numbered 18.  Ms. Millis did not request documentation of R.H.'s progress at the August 31, 2006, meeting.  (R. at 68)

20.      Defendant disputes plaintiff's material fact numbered 20.  In a letter dated September 5, 2006, plaintiff's counsel asked Mr. Ugoji to make a copy of numerous records, including "any other records or correspondence you believe are relevant."  At no time did plaintiff's counsel make a request to visit the student's school to review and copy his records.  (R. at 119)

21.    Defendant disputes plaintiff's material fact numbered 21.  At no time did plaintiff's counsel make a request to visit the student's school to review and copy his records.  (R. at 119)

22.    Defendant disputes that portion of plaintiff's material fact numbered 22, which states that a request for records was made on September 30, 2006.  Defendant agrees that DCPS provided the plaintiff with a number of the student's records. (R. at 23-105)

23.    Defendants dispute plaintiff's material fact numbered 23. This material fact does not contain any reference to the record as required by LCvR 66.1.

28.-30.  Defendants admit that Rock Creek Academy can provide instruction to R.H. in accordance with his most recent IEP, can provide a classroom with small student to teacher ratio with other emotionally disturbed children of comparable age, and can provide the counseling prescribed in his IEP. However, the Hamilton Center, a DCPS public school can offer the same services. (R. at 43-44.)

Respectfully submitted,


LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2


/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel

441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

July 6, 2007