## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| ETTA JALLOH, | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| DISTRICT OF COLUMBIA, | ) |
| **Defendant.** | ) |

Civil Action No. 07-63
RMC

_____

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I.    THE PLAINTIFF WAS ENTITLED TO RELIEF FOR DCPS' FAILURE TO SERVE AN ADEQUATE RESPONSE**

**A.    DCPS Failed to Meet the Response Requirements of the IDEA.**

Notwithstanding its argument subheading,[1] the Defendant, in its Opposition, does not contend that DCPS' Response to the due process complaint met the requirements of §1415(c)(2)(B)(i)(I)(aa)-(dd). As argued in the Plaintiff's Motion, DCPS' Response plainly fails to fulfill the IDEA's requirements; the Defendant's has presented no argument or evidence indicating otherwise.

Instead the Defendant looks to the portion of § 1415 that excuses a local education agency ("LEA") from the response requirement if it has "sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice." 20 U.S.C. § 1415(c)(2)(B)(i)(I); see (Def.'s Opp. 9). DCPS' one prior written notice fails to excuse them from the response requirements because that notice addresses only one of the Plaintiff's complaints, and does that inadequately.

---

[1] "A. DCPS' Response to the Due Process Complaint Met the Requirements of 20 U.S.C. Sec. 1415(c)(2)(B)(i)(I)" (Def.'s Opp. 8.)

As the Plaintiff pointed out in her Motion, DCPS' only "prior notice" was issued with the narrow application to R.H.'s initial placement at Hamilton Center ("Hamilton") on June 16, 2004. (R. at 52.) In her administrative due process complaint, the Plaintiff not only contested that initial placement, but also alleged that DCPS had failed to conduct and review evaluations, to develop adequate individualized education programs ("IEPs"), to provide necessary special education and related services, and to provide an appropriate placement for the years since that initial placement in June 2004. (R. at 144.) The Defendant makes no claim that there was any prior written notice regarding any of those other claims.[2] Because the prior notice did not regard all of "the subject matter contained in the parent's due process complaint notice," a response was required. 20 U.S.C. § 1415(c)(2)(B)(i)(I)

Even regarding the initial placement in June 2004, the prior notice fails to meet the IDEA's prior notice requirement. (R. at 52); see 20 U.S.C. § 1415(c)(1); (Pl.'s Mot. Summ. J. 13-14). The Plaintiff analyzed the failings of the prior notice at length in her Motion, and the Defendant has offered nothing in its Opposition to refute that analysis, or to excuse, for example, the complete absence of "a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action." 20 U.S.C. § 1415(c)(1).

DCPS counsel at the administrative level apparently understood that the prior notice was inadequate, as she did serve a document purported to be a response. Unfortunately, that document was not a true response as defined by the IDEA, and the Defendant does not now defend it as such.

---

[2] The Defendant curiously contends that it had sent a response which "address[ed] the issues in the complaint," (Def.'s Opp. 10) apparently quoting 20 U.S.C. § 1415(c)(2)(B)(ii), the section of IDEA establishing criteria for an "Other Party Response." As DCPS is, for IDEA purposes, a Local Educational Agency, the proper requirements for its Response are found in § 1415(c)(2)(B)(i)(I).

Because DCPS clearly failed to comply with the IDEA's prior notice and response requirements, the issue of an appropriate remedy for this failure was appropriately before the Hearing Officer.

### B.    The Circumstances in this Case Warranted a Default Judgment.

The Defendant contends that there can be no default in the absence of "exceptional circumstances," and that there were in this case no such "severe circumstances" arising from a "deliberate or willful noncompliance with court rules and orders." (Def.'s Opp. 12) (citations omitted). The legal contention is arguable; the factual contention is absolutely false.

The plain language and consistent interpretation of the District of Columbia Superior Court Rules of Civil Procedure indicate that the entry of default under Rule 55(a) is automatic and non-discretionary, and that the Court "need ensure only that there are no unusual circumstances that would justify not entering a default." Digital Broadcast Corp. v. Rosenman & Colin, LLP, 847 A.2d 384, 388-89 (D.C. App. 2004).[3]

The automatic application of the default remedy is especially appropriate in the context of the IDEA, where the administrative procedural framework exists to ensure the speedy disposition of claims, because the timeliness of resolution is crucial and the harm is often ongoing. "Indeed, each day a child is denied a free appropriate education by [] procedural dereliction of a school system he or she is harmed yet again." Blackman, 277 F. Supp 2d at 79. There is no time to allow a negligent litigant to remedy an error.

Regardless of the standard, though, a default is appropriate in the case at bar because DCPS' actions were deliberate and willful. The Defendant contends that, because DCPS filed a

---

[3] Given that the Plaintiff discussed District of Columbia Circuit precedent on the subject at length, it is hard to understand why the Defendant "is unclear why plaintiff believes that the District of Columbia Superior Court Rules of Civil Procedure should be applied." (Def.'s Opp. 11); see (Pl.'s Mot. Summ. J. 17-19); Spiegler v. Dist. Of Columbia, 866 F.2d 461, 464 (D.C. Cir. 1989). Regardless, the Plaintiff would not oppose the application of Federal Rule of Civil Procedure 55(a) in this instance.

document it identified as a "response," "[t]hus, there can be no finding of 'deliberate or willful' noncompliance." (Def.'s Opp. 12.) The Defendant is attempting to sidestep the heart of the question: whether the glaring deficiencies on DCPS' part were deliberate and willful.

A determination of the existence of willfulness in a filing will always require an examination of the source and the context; the deficiencies in the first filing from a pro se litigant should be viewed differently than those in the umpteenth filing from an 20-year veteran attorney, especially if that attorney has been repeatedly warned to change his or her practice. In this case, DCPS' full knowledge of IDEA procedures and forewarning of consequences, plus its longstanding, literally categorical refusal to comply with the IDEA's requirements regarding the content of a response, establish a blatant willfulness in their conduct, one which is well known to parent attorneys and due process hearing officers.

The DCPS attorney at the administrative level has been litigating IDEA administrative cases for over four years, including the entire two years in which the response requirement has been in effect. The DCPS Office of the General Counsel ("OGC") as a whole has litigated literally thousands of IDEA cases since the response requirement came into effect, with each OGC attorney litigating hundreds in that time. Every OGC attorney is very familiar with the requirements of the IDEA.

The OGC is particularly familiar with the IDEA's response requirements, as they have been repeatedly defaulted for failing to serve adequate responses. DCPS' longstanding policy of refusing to provide the information required by the IDEA has elicited the frustration of Hearing Officers for some time.

Since December 2005 at the latest, multiple Hearing Officers have been inclined to enter default judgments against DCPS when it has refused to serve a response. Exhibits 1-5.[4,5] Some of these orders have been drafted for the express purpose of putting "DCPS on notice that it risks default judgments anytime it cavalierly disregards its statutory procedural obligations." Exhibit 2 at 6, Exhibit 3 at 6.[6] These judgments have included defaults for no response and for inadequate responses. See Exhibits 1-5.

These default orders resulted at least in part from the 2005 decision of this court in Massey v. District of Columbia, a case discussed in the Plaintiff's Motion. 400 F. Supp. 2d 66. In that decision, Judge Lamberth criticized at length DCPS' "blatant disregard for the statutory requirement of a written response":

> ...DCPS may not determine the form of its response:  the required content of the written response is precisely detailed in the IDEA....[T]he IDEA does not allow DCPS to respond generally to the substance of the complaint in whatever form it deems appropriate.
> ***
> Congress' delineation of the four requirements makes clear that general responses are not acceptable.

400 F. Supp. 2d at 71.

Despite this Court's admonition, and Hearing Officers' regular demand that DCPS comply with the IDEA's response requirement, DCPS has steadfastly refused to change its behavior, which can now only be interpreted as policy. So far this year,[7] the office of Plaintiff's counsel has filed 117 due process complaints with DCPS, but has received only 28 written responses. See Exhibit 6. Only two of those responses were served within ten days of the filing

---

[4] Identifying information in the HOD exhibits has been redacted. The Plaintiff has unredacted copies available for review by Defendant's counsel or for filing under seal, if necessary.

[5] These exhibits constitute only a sampling of the default judgments obtained by Plaintiff's counsel. Other attorneys have reported receiving them as well.

[6] In these same attached HODs, the Hearing Officer noted, when issuing this warning, that "DCPS has also persistently ignored [his] warnings that its Prior Notice form constitutes a *per se* violation of 34 CFR § 300.503(b)." Exhibit 2 at 6, footnote 10; Exhibit 3 at 6, footnote 8.

[7] From January 1, 2007 until July 31, 2007.

of the complaint, as required; fifteen of them were served at or after the deadline for "five-day disclosures" as set out by 34 C.F.R. §300.512(b), thus preventing the petitioner in each case from considering the response in preparation for the hearing. See id.

On the rare occasion, such as in this case, when a written response is timely filed, the document does not meet the IDEA requirements regarding content. Stated simply, in the hundreds of cases litigated by Plaintiff's counsel since the institution of the response requirement, DCPS has never served a response that complies with the IDEA.[8] It can only be assumed that DCPS has similarly failed to comply with the IDEA's requirements in its cases with other parent attorneys, and some hearing officers have confirmed that assumption with statements on the record to that effect.

With that context in mind, the cases cited by the Defendant have no resemblance to the case at bar. In Iannucci v. Pearlstein, the "technical rather than actual failure" of the appellant to file a valid amended answer resulted from appellant's counsel's inability to meet an extended deadline due to illness. 629 A.2d 555, 558 (D.C. 1993). In District of Columbia v. Greene, "the District failed to furnish the answers [to plaintiff's interrogatories] by [the deadline] because the attorney assigned to the case had become sick and was on leave." 539 A.2d 1082, 1083.

In addition to the illness factor, the cited cases had in common the important fact that the erring party had made a good faith effort to take the required action.[9] In the case at bar, DCPS submitted a clearly inadequate response at the administrative level – as it consistently does, as a matter of policy or of casual habit – and showed no acknowledgement of its error or intent to

---

[8] For obvious reasons, the Plaintiff does not attach hereto every complaint and response (if any) from every one of these cases. If the Defendant contends that DCPS has ever served a response that strictly conforms to the IDEA's requirements, the Plaintiff consents to any request by the Defendant for leave to file as an exhibit a copy of such a response and the underlying due process complaint filed by Plaintiff's counsel.

[9] In Iannucci, the appellant had sent opposing counsel a "draft" motion for extension which was (apparently inadvertently) not filed with the court, and in Greene, the defendant did in fact produce the interrogatory answers, albeit late. 629 A.2d at 557; 539 A.2d at 1083.

rectify its error. That difference highlights DCPS' actions in this and many other cases as deliberate and willful.

### C.     No Showing of Harm is Necessary for a Default Judgment, but DCPS' Willful Noncompliance Denied R.H. FAPE Regardless.

The Defendant argues that a default judgment should not have been made because DCPS' failure to serve a true response did not cause R.H. to suffer "educational harm." In taking that position, the Defendant applies the wrong standard, ignores the offense done to the Plaintiff's due process rights, and implicitly asks the Court to endorse DCPS' categorical refusal to respond to due process complaints as required by the IDEA.

### 1.     No showing of harm is necessary to justify a procedural remedy.

The Defendant argues that a petitioner must show that the child has been substantively harmed by the procedural violation in order to obtain a default judgment. The application of that standard would eviscerate the IDEA's due process rights while simply making no sense.

A parent involved in an IDEA case must rely on the statute's procedural protections, including the response requirement, as the only route to access to certain information necessary to make a case. See Schaffer v. Weast, 546 U.S. 49, 60-61 (2005) (placing burden of proof in IDEA hearings on petitioning parent because the IDEA provides routes for access to information that is in the control of the school system). When DCPS violates the due process protections and withholds that information, the parent may often find it impossible to establish anything at all regarding the student's educational condition (as was nearly so in the case at bar), much less the specific substantive harm done him by the violation. In the absence of a default or similar relief, DCPS would thereby insulate itself in an invulnerable legal tautology made of its own procedural violations.

Even where the parent does have sufficient evidence in his or her control, it is completely nonsensical to require a party to show substantive harm – as opposed to prejudice – resulting from a procedural protection related to the hearing process, because such a violation will rarely have a direct impact. In this way, DCPS' failure to serve a response (or an response in compliance with the law) is no different than, for example, DCPS' failure to appear at the hearing, a far less common occurrence. No one would argue that the failure to appear at the hearing somehow causes a direct harm to the student. But regardless, no one would argue (one hopes) that DCPS could not be defaulted for failing to appear at the hearing.

In that hypothetical situation, the issue is not that the failure to appear at the hearing has directly harmed the student; the issue is that, by failing to appear at the hearing, DCPS has made a decision on substantive grounds impossible, and has thereby forfeited its right to argue that the original violations in the complaint did not harm the student. Similarly, by failing to serve a response in compliance with the IDEA's requirements, DCPS makes a fair decision on the merits impossible, and thereby forfeits its right to argue against the original allegations.

It is for this reason that the IDEA contains something of an elastic clause regarding Hearing Officer rulings on procedure: "Nothing in this subparagraph shall be construed to preclude a hearing officer from ordering a local educational agency to comply with procedural requirements under this section." 20 U.S.C. § 1415(f)(3)(E)(iii).

This is not to say that the question of prejudice, as opposed to substantive harm, is not a valid consideration. There are cases in which DCPS serves a response that does not remotely comply with the IDEA, but because of the nature of the complaint, adherence to the strict provisions would be pointless. For example, where a complaint alleges the failure to perform an evaluation, and there is no dispute that the evaluation was necessary, DCPS might respond

8

simply by stating that it has performed the evaluation, or perhaps that the parent obstructed the process. In such cases, the questions of what records DCPS considered when it acted or failed to act, what other options it considered, etc., are simply inapplicable, and the parent is not prejudiced by the failure to produce that information. In such a case, a default would clearly be inappropriate.[10]

   In this case, there is no question that the Plaintiff was severely prejudiced by DCPS' failure to serve a full and valid response, along with many other violations. At her due process hearing, the Plaintiff bore the burden of proof regarding each of her claims, a burden shifted to her as a result of the Supreme Court's holding in Schaffer. 546 U.S. 49. In deciding that this allocation of the burden was appropriate in IDEA hearings, the Supreme Court explicitly relied on the procedural safeguards in the 2004 amendments to the IDEA, noting that:

> School districts have a natural advantage in information and expertise, but Congress addressed this when it obliged schools to safeguard the procedural rights of parents and to share information with them. As noted above, parents have the right to review all records that the school possesses in relation to their child…Additionally, in 2004, Congress added provisions requiring school districts to answer the subject matter of a complaint in writing, and to provide parents with the reasoning behind the disputed action, details about the other options considered and rejected by the IEP team, and a description of all evaluations, reports, and other factors that the school used in coming to its decision. Prior to a hearing, the parties must disclose evaluations and recommendations that they intend to rely upon…These protections ensure that the school bears no unique informational advantage.

Schaffer, 546 U.S. at 60-61. (internal quotations and citations omitted)

   DCPS' refusal to comply with the IDEA's prior notice and response requirements, as well as its disclosure rules, completely undermined the statutory foundation upon which the holding in Schaffer rests. DCPS' willful noncompliance placed the Plaintiff precisely where the

---

[10] This is not to say, though, that default would not be appropriate for the failure to file any response at all, or timely to file it, as such failures will almost certainly prejudice the parent's ability to prepare his or her case.

Supreme Court felt she should not have been: forced to establish facts peculiarly within the knowledge of her adversary.[11]

In determining the prejudice to the Plaintiff at the administrative hearing, the Court has an unusual hindsight advantage in this particular case. By the Court's order, the Defendant has now produced two evaluations that DCPS had withheld from the Plaintiff during the administrative proceedings. See (Def.'s Am. Ans., Ex. 3-4). As discussed at length in the Plaintiff's Motion, a comparison of those evaluations leaves no question that R.H.'s academic abilities have actually declined during his time at Hamilton. See (Pl.'s Mot. Summ. J. 34-36). It can therefore now be said with great certainty that DCPS' procedural violations prejudiced the Plaintiff by denying her the use of potentially case-winning pieces of evidence.

2.    DCPS' failure to serve a full and valid response denied R.H. FAPE.

As discussed above, it is nonsensical and destructive to withhold relief for procedural violations relating to the hearing process absent a showing of direct substantive harm. Regardless, though, a showing of "harm" is never so much the issue as a showing of denial of FAPE. The Defendant string-cites several decisions regarding the impact of procedural violations, but neglects to address the fact that all of those cases were decided before the recent amendments to the IDEA, which amendments included a codification of the relationship between procedural violations and FAPE.[12]

The IDEA now explicitly states that a hearing officer may rule on the basis of a procedural violation if that violation: "(I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the

---

[11] This violation is particularly disturbing where, as here, the evaluations withheld by the Defendant prior to the hearing (but disclosed as exhibits to its Amended Answer in this case) demonstrate the student's alarming lack of academic progress at the LEA's chosen placement. See (Def.'s Am. Ans., Ex. 3-4); (Pl.'s Mot. Summ J. 34-36).

[12] In fact, the Defendant goes as far as to refer to the "IDEIA" – a 2004 Act, in the parenthetical summarizing a 1999 case. (Def.'s Opp. at 13.)

decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). The showing of "educational harm" that the Defendant contends is necessary is therefore only one of three possible bases.

Each of the other two bases is clearly present in this case. By failing to provide the Plaintiff, the parent, with the information to which she was entitled prior to the hearing, DCPS both: 1) "impeded [R.H.'s] right to a [FAPE]" by interfering with the Plaintiff's presentation of her case; and 2) significantly impeded [her] opportunity to participate in the decisionmaking process," in this case at the hearing.

When this Court has been presented with DCPS' willful noncompliance firsthand, there has been a clear emphasis on enforcing procedures as a means of protecting students' substantive rights under the IDEA. See Massey, 400 F. Supp. 2d at 74 ("DCPS cannot be allowed to disregard the procedural requirements, thereby failing to provide children with FAPEs, all the while giving no assurance that it is capable of recognizing and remedying errors made during its placement process."); Blackman v. District of Columbia, 277 F. Supp. 2d 71 (finding that DCPS' failure to provide timely due process hearings caused plaintiffs irreparable harm).

## II. THE HEARING OFFICER ERRED IN FINDING THAT DCPS HAD NOT DENIED ACCESS TO STUDENT RECORDS.

As a preliminary point, it should be noted that DCPS apparently does not contest that, if the Plaintiff was denied access to records, the Hearing Officer should have granted some relief for that violation.

Instead, the Defendant claims that "[p]laintiff does not contend here, nor did any witness testify at trial [sic], that the parent or any of her representatives went to Hamilton school to view

and copy the student's records and were denied access." (Def.'s Opp. 15-16.) That statement is plainly false and irrelevant regardless.

The Plaintiff clearly does now contend that her representatives were denied access to R.H.'s records. See (Pl.'s Mot. Summ. J. 24-26) ("Ms. Jalloh's representatives requested records from Hamilton…twice in person…[the Plaintiff's special education advocate] Ms. Millis continued her requests for records at the August 31, 2006 meeting[.]").

At the hearing, the Plaintiff argued throughout that the special education advocate had been denied access to R.H.'s records. (See R. at 170-171 ("Now we were there in person on two occasions on [sic] the last few months and they didn't have them for us then even though we requested them."); R. at 188-89 ("in both July and August, the advocate specifically complained about the absence of records"); R. at 195 ("Request[s] were made in July and in August and then by letter in September.")). Instead of testimony, the Plaintiff presented documentation of the attempts to obtain records in person at the July 19 and August 31, 2006 meetings at Hamilton, including the notes of DCPS' own witness, Mr. Ugoji. (R. at 61-68.)

It's falsity aside, the Defendant's assertion is irrelevant and misleading, as the Plaintiff was not required to make in-person requests for records. According to the Student Hearing Office's Standard Operating Procedures, "[p]arents should call or write their individual LEA or school(s) to request access to the pupil records." (R. at 9), quoting SOPs § 800.2; see (Pl.'s Mot. Summ. J. 26).

Presenting a red herring, the Defendant, on page 16 of its Motion, selectively quotes Plaintiff's counsel's statements at the hearing to suggest that there had been no argument supporting Plaintiff's counsel's requests for inferences. Counsel's full statement reads as follows:

> Now there have been times where I have brought a hearing specifically to produce records, but when we have a situation where we already have indication[s] that a child is not doing well and we're talking about something as substantial as the nature of the placement itself, it is not fair to say to the parent that you have to go through what can be, given the time lines[,] six months or a year[] of fighting over getting records just so you can see whether the placement is appropriate or not."

(R. at 190.)

As is clear from the full statement, Plaintiff's counsel did not "gratuitously" argue that it would take six months to a year to obtain the records but rather that a separate due process complaint and hearing to obtain the records would be unduly time consuming, and therefore detrimental to the child's educational development. See Amanda J. v. Clark County Sch. Dist., 267 F. 3d 877, 892 (9th Cir. 2001) (holding that, under IDEA, a school district's failure to produce a disabled child's records denied FAPE).

DCPS denied the Plaintiff access to R.H.'s records and, as argued in the Plaintiff's Motion, its refusal to comply with the procedural requirements of the IDEA effectively denied the Plaintiff her right to examine R.H.'s records and denied her the ability to participate meaningfully in the formulation of R.H.'s IEP at both meetings and at her due process hearing.

## III.    THE HEARING OFFICER'S RELIANCE ON HEARSAY VIOLATED THE PLAINTIFF'S RIGHT TO CONFRONT, CROSS-EXAMINE, AND COMPEL WITNESSES

The Defendant devotes two paragraphs to arguing that the Confrontation Clause of the United States Constitution does not apply to this case. The Defendant's deliberate misreading of the Plaintiff's Motion notwithstanding, the Plaintiff's contention is plainly that cases interpreting the Confrontation Clause can be applied by analogy to interpret the IDEA's right to confront.

The Defendant likewise devotes inappropriate attention to the question of whether the Plaintiff properly compelled witness. The Plaintiff contends that she did[13] (and she certainly attempted to obtain documents), but regardless, the Defendant's argument on this point is another red herring. Neither the hearsay rules nor the right to confront are dependent upon the opposing party's effort to obtain the declarant's presence. To the contrary, the parting offering the statement must establish that the declarant is unavailable. By the Defendant's reasoning, every litigant would be compelled to subpoena every living person so as not to waive his or her right to object to hearsay.

The Defendant contends that the Plaintiff failed to object to the hearsay elicited from Ms. Jalloh. To the contrary, by the time the Hearing Officer questioned Ms. Jalloh, Plaintiff's counsel had objected to such questioning and testimony repeatedly and globally. See R. at 216, 233, 237, 243. The objections included these exchanges:

> MR. TYRKA: Okay. Then for simplicity can we just have a running objection to any testimony regarding documents not in evidence.
> HEARING OFFICER RUFF: Exactly.
> MS. RAMJOHN-MOORE: Great.
> MR. TYRKA: Okay. That works for me
> ***
> [T]his is just such a terrible terrible abuse to allow a witness to come testify about a bunch of documents that have never been submitted in to evidence. DCPS counsel has an obligation to this Hearing Officer, this entire process, and to the parent[s] of the children they are trying to educate, supposedly, to come up here and give this parent a true Due Process Hearing. And they have been violating this across the board. And I don't think it can be permitted.

(R. at 237, 243.)

---

[13] See (Pl.'s Mot. Summ. J. at 29, footnote 3). It's unclear why the Defendant summarily rejects the notion that a letter sent to Defendant's counsel is an "other form of notification" of the desire for the appearance of an employee of the Defendant. Absent a negative response to that notification, the Plaintiff was prohibited from requesting a Notice to Appear from the Chief Hearing Officer. The Defendant's lengthy critique of the Plaintiff's notification is hypocritical not only because of DCPS' nearly universal failure to comply with procedure in this case, but also because the Plaintiff's notification was nearly identical to DCPS own in this same case. (R. at 22, 122.)

"Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(a)(2). The Plaintiff objected much more than enough.

The Defendant also defends Ms. Jalloh's hearsay with the "party opponent" exception, apparently because Ms. Jalloh testified in part regarding the statements of DCPS employees. The Defendant misses the point of the exception, to allow one party to use another's statements.

> A statement is not hearsay if…The statement is offered <u>against</u> <u>a</u> <u>party</u> and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2) (emphasis added). The statements of DCPS' employees could only be used against DCPS, not against the Plaintiff, as the Hearing Officer did. Furthermore, the exception would not apply to the testimony regarding the contents of documents.

Ultimately, though, the Defendant's argues here to another irrelevancy, because the IDEA's confrontation right, if it is interpreted as is the Confrontation Clause, applies regardless of the applicability of any hearsay exception. <u>See</u>, <u>e.g.</u>, <u>Idaho v. Wright</u>, 497 U.S. 805, 814 (1990) (the Confrontation Clause "bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule"). All hearsay exceptions are meaningless in IDEA hearings because there is no rule-based hearsay prohibition; instead, there is the more comprehensive and dominant right to confront.

Regarding the hearsay elicited from Mr. Ugoji, the Defendant contends that it "is not hearsay, as there was no out of court 'statement' referenced." (Def.'s Opp. 18.) To the contrary, Mr. Ugoji made it clear that he possessed his understanding regarding the provision of

15

counseling to R.H. "because I supervise the clinician that provides the services. And I see that clinician every Friday for supervision and discussion of the cases." (R. at 224.) The statements, therefore, were the alleged statements of the clinician. If DCPS now contends that there was no such basis for Mr. Ugoji's testimony, then the testimony should be stricken as purely speculative, given that Mr. Ugoji made it clear that he had no first-hand knowledge.

## IV. DCPS DID NOT PROVIDE R.H. WITH NECESSARY INSTRUCTION AND SERVICES

As argued in her Motion (Pl.'s Mot. Summ. J. 30-31.), DCPS declined to offer any documentation or testimony of R.H.'s receipt of instruction in accordance with his IEP. The Defendant incorrectly contends that the "plaintiff presented no evidence that the services were not being provided." To the contrary, the only documentary evidence made available at the hearing showed that R.H. had received only two-thirds of his prescribed counseling in the 2004-2005 school year. See R. at 31, 58; (Pl.'s Mot. Summ. J. 30).

The Defendant correctly states that the Plaintiff offered no evidence of the failure to provide specialized instruction. As argued in the Plaintiff's Motion and elsewhere, that failure stemmed directly from DCPS' refusal to provide the Plaintiff's records regarding R.H.'s education. See (Pl.'s Mot. Summ. J. 24-27).

Regarding the specialized instruction issue, the Defendant mistakenly relies, as did the Hearing Officer, upon Mr. Ugoji's testimony. As the Plaintiff established in her Motion, Mr. Ugoji testified only regarding the provision of services, testified with insufficient precision, and did that over the Plaintiff's objections based on hearsay and on DCPS' refusal to produce records. See (Pl.'s Mot. Summ. J. 30-31).

In the Opposition, the Defendant makes a claim that neither DCPS counsel nor the Hearing Officer had been inclined to support, that the July 18, 2006 clinical psychological

evaluation establishes the provision of instruction and services because it states that R.H.

"receives 24.5 hours per week of special instruction with the related services [sic] of

counseling." (Def.'s Opp. 19; R. at 23.) Neither the clinical psychologist nor the Defendant has

attempted to establish a basis for the psychologist's knowledge in this regard. Even more

bewildering, this stated prescription is nowhere to be found in R.H.'s educational records, as his

then-current IEP prescribed 26 hours of instruction and 1.5 hours of counseling. (R. at 31.)[14] The

clinical psychologist's unsubstantiated and confused statement deserves no consideration.

## V.    DCPS FAILED TO PROVIDE AN APPROPRIATE PLACEMENT

### A.    DCPS' Initial and Continued Placements of R.H. at Hamilton Were Procedurally Invalid

DCPS has apparently conceded, as they must reasonably do, that DCPS' continuation of

R.H.'s placement at Hamilton at the July 2006 was procedurally invalid, and DCPS therefore

failed adequately to include the Plaintiff in the decisionmaking. Accordingly, the placement was

inappropriate since that date at the latest. See Board of Ed. of Hendrick Hudson Central School

Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206-07 (1982); Amanda J. v. Clark County

Sch. Dist., 267 F. 3d 877, 892 (9th Cir. 2001); Union Sch. Dist. v. Smith, 15 F. 3d 1519, 1526

(9th Cir. 1994).

Apparently conceding, as it must, that the June 16, 2004 prior notice regarding the initial

placement is inadequate on its face, the Defendant now contends that, when combined with the

notes of that day's MDT meeting, the prior notice is adequate. That argument suffers from two

fatal flaws.

---

[14] It is possible that the clinical psychologist, reviewing R.H.'s IEP, subtracted the hours of counseling from the hours of instruction to arrive at his "24.5" formulation. Regardless, the clinical psychologist's statement – made without personal knowledge – is not evidence of R.H.'s receipt of his prescribed instruction and services.

First, the IDEA requires that the prior notice be a written document, and courts have noted the significance of this specific requirement:

> The requirement of a formal, written offer creates a clear record that will do much to eliminate troublesome factual disputes many years later about when placements were offered, what placements were offered, and what additional educational assistance was offered to supplement a placement, if any. Furthermore, a formal, specific offer from a school district will greatly assist parents in presenting complaints with respect to any matter relating to the educational placement of the child.

Union Sch. Dist. v. Smith, 15 F. 3d 1519, 1526 (9th Cir. 1994)(internal citation omitted)(finding school district's placement inappropriate when it had failed to make a formal offer of appropriate placement). Where, as here, the Defendant has failed to provide the parent with the required written justification of its placement, its purported concordance with the "spirit of the law" does not constitute procedural compliance.

Furthermore, even if the June 16, 2004 MDT meeting notes were to be considered as part of DCPS' placement notice, they still clearly fail to provide the information required by 20 U.S.C. § 1415(b)(3). They contain absolutely no "description of each evaluation procedure, assessment, record, or report the agency used as a basis" for the placement. Id. They contain virtually no explanation of the placement, explanation of the rejection of the alternative placements, or description of the factors relevant to the decision. Besides the DCPS team members' vague claims of Hamilton's appropriateness, the meeting notes do not provide the necessary information regarding DCPS' rejection of the Plaintiff's proposed placements or indicate any serious discussion of the student's advocate's specific concerns. (R. at 44.)

The complete invalidity of the July 2006 placement is uncontestable, and is apparently now conceded. The Defendant has struggled to defend the original placement, but it deserves no more credit.

**B.      Hamilton Is Not an Appropriate Placement for R.H..**

In the face of overwhelming evidence of R.H.'s academic stagnation and decline at Hamilton, the Defendant contends that it would have been "completely improper for the HO to infer that any lack of progress on the part of the student was based on an improper placement," because "'emotional issues may be interfering with his academic achievement.'" (Def.'s Opp. 23.)[15] In making that argument, the Defendant overlooks the most basic aspect of R.H.'s special education: he is emotionally disturbed. (R. at 31, 58.) <u>see</u> 20 U.S.C. § 1401(3).

 The IDEA requires DCPS to provide R.H. with an IEP, including a placement, designed to "meet [his] needs that result from [his] disability to enable [him] to be involved in and make progress in the general education curriculum [and to] meet each of [his] other educational needs that result from [his] disability[.]" 20 U.S.C. § 1414(d)(1)(A)(i)(II). In R.H.'s case, his special needs result from him emotional disabilities.

The Defendant now contends that R.H.'s disability has prevented him from receiving appropriate educational benefits at Hamilton. (Def.'s Opp. 23.) The Plaintiff agrees. DCPS has failed to meet R.H.'s needs resulting from his emotional ability, and its placement of him at Hamilton has been inappropriate.

**VI.      THE PLAINTIFF IS ENTITLED TO A FINDING AND TO COMPENSATORY EDUCATION FOR DCPS' FAILURE TO CONDUCT AND REVIEW EVALUATIONS IN ALL AREAS OF SUSPECTED DISABILITY**

The Defendant is mistaken in its belief that because the Hearing Officer ordered the completion of a speech and language evaluation, the 'Plaintiff can receive no further relief' on that issue. "Under the theory of compensatory education, courts and hearing officers may award educational services to be provided prospectively to compensate for a past deficient program."

---

[15] Of course, the Hearing Officer drew no conclusions at all from the evaluations, because DCPS denied him the opportunity to review them by failing to produce them.

<u>Reid ex rel. Reid v. District of Columbia</u>, 401 F.3d 516 (D.C. Cir. 2005) (internal quotations and citation omitted). Evaluations are means, not ends, and while the necessary speech and language evaluation has been ordered, this alone does not compensate R.H. for the two years during which DCPS failed to conduct the warranted evaluation and to include its recommendations in his IEP. R.H. is therefore entitled to a compensatory award aimed to place him "in the same position [he] would have occupied but for the school district's violations of IDEA." <u>Reid</u>, 401 F.3d at 518. <u>See also</u> <u>Flores v. District of Columbia</u>, 437 F. Supp 2d, 22, 25 (finding that plaintiff parent's federal claim under IDEA was not moot because "[t]he defendant has yet to provide at least one form of relief specifically requested by the plaintiff in her complaint – a compensatory education plan[.]") The Plaintiff requests, as she did at the administrative level, that the MDT convene to determine appropriate compensatory education for this and other violations.

## CONCLUSION

For the reasons presented above and in her Motion for Summary Judgment, as well as the undisputed facts of this case, the court should grant the Plaintiff summary judgment and award the relief requested.

Respectfully submitted,

/s/ _____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

12/21/2005  11:08   2024425 ▓ ▓   STUDENT HEARINGS ▓ ▓   PAGE  02/06

12/21/2005  07:03   2025 ▓ 3665   ATTY BUTLER TRUESDAL   PAGE  12

# District of Columbia Public Schools

## Office of Management Services

Tonya M. Butler-Truesdale, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(202) 518-6867
Facsimile: (202) 442-5556

## Confidential

| | |
|---|---|
| ▓▓▓▓▓▓▓▓▓▓, STUDENT | ) |
| | ) |
| Date of Birth: ▓▓▓▓▓▓▓, 1991 | )   Hearing Date: November 18, 2005 |
| | ) |
| Petitioner, | )   Request for Hearing: August 2, 2005 |
| | ) |
| v. | ) |
| | ) |
| THE DISTRICT OF COLUMBIA | )   Held at: 825 North Capitol Street, N.E. |
| PUBLIC SCHOOLS | )        8th Floor |
| | )        Washington, D.C. 20002 |
| Respondent. | ) |
| | ) |

### HEARING OFFICER'S DETERMINATION

**Parents:**                                ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
                                            ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
                                            ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Counsel for Petitioner:**                 Douglas Tyrka, Esquire
                                            Carolyn W. Houck, Esquire
                                            5505 Connecticut Avenue, N.W. ; Suite 174
                                            Washington, D.C. 20017
                                            (301) 951-0748; Fax: (202) 951-4248

**Counsel for DCPS:**                       Katherine Rodi, Esquire
                                            Office of the General Counsel, DCPS
                                            825 North Capitol Street, N.E.; 9th Floor
                                            Washington, D.C. 20002

Exhibit 1

12/21/2005 11:06  2024425455        STUDENT HEARING        PAGE  03/06
12/21/2005  07:03   202.  3655         ATTY BUTLER TRUESDAL          PAGE  13

*In the Matter of* ████

### I.  JURISDICTION

. The Due Process Hearing was convened and this Order is written pursuant to Public Law 108-446, the *Individuals with Disabilities Education Improvement Act of 2004 (I.D.E.I.A.),* 20 U.S.C. Section 1400 et seq.; 34 C.F.R. Section et seq.; 5 D.C.M.R. Section 3000.; Section 143 of the D.C. Appropriations Act, effective October 21, 1998; and the Rules of the Board of Education of the District of Columbia.

### II.  DUE PROCESS RIGHTS

Parent's counsel waived a formal reading of the due process rights.

### III.  FIVE-DAY DISCLOSURE

Petitioner: No witnesses were called to testify because the Petitioner's motion for a default judgment was sustained based on DCPS failure to file a response pursuant to the Chief Hearing Officer's Order dated September 22, 2005.

Respondent: No witnesses were called to testify because the parties settled and no disclosures were presented.

### IV.  STATEMENT OF THE CASE

On August 2, 2005 a Due Process Hearing Request was received alleging that the District of Columbia Public Schools failed to:

1. evaluate Petitioner in all suspected areas of disability;
2. perform triennial evaluations;
3. develop an adequate IEP on March 24, 2005;
4. implement an IEP;
5. provide appropriate placement for the 2005-2006 school year; and,
6. provide an appropriate placement since at least school year 2001-2002 due to a failure to evaluate, develop adequate IEPs and provide an appropriate placement.

The Student Hearing Office, DCPS, scheduled a Due Process Hearing for September 29, 2005 at 1:00 pm at DCPS Headquarters, 825 North Capitol Street, N.E., 8th Floor, Washington, DC 20002. The hearing continued to October 28, 2005 in order to permit the convening of a resolution meeting on October 6, 2005. The matter was continued again and a hearing was convened on November 18, 2005. Attorney Advisor Katherine

12/21/2005  11:08   2024425   5          STUDENT HEARINGS OFI                    PAGE  04/06
12/21/2005  07:03   202, 3666               ATTY BUTLER TR... DAL                PAGE  14

*In the Matter of* ▮▮▮▮

Rodi appeared in person for DCPS.  Attorney Douglas Tyrka appeared in person on behalf of Petitioner.


## V.    FINDINGS OF FACT

Petitioner as a preliminary matter Petitioner motioned for a default judgment pursuant to the Chief Hearing Officer's Order dated September 22, 2005 which ordered DCPS to file a response no later than September 30, 2005. Moreover, the DCPS Scheduling Memorandum states that, "within ten days of receiving the complaint" the LEA shall send the parent a response. The same scheduling memorandum states that notice of deficiency of a complaint shall be forwarded within fifteen days of receipt of the complaint. Absent a presentation of such authority the default judgment must be granted.


## VI.    ORDER

1. DCPS shall within thirty days perform a psycho-educational evaluation, a speech and language evaluation, a social history evaluation, an occupational therapy evaluation and a clinical evaluation if recommended by the psycho-educational. If DCPS fails to perform these evaluations within thirty days of this hearing, DCPS shall fund independent evaluations within the Superintendent's cost guidelines.
2. Within fifteen school days of receipt or completion of the last evaluation, DCPS shall convene a MDT/IEP meeting discuss all evaluations, review and revise the IEP as necessary, discuss and determine placement options (other than Mamie D. Lee). The team shall also determine if compensatory education is warranted pursuant to the finding that DCPS has denied FAPE since August 2, 2003.
3. If it is determined that Mamie D. Lee is the sole appropriate site the Petitioner may consent to the Mamie D. Lee placement.
4. If Placement is to a DCPS public school, DCPS shall have five (5) calendar days to issue the prior notice of placement. If placement is to a non-public or private school, DCPS shall have thirty (30) calendar days and if placement is to a residential facility DCPS shall have sixty (60) calendar days to issue the prior notice of placement;
5. All meetings will be scheduled through parent's counsel; and,
6. DCPS will be granted a day for day extension for any delay caused by counsel for the parent/guardian, the parent/guardian, the student, or the educational advocate.

3

*In the Matter of ▮▮▮*

This is the **FINAL ADMINISTRATIVE DECISION**.  An Appeal can be made to a
court of competent jurisdiction within thirty (30) days of this Order's issue date.

Tonya M. Butler-Truesdale
Hearing Officer

Date:   December 21, 2005

Issued: 12/21/2005

Copies to:

Douglas Tyrka, Esquire
5505 Connecticut Avenue, N.W.
Suite 174
Washington, D.C. 20017
(301) 951-0748; Fax: (202) 951-4248

Katherine Rodi, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.; 9th Floor
Washington, D.C. 20002

4

# District of Columbia Public Schools

## State Enforcement and Investigation Division

Terry Michael Banks, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

### Confidential

| | | |
|---|---|---|
| ▬▬▬▬▬ ▬▬▬▬ STUDENT | ) | |
| | ) | |
| Date of Birth: ▬▬▬▬▬ | ) | Hearing Date: March 22, 2006 |
| | ) | |
| Petitioner, | ) | Complaint Filed: January 25, 2006 |
| | ) | |
| v. | ) | |
| | ) | |
| THE DISTRICT OF COLUMBIA | ) | Held at: 825 North Capitol Street, N.E. |
| PUBLIC SCHOOLS | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |
| Respondent. | ) | |
| | ) | |
| Student Attending: | ) | |
| High Road Academy | ) | |

## HEARING OFFICER'S DECISION

**Parents:**                     ▬▬▬▬▬▬▬▬▬▬
                                 ▬▬▬▬▬▬▬▬▬▬▬▬▬

**Counsel for Petitioner:**      Douglas Tyrka, Esquire
                                 Tyrka & Houck, LLP
                                 1726 Connecticut Avenue, N.W. ; Suite 400
                                 Washington, D.C. 20009
                                 (301) 951-0748; Fax: (202) 951-4248

**Counsel for DCPS:**            Rashida J. Chapman, Esquire
                                 Office of the General Counsel, DCPS
                                 825 North Capitol Street, N.E.; 9th Floor
                                 Washington, D.C. 20002

–Exhibit 2

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| Child | |
|---|---|
| Child's Parent(s) (specific relationship) | ████████████ Mother |
| Child/Parent's Representative | Douglas Tyrka, Esquire |
| School System's Representative | Rashida J. Chapman, Esquire |

2

**Jurisdiction**

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

**Introduction**

Petitioner is a ████████████ student attending High Road Academy ("HRA"). On January 25, 2006, Petitioner filed a *Due Process Complaint Notice* ("Complaint") alleging that the District of Columbia Public Schools ("DCPS") failed to comply with a July 12, 2005 Hearing Officer's Decision ("HOD") and failed to conduct psychological, clinical, and speech and language evaluations.[1] On February 8, 2006, Petitioner filed *Petitioner's Motion for Entry of Default and Default Judgment* ("Motion") on the grounds that DCPS did not file a response to the *Complaint*. On February 14, 2006, Hearing Officer David R. Smith denied Petitioner's motion, but ordered DCPS to file a response to the Complaint within seven day of the issuance of the order. DCPS did not file a response to the *Complaint* as ordered. The due process hearing was convened on March 22, 2006. The parties' Five Day Disclosure Notices were admitted into evidence at the hearing.[2] Petitioner's counsel renewed Petitioner's *Motion*. DCPS admitted that it had not filed a response to the Complaint, but countered that Petitioner had failed to comply with a provision of the allegedly violated HOD that required Petitioner to make an attempt to achieve compliance informally before filing a new *Complaint*. DCPS also argued that Petitioner's parent failed to participate in the Resolution Session meeting on January 6, 2006.

**Findings of Fact**

1. Petitioner is a ████████████ student attending HRA.[3]

---

[1] Petitioner's counsel stipulated at the hearing that an acceptable psychoeducational evaluation had been completed.
[2] Petitioner moved to exclude notes from the Resolution Session Meeting submitted by DCPS as Exhibit No. 1. The hearing officer overruled Petitioner's objection on the grounds that under the recently amended IDEA, the Resolution Meeting is an integral part of the due process proceeding. Thus due process proceedings are dissimilar to ordinary civil litigation where settlement negotiations are not mandated and a willingness to settle might be viewed as an indication of vulnerability. Under IDEA, only the hearing officer can enforce compliance with the procedures related to the Resolution Session meeting. Thus, evidence relating to the Resolution Session meeting is relevant to the proceeding. In this case, the document at issue indicated only that the parent did not participate in the Resolution Meeting Session.
[3] *Complaint* at 1.

3

2. DCPS failed to comply with a hearing officer's order dated February 14, 2006 requiring DCPS to file a response to the *Complaint* within seven days.

3. DCPS did not conduct a Resolution Session meeting. The parent was represented at a January 6, 2006 Resolution Session meeting by an educational advocate; DCPS disallowed the advocate from representing the parent at the meeting.[4]

## Conclusions of Law

Under IDEA, a local education agency is required to file a response to the Complaint within ten days of receipt thereof, providing a detailed explanation of the agency's proposal or refusal to take the action raised in the Complaint, unless the agency has sent a prior written notice to the parent regarding the subject matter contained in the Complaint.[5] DCPS disclosed no prior notice. Therefore, it was obligated to file a response satisfying the requirements of 20 U.S.C Section 1415(c)(2)(B)(i)(I) within ten days of receipt of the *Complaint*. It did not do so. Even after being specifically ordered to file a response within seven days by Hearing Officer Smith on February 14, 2006, it failed to do so.

Nor did DCPS conduct a Resolution Session Meeting within fifteen days of receipt of the *Complaint* as required by 20 U.S.C. Section 1415(f)(1)(B). The Resolution Meeting is required to provide the parents an opportunity to discuss their concerns with the appropriate school officials and to provide the local educational agency an opportunity to resolve the Complaint without resort to a due process hearing.[6] DCPS convened a meeting on January 6, 2006, but Petitioner's parent was not present and DCPS declined to allow Petitioner's educational advocate to represent the parent. DCPS offered no documentation that it made any attempt in the more than two months since January 6th to reconvene a Resolution Session.

Under prevailing caselaw[7] and IDEA,[8] if a disabled child received (or was offered) a FAPE in spite of a technical violation of IDEA, the school district has fulfilled its statutory obligations. Thus, had DCPS filed its response or conducted a Resolution Meeting a few days late, such that Petitioner could not show that he suffered any educational harm from the procedural violation, the hearing officer could not find that DCPS had denied Petitioner a FAPE. However, where DCPS blatantly refuses to comply with the prehearing requirements of IDEA, a hearing officer has the inherent authority to issue a default judgment for the petitioner. Here, DCPS offered no explanation for failing to file a timely response under 20 U.S.C Section 1415(c)(2)(B)(i)(I) and failed to convene a Resolution Meeting under 20 U.S.C. Section 1415(f)(1)(B). The result is the same as

---

[4] DCPS Exh. No. 1.
[5] 20 U.S.C. §1415(c)(2)(B)(i)(I). The statute imposes specific requirements as to the contents of the agency's response.
[6] 20 U.S.C. Section 1415(f)(1)(B)(i)(IV).
[7] Shaw 238 F.Supp.2d 127, 136 (D.D.C. 2002).
[8] 20 U.S.C. §1415(f)(3)(E)(ii).

occurs when an LEA fails to file a disclosure statement pursuant to 34 C.F.R. Section 509(a)(3); it is precluded from introducing evidence to meet its burden of proof, and the petitioner prevails by default.

A federal judge in the District of Columbia District Court was recently faced with a failure on the part of DCPS to file a response to the Complaint in that case. Judge Lamberth cited those failures as justification for concluding that DCPS' administrative proceedings were so dysfunctional that it was unnecessary to compel the petitioner to comply with the customary legal requirement to exhaust all administrative remedies before seeking relief in federal court.

Finally, the inadequacy of DCPS' administrative remedy is illustrated by its blatant disregard for the statutory requirement of a written response to the Masseys' request for a due process hearing. Under the statute, if DCPS had not previously issued a Prior Notice for Tiffany, it was required to respond in writing to the request for a due process hearing... Furthermore, DCPS may not determine the form of its response: the required content of the written response is precisely detailed in the IDEA... Since DCPS had not issued a Prior Notice for Tiffany at the time of receiving the due process hearing request, it was obligated to respond in writing within ten days.

The specific requirements for the written response include: (1) an explanation of why the agency proposed or refused to take the action raised in the complaint; (2) a description of other options that the IEP Team considered and the reasons why those options were rejected; (3) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and (4) a description of the factors that are relevant to the agency's proposal or refusal... The October 14 Prior Notice, however, contains not one of the four factors required. It is a form with blanks and boxes to be completed as appropriate. Nowhere on the form does DCPS explain why it refused to place Tiffany at Leary School, whether it even considered Leary School and other placements before making the placement at MM Washington Center, what its basis was for placing her at MM Washington Center, or what other factors might be relevant to DCPS' action. Since the Masseys have independently identified several serious problems with MM Washington Center... it is imperative that they understand what factors led DCPS to determine that the placement is appropriate...

DCPS also argues that it is only required under the IDEA to issue a written notice responding to the substance of the complaint... Since the complaint was the failure to place Tiffany, DCPS argues, a notice placing her at MM Washington Center conforms with the statutory requirement... But, as described above, the IDEA does not allow DCPS to respond generally to the substance of the complaint in whatever form it deems appropriate. On the contrary, Congress' delineation of the four requirements makes clear that general responses are not acceptable. DCPS also implied at the October 18 Hearing that any failure to conform to the statute was a

5

mere technical oversight. It is technical compliance with the law, however, that gives parents faith that their concerns will be addressed in accordance with Congress' intent. Many of the procedural safeguards in the IDEA are extremely technical, spelling out particular deadlines and required content. This kind of detail embodies the purpose of a statute prescribing administrative - *i.e.*, procedural - remedies. *See Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 78 (D.D.C. 2003) (Friedman, J.) (noting that "the procedural due process protections included by Congress in the IDEA are of critical importance to effectuating the goals of the statute") (citing *Bd. of Ed. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)). Does DCPS mean to imply that it is permitted to violate the IDEA as long as the ways in which it does so are minor? This Court has not been directed to any evidence that Congress intended an exemption for "close enough."

*5. DCPS' Administrative Process is Inadequate*

Because of DCPS' repeated failures to follow unambiguous terms of the law and to acknowledge and correct its mistakes, this Court cannot find that DCPS' process for administrative relief would be adequate.[9]

If DCPS believed that Petitioner was precluded from filing a new Complaint for failure to comply with a provision in the July 12, 2005 HOD, it should have asserted this defense in a response to the *Complaint*. Having failed to file a response, and having failed to conduct a Resolution Session meeting, DCPS waived its right to challenge Petitioner's procedural faults. The hearing officer has chosen to reproduce an uncharacteristically long passage from *Massey* to put DCPS on notice that it risks default judgments anytime it cavalierly disregards its statutory procedural obligations.[10]

## ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, *Petitioner's Motion for Entry of Default and Default Judgment*, Hearing Officer Smith's Order of February 14, 2006, and the representations of the parties' counsel at the hearing, this 23rd day of March 2006, it is hereby

**ORDERED**, that *Petitioner's Motion for Entry of Default and Default Judgment* is **GRANTED**.

**IT IS FURTHER ORDERED**, that Petitioner shall obtain the following independent evaluations in accordance with 5 D.C.M.R. Section 3027.5: clinical psychological and speech and language. Petitioner's counsel shall forward copies of the completed evaluations to the appropriate DCPS Placement Specialist and to the DCPS

---

[9] *Massey v. District of Columbia*, 400 F.Supp.2d 66, 71-72 (D.D.C. 2005), some citations omitted.
[10] DCPS has also persistently ignored this hearing officer's warnings that its Prior Notice form constitutes a *per se* violation of 34 CFR §300.503(b).

Office of Mediation and Compliance, along with a written request to convene the Multidisciplinary Team ("MDT") meeting described below, by facsimile transmission and first-class mail.

IT IS FURTHER ORDERED, that within fifteen (15) school days of its receipt of the independent evaluations, DCPS shall convene an MDT meeting to review all current evaluations and update Petitioner's Individualized Education Program. DCPS shall coordinate scheduling the MDT meeting with Petitioner's counsel, Douglas Tyrka, Esquire or Carolyn W. Houck, Esquire (301) 951-0748.

IT IS FURTHER ORDERED, that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

IT IS FURTHER ORDERED, that in the event of DCPS' failure to comply with the terms of this Order, Petitioner's counsel will contact the appropriate DCPS Placement Specialist, the Special Education Coordinator at HRA, and the DCPS Office of Mediation & Compliance to attempt to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.

IT IS FURTHER ORDERED, that this Order is effective immediately.

**Notice of Right to Appeal Hearing Officer's Decision and Order**

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy, in accordance with 20 U.S.C. Section 1415(i)(2)(A) within thirty days of the entry of the Hearing Officer's Decision. [11]

Terry Michael Banks
Hearing Officer

Date:   March 23, 2006

Issued: _3/24/06_____

Copies to:

Douglas Tyrka, Esquire
Tyrka & Houck, LLP
1726 Connecticut Avenue, N.W. ; Suite 400
Washington, D.C. 20009
(301) 951-0748; Fax: (202) 951-4248

Rashida J. Chapman, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.; 9th Floor
Washington, D.C. 20002

---

[11] *See Amman v. Town of Stow*, 991 F.2d 929, 931(1st Cir. 1993) (since the IDEA does not set a time limit for lawsuits brought under its terms, the district court must "borrow" the most analogous statute of limitations under state law); *Spiegler v. District of Columbia*, 866 F.2d 461, 463-64 (D.C. Cir. 1989)(borrowing a 30-day limitations period for review of agency orders and applying it to an appeal from a decision under the predecessor to IDEA. In the District of Columbia, the Rules of the Board of Education do not prescribe a time limit for bringing the civil action authorized by the IDEA and the Board's Regulations, 5 D.C.M.R. Section 3032.5. The D.C. Administrative Procedures Act defers to the District of Columbia Court of Appeals to set the limitation period for filing an appeal from a final agency action. D.C. Code §2-510(a). Under the Court's rules, a petition for review of an agency order must be filed within thirty days. D.C. Ct. App. Rule 15(a).

8

# District of Columbia Public Schools
## State Enforcement and Investigation Division
Terry Michael Banks, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

### Confidential

| | |
|---|---|
| ████ ████, STUDENT ) | |
| ) | |
| Date of Birth: ███ █, ████ ) | Hearing Date: July 18, 2006 |
| ) | |
| Petitioner, ) | Complaint Filed: May 17, 2006 |
| ) | |
| v. ) | |
| ) | |
| THE DISTRICT OF COLUMBIA ) | Held at: 825 North Capitol Street, N.E. |
| PUBLIC SCHOOLS ) | 8th Floor |
| ) | Washington, D.C. 20002 |
| Respondent. ) | |
| ) | |
| Student Attending: ) | |
| Rock Creek Academy ) | |

### HEARING OFFICER'S DECISION

| | |
|---|---|
| **Parents:** | ████ ████, Mother |
| | ████████████████ |
| | Washington, D.C. 20011 |
| **Counsel for Petitioner:** | Douglas Tyrka, Esquire |
| | Tyrka & Houck, LLP |
| | 1726 Connecticut Avenue, N.W. ; Suite 400 |
| | Washington, D.C. 20009 |
| | (301) 951-0748; Fax: (202) 951-4248 |
| **Counsel for DCPS:** | Aaron E. Price, Esquire |
| | Office of the General Counsel, DCPS |
| | 825 North Capitol Street, N.E.; 9th Floor |
| | Washington, D.C. 20002 |

Exhibit 3

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| Child | ████ ████ |
|---|---|
| Child's Parent(s) (specific relationship) | ████ ████ ████ |
| Child/Parent's Representative | Douglas Tyrka, Esquire |
| School System's Representative | Aaron E. Price, Esquire |

## Jurisdiction

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

## Introduction

Petitioner is a ▓▓▓▓▓▓ student attending Rock Creek Academy ("RCA"). On May 17, 2006, Petitioner filed a *Due Process Complaint Notice* ("*Complaint*") alleging that the District of Columbia Public Schools ("DCPS") failed to comply with a Hearing Officer's Decision ("HOD"). On May 23, 2006, DCPS filed *District of Columbia Public School's Response to Due Process Complaint Notice* ("*Response*"). In its *Response*, DCPS stated:

   a. DCPS intends to defend against the complaint;
   b. DCPS contends that the allegations within the complaint fail to allege that the agency has proposed or refused to initiate or change the identification, evaluation, or educational placement of the child, or the provision of a free and appropriate public education of the child, pursuant to IDEIA, § 615(b)(3).
   c. DCPS maintains that all other allegations stated within petitioner's complaint require no further prior written notice for the reasons stated above.

On July 7, 2006, Petitioner filed *Petitioner's Amended Motion for Entry of Default and Default Judgment* ("*Motion*") on the grounds that DCPS did not file a response to the *Complaint* that complied with the requirements of IDEIA. The due process hearing was convened on July 18, 2006.. The parties' Five Day Disclosure Notices were admitted into evidence at the hearing. Petitioner's counsel renewed Petitioner's *Motion*. DCPS argued that its *Response* complied with IDEIA. DCPS also stipulated that it did not convene a Resolution Session meeting and that it could not meet its burden of proof. The hearing officer indicated that he would leave the record open until July 25, 2006 for the parties to file memoranda of points and authorities on the appropriate application of the statute of limitations.

## Findings of Fact

   1. Petitioner is a seven year-old student attending RCA.[1]

---

[1] *Complaint* at 1.

2. DCPS did not convene a Resolution Session meeting.

3. On February 17, 2006, an HOD was issued that required, *inter alia*, DCPS to convene a Multidisciplinary Team ("MDT") within twenty days to "discuss and determine the form, amount, and delivery of compensatory education services not delivered to the student while attending the Kennedy Institute."[2]

4. DCPS did not convene an MDT meeting within twenty days of the issuance of the HOD.

5. DCPS stipulated that it could not meet its burden of proof.


## Conclusions of Law

1. Under IDEA, a local education agency is required to file a response to the Complaint within ten days of receipt thereof, providing a detailed explanation of the agency's proposal or refusal to take the action raised in the Complaint, unless the agency has sent a prior written notice to the parent regarding the subject matter contained in the Complaint.[3] DCPS disclosed no prior notice. Therefore, it was obligated to file a response satisfying the requirements of 20 U.S.C Section 1415(c)(2)(B)(i)(I) within ten days of receipt of the *Complaint*. The *Complaint* alleged that DCPS failed to comply with the February 17, 2006 HOD. DCPS' *Response* made no mention of its compliance with the February 17, 2006 HOD. Therefore, DCPS failed to comply with 20 U.S.C Section 1415(c)(2)(B)(i)(I).

Nor did DCPS conduct a Resolution Session Meeting within fifteen days of receipt of the *Complaint* as required by 20 U.S.C. Section 1415(f)(1)(B). The Resolution Meeting is required to provide the parents an opportunity to discuss their concerns with the appropriate school officials and to provide the local educational agency an opportunity to resolve the Complaint without resort to a due process hearing.[4]

Under prevailing caselaw[5] and IDEA,[6] if a disabled child received (or was offered) a FAPE in spite of a technical violation of IDEA, the school district has fulfilled its statutory obligations. Thus, had DCPS filed an appropriate response or conducted a Resolution Meeting a few days late, such that Petitioner could not show that he suffered any educational harm from the procedural violation, the hearing officer could not find that DCPS had denied Petitioner a FAPE. However, where DCPS blatantly refuses to comply with the prehearing requirements of IDEA, a hearing officer has the inherent authority to issue a default judgment for the petitioner. Here, DCPS argued that it was not

---

[2] Petitioner's Exhibit ("P.Exh.") No. 4 at 3.
[3] 20 U.S.C. §1415(c)(2)(B)(i)(I). The statute imposes specific requirements as to the contents of the agency's response.
[4] 20 U.S.C. Section 1415(f)(1)(B)(i)(IV).
[5] *Shaw v. District of Columbia*, 238 F.Supp.2d 127, 136 (D.D.C. 2002).
[6] 20 U.S.C. §1415(f)(3)(E)(ii).

required to file a response in compliance with 20 U.S.C Section 1415(c)(2)(B)(i)(I) and failed to convene a Resolution Meeting under 20 U.S.C. Section 1415(f)(1)(B). The result is the same as occurs when an LEA fails to file a disclosure statement pursuant to 34 C.F.R. Section 509(a)(3); it is precluded from introducing evidence to meet its burden of proof, and the petitioner prevails by default.

A federal judge in the District of Columbia District Court was recently faced with a failure on the part of DCPS to file a response to the Complaint in that case. Judge Lamberth cited those failures as justification for concluding that DCPS' administrative proceedings were so dysfunctional that it was unnecessary to compel the petitioner to comply with the customary legal requirement to exhaust all administrative remedies before seeking relief in federal court.

Finally, the inadequacy of DCPS' administrative remedy is illustrated by its blatant disregard for the statutory requirement of a written response to the Masseys' request for a due process hearing. Under the statute, if DCPS had not previously issued a Prior Notice for Tiffany, it was required to respond in writing to the request for a due process hearing... Furthermore, DCPS may not determine the form of its response: the required content of the written response is precisely detailed in the IDEA... Since DCPS had not issued a Prior Notice for Tiffany at the time of receiving the due process hearing request, it was obligated to respond in writing within ten days.

The specific requirements for the written response include: (1) an explanation of why the agency proposed or refused to take the action raised in the complaint; (2) a description of other options that the IEP Team considered and the reasons why those options were rejected; (3) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and (4) a description of the factors that are relevant to the agency's proposal or refusal... The October 14 Prior Notice, however, contains not one of the four factors required. It is a form with blanks and boxes to be completed as appropriate. Nowhere on the form does DCPS explain why it refused to place Tiffany at Leary School, whether it even considered Leary School and other placements before making the placement at MM Washington Center, what its basis was for placing her at MM Washington Center, or what other factors might be relevant to DCPS' action. Since the Masseys have independently identified several serious problems with MM Washington Center... it is imperative that they understand what factors led DCPS to determine that the placement is appropriate...

DCPS also argues that it is only required under the IDEA to issue a written notice responding to the substance of the complaint... Since the complaint was the failure to place Tiffany, DCPS argues, a notice placing her at MM Washington Center conforms with the statutory requirement... But, as described above, the IDEA does not allow DCPS to respond generally to the substance of the complaint in whatever form it deems appropriate. On the contrary, Congress' delineation of the four

5

requirements makes clear that general responses are not acceptable. DCPS also implied at the October 18 Hearing that any failure to conform to the statute was a mere technical oversight. It is technical compliance with the law, however, that gives parents faith that their concerns will be addressed in accordance with Congress' intent. Many of the procedural safeguards in the IDEA are extremely technical, spelling out particular deadlines and required content. This kind of detail embodies the purpose of a statute prescribing administrative - *i.e.*, procedural - remedies. *See Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 78 (D.D.C. 2003) (Friedman, J.) (noting that "the procedural due process protections included by Congress in the IDEA are of critical importance to effectuating the goals of the statute") (citing *Bd. of Ed. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)). Does DCPS mean to imply that it is permitted to violate the IDEA as long as the ways in which it does so are minor? This Court has not been directed to any evidence that Congress intended an exemption for "close enough."

### 5. DCPS' Administrative Process is Inadequate

Because of DCPS' repeated failures to follow unambiguous terms of the law and to acknowledge and correct its mistakes, this Court cannot find that DCPS' process for administrative relief would be adequate.[7]

Because DCPS failed to file an appropriate response to the *Complaint* and failed to conduct a Resolution Session meeting, Petitioner is entitled to a default judgment. The hearing officer has chosen to reproduce an uncharacteristically long passage from *Massey* to put DCPS on notice that it risks default judgments anytime it cavalierly disregards its statutory procedural obligations.[8]

2. In the *Complaint*, Petitioner alleged that DCPS failed to provide Petitioner with occupational therapy, physical therapy, or speech and language therapy during his enrollment at the Kennedy Institute from September 2001 until October 2004. The February 17th HOD required DCPS to produce records proving that it provided these services. Having failed appeal the HOD, having failed to convene the MDT meeting ordered in the HOD, having failed to make any reference to the HOD directives in its response to the *Complaint*, having failed to offer documentary proof in its Five-Day Disclosure Notice, and having stipulated that it could not meet its burden of proof, DCPS has waived its right to challenge the allegation that it failed to provide the related services.

Petitioner requests an order requiring DCPS to develop a compensatory education plan for services it did not provide as early as September 2001. However, "Compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's

---

[7] *Massey v. District of Columbia*, 400 F.Supp.2d 66, 71-72 (D.D.C. 2005), some citations omitted.
[8] DCPS has also persistently ignored this hearing officer's warnings that its Prior Notice form constitutes a *per se* violation of 34 CFR §300.503(b).

failure over a give period of time to provide a FAPE to a student..."[9] "[C]ourts and hearing officers may award "educational services . . . to be provided prospectively to compensate for a past deficient program."[10] Moreover, the Court in Reid held that a hearing officer "may not delegate his authority to a group that includes an individual specifically barred from performing the hearing officer's functions."[11] Since the hearing officer is required to be independent of DCPS, the hearing officer may not delegate his authority to award compensatory education services to a team that includes an employee of DCPS.

Petitioner's representatives did not make a showing that would satisfy the standard set forth in *Reid v. District of Columbia*.[12] Petitioner had the burden of showing (1) that as a result of DCPS' violation of IDEA, he suffered an educational deficiency, (2) that but for the violation, he would have progressed to a certain academic level, and (3) that there exists a type and amount of compensatory education services that would bring him to the level he would have been but for DCPS' violation. Petitioner failed to make this showing.

Hearing officers may not award compensatory education services based solely on the amount of services a local education agency ("LEA") failed to provide.

More specifically, as the Fourth Circuit has explained, "compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a give period of time to provide a FAPE to a student... Overlooking this equitable focus, the Reids' hour-for-hour formula in effect treats compensatory education as a form of damages – a charge on school districts equal to expenditures they should have made previously. Yet "the essence of equity jurisdiction" is "to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it..." In keeping with that principle of case-specific flexibility, we agree with the Ninth Circuit that "there is no obligation to provide a day-for-day compensation for time missed. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of IDEA..."[13]

Petitioner has the burden of establishing the type and amount of compensatory services that will compensate the student for the services that were denied. Absent such a showing, any award by the hearing officer would be arbitrary.

In every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the

---

[9] *Reid v. District of Columbia*, 401 F.3d 516, 523-24 (D.C. 2005).
[10] *Id.* at 522.
[11] *Id.* at 526.
[12] *Id.* at 518.
[13] *Id.* at 523-24, citations omitted.

7

educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.[14]

The hearing officer will order the parties to conduct a Multidisciplinary Team ("MDT") meeting. Rather than discuss compensatory education services, the MDT should develop an educational plan that meets Petitioner's unique needs. The MDT should take into account the fact that DCPS has not provided related services to Petitioner for the last five years. In anticipation of the MDT meeting, both parties should consult with professional providers to solicit suggestions as to an appropriate remediation program. To the extent possible, those providers should participate in the MDT meeting.

3. In light of the hearing officer's decision not to award a specific amount of compensatory education services, and not to delegate to the MDT the authority to determine appropriate compensatory education services, the issue of the appropriate statute of limitations is, for now, moot. The MDT should still take into account the fact that Petitioner has been deprived of related services for the last five years. The statute of limitations will become relevant only if the parties do not reach agreement as to the appropriateness of a revised Individualized Education Program ("IEP"), and there is a subsequent Complaint alleging that DCPS failed to develop an appropriate IEP, because it failed to consider Petitioner's unique need for remediation due to the five-year deprivation of related services.

## ORDER

Upon consideration of Petitioner's request for a due process hearing, *Petitioner's Motion for Entry of Default and Default Judgment, District of Columbia Public School's Response to Due Process Complaint Notice*, the parties' Five Day Disclosure Notices, and the representations of the parties' counsel at the hearing, this 26th day of July 2006, it is hereby

**ORDERED**, that *Petitioner's Amended Motion for Entry of Default and Default Judgment* is **GRANTED**.

**IT IS FURTHER ORDERED**, that on or before August 25, 2006, DCPS shall convene an MDT meeting to review all current evaluations and update Petitioner's Individualized Education Program. DCPS shall coordinate scheduling the MDT meeting with Petitioner's counsel, Douglas Tyrka, Esquire or Carolyn W. Houck, Esquire (301) 951-0748.

**IT IS FURTHER ORDERED**, that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document

---

[14] *Id.*, 401 F.3d at 524.

with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

**IT IS FURTHER ORDERED,** that in the event of DCPS' failure to comply with the terms of this Order, Petitioner's counsel will contact the appropriate DCPS Placement Specialist, the Special Education Coordinator at RCA, and the DCPS Office of Mediation & Compliance to attempt to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.

**IT IS FURTHER ORDERED,** that this Order is effective immediately.

### Notice of Right to Appeal Hearing Officer's Decision and Order

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).

*Terry Michael Banks*

Terry Michael Banks
Hearing Officer

Date:  July 26, 2006

Issued:  7/18/06

Copies to:

Douglas Tyrka, Esquire
Tyrka & Houck, LLP
1726 Connecticut Avenue, N.W. ; Suite 400
Washington, D.C. 20009
(301) 951-0748; Fax: (202) 951-4248

Aaron E. Price, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.; 9th Floor
Washington, D.C. 20002

*District of Columbia Public Schools*
*State Enforcement and Investigative Division*

## CONFIDENTIAL

**Marsha Epps Edwards, Esquire**
*Due Process Hearing Officer*
1150 5th Street, S.E.
Washington, D.C. 20003
(202) 698-3819 (telephone)
(202) 698-3825 (facsimile)

| | |
|---|---|
| **In the Matter of** | ) IMPARTIAL DUE PROCESS |
| | ) HEARING OFFICER'S DECISION |
| Student: ▓▓▓▓▓▓ | ) |
| Date of Birth: ▓▓▓▓ | ) |
| Petitioner, | ) Hearing Request Date:   29 March 2007 |
| | ) Resolution Session Date: 13 April 2007 |
| **v.** | ) Hearing Date:          5 June 2007 |
| | ) |
| District of Columbia Public Schools | ) Held at: 1150 5th Street, S.E. |
| Home School:  P. R. Harris Educational Ctr. | ) |
| Washington, D.C.  20003 | ) |
| Respondent. | ) |

**Parent:**                        ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Parent's Counsel:**              Douglas Tyrka, Esquire
                                   Tyrka & Associates LLC
                                   1726 Connecticut Ave., N.W., Ste. 400
                                   Washington, D.C.  20009

**Counsel for District of Columbia Public Schools:**   Saurabh Gupta, Esquire
                                   Office of the General Counsel
                                   DCPS
                                   1150 5th Street, S.E.
                                   Washington, D.C.  20003

Exhibit 4

*District of Columbia Public Schools*

*State Enforcement and Investigative Division*

## INDEX OF NAMES

**In Re:** ▮▮▮▮▮▮▮

**5 June 2007**

| | |
|---|---|
| Assistant superintendent, Special Education (or Director) | |
| Special Education Teacher | |
| School Psychologist | |
| Regular Education Teacher | |
| Principal | |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Physical Therapist | |
| Private Psychologist | |
| Student and Student's DCPS ID# or SSN | ▮▮▮▮▮▮, ID # |
| Parent/Guardian (specific relationship) | ▮▮▮▮▮▮▮▮ |
| Student's/Parent's Representative | Douglas Tyrka, Esquire |
| DCPS Representative | Saurabh Gupta, Esquire |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## INTRODUCTION

This hearing was held on Tuesday, 5 June 2007 at 1150 5th Street. S.E., Washington, D.C. 20003 regarding █████████, born ████████████ Douglas Tyrka, Esquire represented the parent and student.  The parent, ████████████ was also present. Saurabh Gupta, Esquire represented DCPS.  The parent waived review of due process rights.

## JURISDICTION

This hearing was held and this decision was written pursuant to P.L. 108-446, the *Individuals with Disabilities Education Improvement Act of 2004* ("IDEA"), Title 34 of the Code of Federal Regulations, Part 300 and Title V of the District of Columbia Municipal Regulations.

## STATEMENT OF THE CASE AND BACKGROUND INFORMATION

The parent, through counsel, filed a Request for Due Process Hearing on 29 March 2007 alleging that DCPS had failed to respond to parent's request for funding sent pursuant to 34 C.F.R. §300.502, and that DCPS had failed to conduct and review evaluations in all areas of suspected disability.

The parent alleged that on 23 February 2007, DCPS convened a meeting to review the student's current evaluations and to review her IEP, and that at the meeting, the parent's advocate objected to DCPS's occupational therapy evaluation, which raised concerns about the students alleged clumsiness, and requested that the student be evaluated through a physical therapy screener, and receive an ophthalmological evaluation, as well as a neurological evaluation.

At the meeting, DCPS determined that a vision screening was warranted.  At the meeting, the parent, through counsel, made a request for funding of an independent occupational therapy evaluation to the DCPS Office of Mediation and compliance.

Parent's counsel's complaint further alleged that at the time of filing, DCPS had also failed to request a due process hearing to show that its evaluation was appropriate, and to fund an independent occupational therapy evaluation at public expense.

## PRELIMINARY MATTERS

Parent's counsel filed a Motion for Default on 29 May 2007, to which DCPS failed to file a written response, stating on the record that no supporting law exists that establishes a duty to respond.

Parent's counsel also filed a Motion for Summary Adjudication on 29 May 2007, to which DCPS failed to provide a written response, admitting on the record that it had

1

failed to file a timely response. DCPS's counsel further admitted that the response was at least 65 days late.

Additionally, parent's counsel filed a parent's Motion for Due Process Hearing in the Absence of a Resolution Session on 29 May 2007, to which DCPS filed a written response.

Counsel for DCPS filed a Motion to Dismiss Due Process Complaint on 2007, to which parent's counsel filed a written response. In favor of its motion, DCPS, through counsel, argued that dismissal of this case is warranted because DCPS had not waived its right to a resolution and/or mediation meeting under IDEA. DCPS further argued that the parent failed and/or refused to participate in a Resolution Meeting, citing 20 U.S.C. §1415 (F) (1) (B) and 34 C.F.R. § 300.510 (B) (4). Parent's counsel contended that DCPS, by its own admission, has not complied with the federal regulations and the *Blackman Jones* consent decree regarding the scheduling of resolution sessions.

## DUE PROCESS RIGHTS

Reading of due process rights was waived.

## DOCUMENTS

Parent, through counsel, proffered the following documents without objection:

- KY-01:      Disclosure letter dated 05/29/07;
- KY-02:      Notice Compelling DCPS witnesses dated 05/29/07;
- KY-03:      Due Process Complaint dated 03/29/07;
- KY-04:      Due Process Hearing Notice dated 05/04/07;
- KY-05:      MDT Meeting Notes dated 02/03/07;
- KY-06:      Student Evaluation Plan dated 02/23/07;
- KY-07:      Request for Funding of Independent Occupational Therapy Assessment dated 02/23/07;
- KY-08:      Request for Access to Student Records dated 05/07/07.

DCPS, through counsel, proffered the following documents without objection:

- DCPS-01:    Response dated 05/29/07;
- DCPS-02:    Amended Response dated 05/29/07;
- DCPS-03:    MDT Invitation dated 02/06/07;
- DCPS-04:    Completion of Services form dated 02/23/07;
- DCPS-05:    SEP dated 02/23/07;
- DCPS-06:    PT Screen dated 03/14/07;
- DCPS-07:    Letter re: OT Assessment from Bernard T. Carter Education Coordinator, to Tyrka & Associates, dated 03/28/07;
- DCPS-08:    OT Evaluation Offer dated 04/12/07;

2

- DCPS-09:    Resolution Meeting invitation dated 04/03/07;
- DCPS-10:    Motion to Dismiss dated 05/29/07.

## STIPULATIONS

Parent's counsel stipulated that his Motion for Due Process Hearing in the Absence of a Resolution Session is moot.

## ISSUES AND CONTENTIONS

The parent raised the following issues in its case in chief:

1.    Whether DCPS failed to respond to a request for funding sent pursuant to 34 CFR §300.502;

2.    Whether DCPS failed to conduct and review evaluations in all areas of suspected disability.

## TESTIMONY

There was no testimony. .

## WRITTEN ARGUMENT

### Preliminary Motions

Parent's counsel provided written arguments in support of his Motions and in opposition to DCPS's Motion to Dismiss Due Process Complaint.

DCPS did not file responses to any of parent's Motions.

### Case in Chief

There was no written argument for parent's case in chief.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Preliminary Motions

With regard to concerning the preliminary motions parent's counsel's Motion for Entry of Default and Default Judgment dated 29 May 2007, the Hearing Officer finds that DCPS's failure to file a response to the Complaint undermines the administrative process. Although the statute is silent on the question of a proper remedy, it is highly unlikely that such an omission was intentional, and all evidence will be examined in a light most favorable to the moving party. The purpose of the administrative process is to facilitate the gathering of evidence and the arrival at a determination that is fair and equitable, and the Hearing Officer is vested with the authority to exercise reasonable discretion in

3

ensuring that those ends are met. The consistent failure and/or refusal of DCPS to file responsive pleadings is duly noted, and it is hereby determined that the Motion is granted.

The parent also filed a Motion for Summary Adjudication dated 29 May 2007. Rule 56 of the Federal Rules of Civil procedure provides the guidelines for determining whether such a motion should be granted: it must be determined whether there is a lack of genuine issue as to a material fact, and whether the moving party is entitled to judgment as a matter of law. The facts were not in dispute, and there is no genuine issue as to a material fact. DCPS has failed to respond, so it provided no timely evidence to dispute the parent's allegations. The standard governing administrative summary judgment as set forth in *Vet-Mix, Inc. v. U.S. Department of Agriculture*[1] is also noted. Parent's Motion for Summary Adjudication is also granted.

With regard to the Motion to Dismiss Due Process Complaint, it failed to prove that it exercised due diligence in scheduling a resolution session pursuant to the standards set forth in *Blackman-Jones*. DCPS has consistently failed and/or refused to file responsive pleadings, so the irony in its filing of a Motion to Dismiss is not lost on the Hearing officer. The Motion to Dismiss Due Process Complaint is denied.

With regard to parent's Motion for Due Process Hearing in the Absence of a Resolution Session, parent's counsel's stipulation as to mootness of the issue is hereby noted.

**Case in Chief**

34 C.F.R. § 300.502 provides the guidelines describing a parent's right to an evaluation at public expense. In general, a parent making a request for an independent educational evaluation at public expense is entitled to receive one without unnecessary delay, if the parent disagrees with the school's evaluation. The school is charged with the responsibility of either filing a due process complaint to request a hearing to determine the appropriateness of the school's evaluation, or in the alternative, with ensuring that the independent evaluation is provided to the parent at public expense.

Parent's counsel alleges that the parent took issue with the evaluations conducted by DCPS, and made a request for independent evaluations in keeping with the guidelines set forth in 34 C.F.R. § 300.502 . Specifically, the parent, through the educational advocate, challenged the adequacy of the occupational therapy evaluation, alleging that the evaluation itself did not address the any of the conclusions or recommendations made by the team at the MDT meeting. It was also alleged that although DCPS offered to conduct a vision screening in lieu of the ophthamological evaluation that the parent requested, it failed to do so.

DCPS has neither funded the independent evaluations requested by the parent, or that in the alternative, nor has it requested a due process hearing for the purpose of determining the appropriateness of the evaluations that it did perform.

---

[1] 832 F.2d 601 (D.C. Cir.1987).

4

## DECISION

It is hereby ordered that DCPS provide the following relief:

- DCPS shall immediately fund independent evaluations for physical therapy, as well as ophthamological, occupational therapy and neurological evaluations;

- DCPS shall convene a meeting within 10 work days or receiving the student's last evaluation, review all current evaluations, consider the student's eligibility for special education and related services, discuss the student's eligibility for compensatory education and develop a compensatory education program if appropriate.

## APPEAL PROCESS

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

*Marsha Epps Edwards*

Marsha Epps Edwards, Esquire
Independent Hearing Officer

Date Filed:    12 June 2007
Date Issued:   _6/12/07_

5

# District of Columbia Public Schools

### State Enforcement and Investigation Division
### For Special Education Programs
Van Ness Elementary School
1150 5th St., S.E., Washington, D.C. 20003
Phone: (202) 698-3819
Facsimile: (202) 442-5556



## CONFIDENTIAL

| | | |
|---|---|---|
| In Re the Matter of: | ) | |
| | ) | |
| ██████████ ("Student"), | ) | |
| Date of Birth: ██████ | ) | |
| | ) | **DATE OF HEARING:** |
| Petitioner, | ) | July 6, 2007 |
| | ) | |
| | ) | |
| v. | ) | **Motion to Dismiss (Jurisdiction)** |
| | ) | **Motion for Summary Adjudication** |
| | ) | **Motion for Default and Default** |
| | ) | **Judgment** |
| Friendship Public Charter School | ) | **Motion for Due Process Hearing** |
| (FEPCS), | ) | **in Absence of Resolution Session** |
| | ) | |
| Respondent. | ) | |

## ORDER

The matter before this Hearing Officer, is Respondent's Motion to Dismiss Petitioner's Administrative Due Process Complaint, for lack of jurisdiction, entered on the record on July 6, 2007; and Petitioner's Motion for Summary Adjudication, Motion for Default and Default Judgment, and Motion for Due Process Hearing in Absence of Resolution Session.

On July 28, 2006, a due process hearing was convened, in response to a due process complaint filed through Counsel, on behalf of parent, on May 31, 2006. The issue in the complaint was the amount and form of compensatory education the student was entitled, due to FEPCS's failure to provide the student, special education services.

On April 12, 2007, the Hearing Officer rendered a final decision, granting Petitioner the relief, as set forth in the Order. As of the date of this hearing, FEPCS has failed to comply, or implement the HOD of April 12, 2007.

Exhibit 5

On May 4, 2007, Petitioner filed a due process complaint, alleging that FEPCS failed to comply with the Hearing Officer's decision of April 12, 2007. On July 6, 2007, a hearing on the complaint was held. As preliminary issues, Petitioner and Respondent entered Motions, in support of their respective positions.

These matters are before this Hearing Officer for decision.

## Respondent's Motion to Dismiss for Lack of Jurisdiction

After considering and reviewing the parties disclosures, relevant laws, rules, regulations and applicable case law, as well as Petitioner's Motion for Default Judgment, and Summary Adjudication, and Respondent's Motion to Dismiss for Lack of Jurisdiction, it is the Hearing Officer's determination that:

1) This matter is properly before this Hearing Officer, and the Hearing Officer in this matter assumes jurisdiction, authorizing her to decide the matters before her, and the Motion to Dismiss for lack of jurisdiction is denied on the following grounds:

   In accordance with 5 DCMR Section 3029:

   "A parent of a child or the LEA has the right to initiate a hearing, when there is a dispute about the eligibility, identification, evaluation, educational placement, or the provision of FAPE to a child with disability, in accordance with 20 U.S.C. Section 1415(f).

   The philosophy underlying IDEA requires a plaintiff to exhaust their administrative remedies before turning to the courts.

   The Blackman Jones Consent decree provides that noncompliance with an HOD represents a denial of FAPE. In the Consent Decree, it was agreed among many things, that any student, "now and in the future," whose HOD had not been timely implemented is a member of the class entitled to relief, and that failure to implement a HOD creates a rebuttable presumption of harm. It also establishes that one becomes a member of the class "as a result of an untimely HOD or untimely Implementation of an HOD/SA."

In the Consent Decree, the schools acknowledged and agreed to a rebuttable presumption of harm for failure to timely implement a HOD:

   "This Consent Decree establishes a rebuttable presumption of harm for students denied timely hearings or HOD and for students who failed to receive timely implementation of HODs and SAs. Within fifteen (15) days of final approval of the Consent Decree, representative on behalf of the schools agreed to revise their policies and due process complaint request form to incorporate this rebuttable presumption of harm.

2

Moreover, the Consent Decree also provides:

> The goal of this Consent Decree is to achieve, as quickly as possible, Defendants' compliance with federal law requirements for timely due process hearings and timely implementation of Hearing Officer Decisions and Settlement Agreements. The parties' goals is for the Defendants to achieve and maintain timely due process hearings and timely implementation of HOD's and SA's in all instances. There is no intention to cause delays or obstacles for students or DCPS but to facilitate resolution and provide remedies when there have been rights violated. Therefore, Respondent's Motion to Dismiss for Lack of Jurisdiction is denied.

### Petitioner's Motion for Due Process Hearing in Absence of a Resolution Session

In response to Petitioner's Motion for Due Process Hearing in the Absence of a Resolution Session, the Hearing Officer responds as follows:

Section 300.510(a)(I) of IDEIA provides in pertinent part:

> "...Within 15 days of receiving notice of the parent's due process complaint, and prior to the initiation of a due process hearing under Section 300.511, the LEA *must* convene a meeting with the parent and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the due process complaint that__"

In addition, the Blackman-Jones Consent Decree provides that DCPS will exercise due diligence in scheduling resolution sessions. The evidence of record reflects that Friendship failed to comply with the procedures for convening resolution sessions as set forth in the Blackman-Jones Consent Decree, by exercising due diligence in scheduling a resolution session.

DCMR, Section 3030.1(a) also provides:

> "...Prior to the opportunity for an impartial due process hearing, the LEA *shall* convene a Resolution Session with the parents and the relevant member(s) of the IEP Team who have specific knowledge of the facts identified in the complaint.

The Resolution Session:

(i)     shall convene within fifteen (15) days of receiving notice of the parent's complaint;"

3

Based on the aforementioned, Friendship failed to comply with the requirements of DCMR, Section 3030.1(a), Section 300.510(a)(I) of IDEIA, and the Blackman-Jones Consent Decree, by failing to exercise due diligence in scheduling a resolution meeting with the parent. Therefore, Petitioner is entitled to a due process hearing, in the absence of a resolution session.

The due process hearing was held on July 6, 2007, therefore, the issue of scheduling a due process hearing, in the absence of a resolution meeting, is "moot", and the Motion is denied.

## Petitioner's Motion for Entry of Default and Default Judgment

34 C.F.R. Section 300.508 (e) provides, in pertinent part:

(1) If the Local Education Agency (LEA) has not sent a prior written notice under Section300.503 to the parent regarding the subject matter contained in the parent's due process complaint, the LEA *must*, within ten (10) days of receiving the due process complaint, send to the parent a response that includes---

(i)     An explanation of why the agency proposed or refused to take the action raised in the due process complaint;

(ii)    A description of other options that the IEP Team considered and the reasons why those options were rejected;

(iii)   A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and

(iv)    A description of the other factors that are relevant to the agency's proposed or refused action.

Furthermore, **34 C.F.R. Section 300.508(f)** provides:

"Except as provided in paragraph (e) of this section, the party receiving a due process complaint must, within 10 days of receiving the due process complaint, send to the other party a response that specifically addresses the issues raised in the due process complaint."

According to **Rule 55(a) of the Federal Rules of Civil Procedure**, a motion for default judgment is appropriate:

(a) "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk or the court *shall* enter the party's default."

4

The Notice of Complaint was filed in this matter, on May 4, 2007. According to 34 C.F.R. Section 300.508(e), DCPS was required to file a *prior written notice or written response* to the complaint, by May 14, 2007. As of the date of this hearing, DCPS failed to issue a prior written notice or a response, specifically addressing the issues raised in the complaint, within 10 days of receiving the due process complaint, in violation of 34 C.F.R. Section 300.508(e), and as required by the Individuals with Disabilities Education Improvement Act of 2004.

*Massey, et al., v. District of Columbia* also provides that DCPS' failure to respond in a manner explicitly required by the statute failed to satisfy the statutory requirement of a written response.

Unfortunately, the statute does not specify the remedy, when the LEA fails to issue a proper response to Petitioner's complaint, although a remedy is appropriate. The federal courts have held that where the IDEA is silent regarding a procedural rule, the most analogous state rule must be applied, if they are not inconsistent with the federal policies underlying the IDEA. District of Columbia Superior Court Rules of Civil Procedure 12(a)(5) and 55(a), which provides the remedy for a civil defendant's failure timely to file an answer to a complaint.

Relief on behalf of Petitioner is also warranted, pursuant to 20 U.S.C. 1400(d)(1)(B), which requires that the Hearing Officer "ensure that the rights of children with disabilities and parents of such children are protected".

An entry of default judgment is not a final judgment terminating a proceeding. "[T]he entry of default does not constitute a judgment, but simply precludes the defaulting party from offering any further def3ndse on the issue of liability." In other words, the default resolves all liability questions against the defaulting party, but does not determine ultimate relief. A default under IDEA, is a finding, as a matter of law, that the Respondent has committed all of the violations identified in the Complaint.

Based on the aforementioned, an entry of default is appropriate in this matter, and Petitioner's Motion for Default Judgment is **GRANTED**, due to DCPS's failure to issue a prior written notice *or* file a response to the complaint, in accordance with 34 C.F.R. Section 300.508(e) and (f), and the Individuals with Disabilities Education Improvement Act of 2004.

### Petitioner's Motion for Summary Judgment

To determine whether a summary judgment should be granted, a determination must be made as to whether no genuine issue as to a material fact exists and whether the moving party is entitled to judgment as a matter of law. Additionally, the facts must be reviewed in a light most favorable to the non-moving party.

5

Based upon the evidence of record, the following facts, as presented by Petitioner, are undisputed:

On April 12, 2007, the Hearing Officer issued an order requiring Friendship Edison Public Charter School ("FEPCS") to:

a) provide the student 125 hours of one-on-one tutoring in reading and math for a total of 250 hours;

b) convene a meeting with Petitioner and Counsel within ten (10) school days of the April 12, 2007 HOD, to determine the detail of when and how the tutoring would be provided to the student; and

c) schedule the meeting through Petitioner's Counsel.

It is undisputed that Friendship failed to comply with the terms and conditions of the April 12, 2007 Hearing Officer's Decision, by implementing and granting Petitioner the relief as set forth above, and as ordered in the HOD. Therefore, there is no genuine issue as to a material fact, that would prevent the parent's Motion from being granted; and therefore, the Motion is granted.

With regard to reviewing the facts in a light most favorable to the non-moving party, it is the Hearing Officer's determination that Respondent has not provided any evidence that could dispute any of the contentions of the parent. In fact, based on the Questions and Answers publication of the Department of Education, it is clear that Respondent had an obligation to offer FAPE to the student, and according to the Hearing Officer's determination of April 12, 2007, Friendship denied the student FAPE.

The record also reflects that Friendship failed to provide parent a resolution meeting; a prior written notice, or response to the complaint; and failure to comply with the Hearing Officer's decision of April 12, 2007, ordering that Friendship implement certain measures to ensure the student receives FAPE, is further evidence of Friendship's blatant disregard for the administrative process; IDEA, and the student's entitlement under to a free and appropriate public education.

The Consent Decree in Blackman v. District of Columbia, Civil Action No. 97-1629 (D.D.C. Aug. 24, 2006), provides in pertinent part:

"Noncompliance with an HOD represents a denial of FAPE. In the Consent Decree, DCPS agreed among many things, that any student, "now and in the future," whose HOD has not been timely implemented is a member of the class entitled to relief, and that failure to implement a HOD creates a rebuttable presumption of harm. It is also established that one becomes a member of the class "as a result of an untimely HOD or untimely implementation of an Hearing Officer Decision and Settlement Agreement."

6

Moreover, the Consent Decree provides:

> "The goal of this Consent Decree is to achieve, as quickly as possible, Defendants' compliance with federal law requirements for timely due Process hearings and timely implementation of Hearing Officer Decisions and Settlement Agreements. The parties' goal is for the Defendant's to achieve and maintain timely due process hearings and timely implementation of HOD's and SAs, in all instances, while understanding that perfection is neither possible nor required under this Decree. There is no intention to cause delays obstacles for students or DCPS but to facilitate resolution and provide remedies when there have been rights violated."

The evidence in the record reflects that Friendship failed to implement and grant Petitioner the relief ordered, in the April 12, 2007, HOD. Under these circumstances, the notion that the applicable law is designed to force the Petitioner to now go through a different process or resort to the courts for relief already ordered is contrary to all notions of fair play and judicial economy. Counsel for Respondent has not presented any evidence before this Hearing Officer that IDEA or any of its implementing regulations are structured to create an "evade responsibility" doctrine, in the administrative process, and therefore force courts to intervene. Failure to comply with determinations made by a Hearing Officer, that are intended to ensure that the student receive a FAPE, then requiring Petitioner to endure layers of bureaucracy, can only produce an outcome similar to the decision in Blackman v. District of Columbia; and frustration of the administrative complaint process. The Blackman v. District of Columbia case, resulted in the Consent Decree, which is referenced herein, in which among other matters, DCPS agreed to revise its policies and due process complaint form to reflect and incorporate the notion that *failure to timely implement an HOD creates a rebuttable presumption of harm* to the student.

With regard to the parent's Motion, when viewing this matter in the light most favorable to the non-moving party; it is the Hearing Officer's determination that Friendship failed to implement the HOD of April 12, 2007, resulting in further denial of FAPE; and a continuous violation of IDEA and governing regulations.

It is the Hearing Officer's decision that Respondent, failed to present any evidence that there exist genuine issues of material fact; that would rebut the factual or legal arguments of the parent; or that Friendship implemented the relief granted Petitioner, in the April 12, 2007 HOD. Accordingly, Summary Judgment in this case is appropriate.

7

## ORDER

Based upon the aforementioned, it is hereby:

**ORDERED**, that Respondent's Motion to Dismiss Petitioner's Due Process Complaint, due to lack of jurisdiction, is **DENIED**; and it is further

**ORDERED**, that Petitioner's Motion for Due Process Hearing in the Absence of a Resolution Meeting is **DENIED**, as "moot";

**ORDERED**, that Petitioner's Motion for Entry of Default and Default Judgment is **GRANTED**;

**ORDERED**, that Petitioner's Motion for Summary Adjudication is **GRANTED**, and immediately, FEPCS is to fund 125 hours of independent one-on-one tutoring for the student, in math; and 125 hours of independent one-on-one tutoring for the student, in reading.


_Ramona Justice-Pegues_                Date Filed: _7-18-07_
Attorney Ramona Justice-Pegues
Hearing Officer

Date Issued: _7/18/07_


cc: Attorney Paul S. Dalton, Dalton, Dalton & Houston, P.C.
    Attorney Douglas Tyrka, Tyrka & Associates, LLC

8

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ETTA JALLOH,<br><br>            Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 07-63
RMC

## VERIFIED STATEMENT OF PATRICK MEEHAN

1.  I am over 18 years of age and competent to testify regarding the matters described herein.

2.  I am currently employed as a law clerk for Tyrka & Associates.

3.  My duties at Tyrka & Associates include keeping records of administrative complaints, responses, and other filings.

4.  I update these records at least once per week and often more frequently, depending on the volume of filing.

5.  According to these records, from January 1, 2007 until July 31, 2007, the District of Columbia Public Schools ("DCPS"), has served twenty-eight total written responses to 117 due process complaints filed by Tyrka & Associates.

6.  Of DCPS' responses, no more than two were served within ten business days of the complaint's filing.

7.    Of DCPS' responses, fifteen were served five or fewer days before the scheduled

hearing of the respective complaint.



I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.


Executed on _8/10/07_____


_____
Patrick Meehan