## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ETTA JALLOH, on behalf of her minor child, R.H.,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 07-63 (RMC)** |
| **DISTRICT OF COLUMBIA,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

  Etta Jalloh brought this suit on behalf of her son, R.H., a student eligible for special education and related services as emotionally disabled.[1]  Finding no reason to overturn the Hearing Officer Decision ("HOD") from which she appeals, the Court will grant summary judgment to the District of Columbia Public Schools ("DCPS").

## I.  FACTS

### A.  Statutory Scheme

  The Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400 *et seq*., ensures that, "all children with disabilities have available to them a free appropriate pubic education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).  The IDEIA guarantees children with disabilities the right to a free appropriate public

---

[1] At the time Ms. Jalloh filed this suit, R.H. was 12 years old.

education ("FAPE").  *Id.*  In designing an appropriate education for students with disabilities, the child's parents, teachers, school officials, and other professionals collaborate to develop an individualized educational program ("IEP") to meet the child's unique needs.  *See* 20 U.S.C. § 1414(d)(1)(B).  Local school officials utilize the IEP to assess the student's needs and assign a commensurate learning environment.  *See* 20 U.S.C. § 1414(d)(1)(A).  The IEP team, consisting of the student's parents, teachers, and other local education personnel, examines the student's educational history, progress, recent evaluations, and parental concerns prior to implementing a free appropriate public education for the student.  *Id.*  To determine whether a FAPE has been provided, courts must determine whether: (1) the school complied with the IDEIA's procedures; and (2) the IEP developed through those procedures was reasonably calculated to enable the student to receive educational benefits.  *Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1312 (11th Cir. 2003).

While the District of Columbia is required to provide students with a public education, it does not guarantee any particular outcome or any particular level of education.  *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982); *Dorros v. District of Columbia*, 510 F. Supp. 2d 97, 100 (D.D.C. 2007).  If the parent objects to the identification, evaluation, or educational placement of the student, or the provision of a free appropriate public education, 20 U.S.C. § 1415(b)(6), the parent may seek an impartial due process hearing.  *Id.* § 1415(f)(1).  If the parent is dissatisfied with the outcome of that hearing, s/he may appeal the decision to a state court or a federal district court.  *See* 20 U.S.C. § 1415(i)(2)(A).

**B. Background Facts**

On June 16, 2004, DCPS convened a Multidisciplinary Team Meeting ("MDT") to develop an IEP for R.H.  The MDT determined that R.H. needed 26 hours of specialized instruction

and 1.5 hours of psychological services per week.  Ms. Jalloh proposed sending R.H. to a private school, specifically Episcopal School, Rock Creek Academy, or High Road Academy, because these schools offer "small class size, behavior intervention, support staff . . . [and] a very small setting." Administrative Record ("A.R.") at 43.  DCPS proposed the Hamilton Center, a public institution, because it "also offers small class size, behavior intervention, [and] related services." *Id.*  At the end of the meeting, DCPS promised to perform a psycho-educational evaluation of R.H. and to reconvene.  On that date, it also issued a Prior to Action Notice placing R.H. at Hamilton.  *Id.* at 52.

R.H. attended Hamilton for the 2004-05 and 2005-06 school years.  No new IEP was developed to cover the 2005-06 school year.  DCPS contends that it attempted to convene an MDT/IEP meeting many times but that Ms. Jalloh and/or her education advocate were unable to attend or otherwise failed to appear.[2]  The HOD concluded that DCPS failed to provide a FAPE to R.H. in 2005-06 because the school system failed to develop a new IEP.  *Id.* at 10 ("[A] two year period was an unreasonable delay for updating the student's IEP").  The HOD ordered that certain evaluations be completed and that the MDT meet to review the evaluations and revise the IEP if appropriate.  *Id.* at 11.

On July 19, 2006, DCPS finally convened another MDT/IEP meeting to develop a new IEP for R.H., to review the services that were being provided, and to discuss current placement.  Of the opinion that R.H. had made no progress in two years at Hamilton, Ms. Jalloh urged that he be moved to a private placement.  The meeting must have been somewhat difficult:  the student's teacher from the prior year, who would be expected to know most about R.H.'s progress, was away

---

[2] DCPS alleges that it requested an IEP meeting on March 23, May 13, May 24, and June 8, 2005 but received no response from Ms. Jalloh or her advocate.  On June 29, 2006, an MDT/IEP meeting was confirmed for July 14, 2006, but Ms. Jalloh and her representatives did not appear.

on vacation and not in attendance; those in attendance had no records or documentation with them; and Ms. Jalloh, through her advocate Sharon Millis, kept insisting that R.H. was not receiving appropriate services, so much so that the note taker labeled her complaints "monotonous." *Id*. at 62. The staff from Hamilton[3] opined that R.H. had made progress in the program and that the current placement was appropriate. *Id*. at 63.[4]

Ms. Jalloh filed a complaint and request for a due process hearing on July 31, 2006. Through counsel, she complained that DCPS had failed to:

conduct and review evaluations in all areas of suspected disability;

develop adequate IEPs;

provide necessary special education and related services; and

provide an appropriate placement.

*Id*. at 111.  DCPS filed a Response on August 16, 2006.  It stated, in whole:

The District of Columbia Public School[s] (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides its Response to the Administrative Due Process Complaint Notice ("Complaint") filed on or about August 1, 2006 on behalf of the parent of [R.H.], DOB [], pursuant to the Individual's [sic] with [sic] Disabilities Education Improvement Act (hereinafter "IDEA 04"), 20 U.S.C. § 1415(c)(2)(B)(i)(I).   Specifically, DCPS asserts the following:

1. DCPS denies the allegation it failed to complete a speech and language evaluatin [sic] and a psycho-educational evaluation.

---

[3] Such Hamilton staff included: Chuck Ugoji, Special Education Coordinator and Interim Principal; Paul Williams, social worker; and Ferlandia Townsend, acting teacher.

[4] A follow-up meeting of the MDT was held on August 31, 2006.  Ms. Jalloh's education advocate continued to complain about the failure of DCPS to produce records, noting that "the teacher who is no longer at the school did not leave any documentation supporting progress." A.R. at 68.

Recommendations are not mandates for the MDT team to follow. Two years have elapsed since June 16, 2004 and DCPS has no record of the parent requesting either of these evaluations.

2. DCPS denies the allegation [that] the Hamilton Center is not reasonably calculated to provide a Free and Appropriate Education to this student.

*Id*. at 116.

On September 5, 2006, prior to the due process hearing, counsel for Ms. Jalloh wrote to Chuck Ugoji, Special Education Coordinator at Hamilton, and requested all records on R.H.[5] He received no response. Counsel for Ms. Jalloh also wrote to the attorney advisor for DCPS indicating an intent to "compel" the presence of various DCPS officials to testify at the hearing. None appeared.

The hearing convened on September 29, 2006. Counsel for Ms. Jalloh moved for a default judgment, asserting that the Response to her Complaint was inadequate and failed to comply with § 1415 of the IDEIA. *Id*. at 5-6, 160-62. Further, he requested that the Hearing Officer (1) deem DCPS to have waived any defenses that were not raised in its Response, and (2) make an inference that the student was denied a FAPE because DCPS had failed to provide Ms. Jalloh with copies of the student's records. *Id*. at 6, 193. The Hearing Officer ruled "that DCPS' response to the complaint did not warrant a default decision and . . . that DCPS was not strictly limited to assertions made in its response in presenting its defense to any alleged violations and/or denials of

---

[5] Counsel asked for "[a]ll form 6s; [a]ll standardized test scores, such as CTBS or SAT-9; [a]ll evaluation reports and DCPS reviews, including triennial review; IEPs, BLMDT, MDT notes, placement notices, and letters of invitations [sic] for all years in special education; [a]ll report cards, including progress reports and attendance records; [a]ll disciplinary records, incident reports, and manifestation determinations; [a]ll encounter tracking forms; [a] list of all of the student's special and general education teachers; [and] [a]ny other records or correspondence you believe are relevant." A.R. 119.

FAPE." *Id*. at 8. He also found that, pursuant to 1415(f)(3)(E)(ii), "in matters alleging a procedural violation a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the parent's opportunity to participate in the decision making process regarding provision of FAPE, or caused the child a deprivation of educational benefits." *Id*. at 7. Finally, he concluded that "[t]here was no evidence DCPS denied the parent or her counsel access to the student's records." *Id*. at 9.

## II.  LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id*. at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a

reasonable jury to find in its favor. *Id*. at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In evaluating a hearing officer's decision in an IDEIA case such as this one, the court reviews the administrative record, may hear additional evidence at the request of a party, and bases its decision on the preponderance of the evidence, granting such relief as deemed appropriate. 20 U.S.C. § 1415(i)(2)(B)(iii). The court gives "due weight" to the HOD and does not substitute its own view of sound educational policy for that of the hearing officer. *See Rowley*, 458 U.S. at 206. Moreover, the burden of proof is with the party challenging the administrative determination, who must "'at least take on the burden of persuading the court that the hearing officer was wrong.'" *Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)).

### III.  ANALYSIS

Two major complaints are raised by Ms. Jalloh:  (1) she should have been awarded a default judgment because the DCPS Response was inadequate and (2) the hearing officer should have drawn negative inferences that R.H. had not received a FAPE because DCPS had failed to provide Ms. Jalloh with requested school records. Lesser matters are discussed in conjunction with these two major issues.

#### A.  Adequacy of DCPS Response

The IDEIA, formerly known as the Individuals with Disabilities Education Act ("IDEA") was amended to change significantly how due process hearings are conducted. Prior to the amendment, a school system bore the burden of proof that it had provided a FAPE to a

complaining student and it had no obligation to answer a complaint. As amended, the statute now imposes the burden of proof on the parent to demonstrate that a Local Educational Agency ("LEA" or, here, DCPS) has failed to provide a FAPE. With this change came explicit requirements regarding how to request a due process hearing and how a LEA must respond to a complaint. The IDEIA now requires that a LEA file a response to a complaint containing specific information as follows:

> If the local educational agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, such local educational agency shall, within 10 days of receiving the complaint, send to the parent a response that shall include--
>
> (aa) an explanation of why the agency proposed or refused to take the action raised in the complaint;
>
> (bb) a description of other options that the IEP Team considered and the reasons why those options were rejected;
>
> (cc) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
>
> (dd) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(2)(B)(i)(I).

There can be no serious question that DCPS's Response in this case was inadequate as measured against these statutory commands. Ms. Jalloh advanced four claims in her due process complaint — that DCPS failed to: (1) conduct and review evaluations; (2) develop adequate IEPs; (3) provide necessary special education and related services; and (4) provide an appropriate placement. A.R. at 111. The Response said nothing whatsoever about claims 2 and 3, the alleged failure to develop IEPs and to provide necessary special education services. As to claims 1 and 4

(regarding evaluation and placement), the Response failed to provide the kinds of information required in 20 U.S.C. § 1415(c)(2)(B)(i)(I), and instead merely denied that DCPS had violated the IDEIA or failed to provide a FAPE.

Because this is the kind of information that is peculiarly within the knowledge and control of DCPS and because the parent bears the burden of proof, it is no small matter when a response fails to convey its obligatory information. "DCPS may not determine the form of its response: the required content of the written response is precisely detailed in the IDEA.[6] . . . [T]he IDEA does not allow DCPS to respond generally to the substance of the complaint in whatever form it deems appropriate." *Massey v. District of Columbia*, 400 F. Supp. 2d 66, 72-73 (D.D.C. 2005) (citations omitted).

DCPS asserts that its Response was sufficient because it had previously issued a Prior Notice and no formal response was actually required. In fact, the Prior Notice was stale — it was for the placement of R.H. at Hamilton in 2004, and by July 2006, when Ms. Jalloh again sought a private placement and DCPS refused to remove R.H. from Hamilton, the Prior Notice was two years old. There should have been two intervening IEPs in that length of time and re-evaluation of R.H.'s disability and progress.[7]

---

[6] The IDEA was amended on December 3, 2004 by the IDEIA. Most of the amendments took effect on July 1, 2005. Pub. L. No. 108-446, § 302, 118 Stat. 2647, 2803 (2004).

[7] DCPS should have recognized that the 2004 Prior Notice was two years out-of-date when it prepared a Response to the 2006 complaint. The problem actually lies in insufficient manpower in the Office of the General Counsel of DCPS, not in any lack of recognition of the school system's obligations. *See* Def.'s Reply [Dkt. #17] at 3. It is not sufficient, however, to plead lack of manpower in the face of the direct and clear statutory requirements set forth in 20 U.S.C. § 1415(c)(2)(B)(i)(I). *See Massey*, 400 F. Supp. 2d at 71. And, depending on the nature of a parent's complaint, providing adequate information in the Response would not be as onerous as DCPS suggests. Appending copies of MDT meeting notes, for instance, would inform a parent of the

Nonetheless, an LEA's failure to comply with a procedural requirement constitutes a denial of FAPE only if the violation actually "affected the student's substantive rights." *Lesesne v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006); *accord Metro. Bd. of Pub. Educ. v. Guest*, 193 F.3d 457, 464-65 (6th Cir. 1999); *Gadsby v. Grasmick*, 109 F.3d 940, 956 (4th Cir. 1997). Ms. Jalloh has not proffered the least bit of evidence that the abbreviated Response from DCPS prejudiced her in any way. Her presentation at the hearing was limited by her inability to offer records on R.H.'s education and progress or lack thereof and her inability to present testimony from R.H.'s teachers — both caused by the failure of Ms. Jalloh's counsel to follow the correct procedures to obtain records and compel testimony, as discussed below, and not caused by DCPS's meager Response. Thus, the HOD denying Ms. Jalloh's request for default based on DCPS's Response will be affirmed.

### B. Release of School Records

Ms. Jalloh also contends that because DCPS failed to provide certain school records to her, the Hearing Officer should have "held DCPS accountable and made an inference that Hamilton had not been providing R.H. [an] adequate education and services,[8] and could not do so going forward." Pl.'s Mem. in Suppt. of Mot. for Summ. J. ("Pl.'s Mem.") at 27. The District of Columbia Municipal Regulations provide for parent access to a student's records:

In accordance with the confidentiality procedures of 34 C.F.R.

---

options considered, the reasons for placement, and the kinds of evaluations performed.

[8] The Hearing Officer, in fact, did find that DCPS denied R.H. a FAPE by failing to provide an appropriate IEP for the 2005-06 school year. A.R. at 10. Based on this finding, DCPS contends that the issue regarding the release of school records is moot. It is not moot, however, because the Hearing Officer did not find that DCPS could not provide R.H. a FAPE going forward, and ordered that evaluations be conducted and an MDT meet to revise the IEP as appropriate. *Id*. at 11.

> 300.560 - 300.576 and 34 C.F.R. 99, *the parent of a child with a disability shall be given the opportunity to inspect and review and to copy at no cost* to the parent all of the child's records relating to the identification, evaluation, and educational placement and the provision of FAPE.

5 D.C. Mun. Reg. § 3021 (emphasis added).  Further, the Student Hearing Office – Standard Operating Procedures ("SHO-SOP") provide:

> Right to examine pupil records: Parents have the right to examine all records maintained by the school that are related to their child. Parents should call or write their individual LEA or school(s) to request access to the pupil records.  Parents may authorize counsel, advocates, investigators or other individuals to review and obtain copies of their children's records.

SHO-SOP § 800.2.  In sum, parents have the right to examine records and DCPS must give parents the opportunity to inspect, review, and copy records.

Ms. Jalloh twice requested copies of records from DCPS.  At the July 14, 2006 IEP meeting, she asked for report cards and progress reports.  A.R. at 61-62.  On  September 5, 2006, counsel for Ms. Jalloh sent a letter to Chuck Ugoji, Special Education Coordinator at Hamilton,[9] asking for copies of the records concerning R.H.  *See id*. at 119.  The Hearing Officer found that there is "no evidence the parent and/or her representative made an effort to go to Hamilton and copy the student's records. . . . The above cited provisions indicate counsel must do more than merely request copies of documents by letter."  *Id*. at 9.  The Court cannot fault the logic of the Hearing Officer.  Ms. Jalloh argues, "Only an extremely narrow reading of the Plaintiff's written request and the SOPs would find that the Plaintiff had not requested access to the records."  Pl.'s Mem. at 26. Counsel misses the point:  although Ms. Jalloh and her counsel requested access to records regarding

---

[9] In July 2006, Mr. Ugoji had been Interim Principal at Hamilton.  *See* A.R. at 63.

R.H., neither Ms. Jalloh nor her counsel followed up by going to Hamilton where the records were located to achieve that access.[10] Thus, the hearing officer correctly concluded that he could not find that DCPS denied R.H. a FAPE based solely on the absence of records.

### C. Hearsay Evidence and Compulsion of Witnesses to Testify

Ms. Jalloh contends that the Hearing Officer should not have allowed Mr. Ugoji to testify concerning what he had been told by a service provider as to services for R.H. and should not have relied on testimony from Ms. Jalloh herself regarding the contents of report cards and teacher oral reports. Citing the language of the IDEIA that each party has "the right to . . . confront, cross-examine, and compel the attendance of witnesses," 20 U.S.C. § 1415(h)(2), Ms. Jalloh argues that the admission of hearsay deprived her of her right to confront witnesses. She adds that the right to confront witnesses under the IDEIA originates in the Confrontation Clause of the Sixth Amendment.[11] Under the Confrontation Clause, before hearsay is admitted in a criminal prosecution, the declarant must be shown to be unavailable and the declaration must be shown to be reliable. *Idaho v. Wright*, 497 U.S. 805, 814-15 (1990).

Ms. Jalloh asserts that the Hearing Officer should not have admitted the hearsay

---

[10] Ms. Jalloh contends that she also asked for records at an MDT meeting on August 31, 2006. At that meeting, she expressed her "[c]oncerns about the development of the goals/objectives [in the 2006-2007 IEP for R.H. at Hamilton] since the teacher is no longer at the school [and] did not leave any documentation supporting progress or how goals/objectives were developed which were raised at the last meeting are still an issue." A.R. at 68. She also stated that "[e]ncounter tracking forms need to be printed out." *Id.* Neither of these statements actually constituted a request for access to R.H.'s records but, instead, revealed Ms. Jalloh's continuing concern that Hamilton was not properly preparing IEPs for R.H. and ensuring that he receive other services. Even if they were considered to be requests for records, Ms. Jalloh failed to follow through.

[11] The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

testimony of Mr. Ugoji indicating that R.H. had received specialized instruction and psychological counseling.  Mr. Ugoji testified that he knew that R.H. received, and was receiving, counseling, because he supervised R.H.'s counselor, Mr. Paul Williams.  Mr. Ugoji and Mr. Williams met every Friday for discussion of Mr. Williams's cases.  A.R. at 224.  Similarly, Ms. Jalloh argues that the hearsay elicited from herself regarding teacher comments on R.H.'s progress failed both the unavailability and reliability requirements.  Ms. Jalloh testified that both report cards and R.H.'s teachers indicated that R.H. was doing well.  *Id*. at 252-53.  Ms. Jalloh contends that DCPS was required to show that the report cards and R.H.'s teachers were unavailable before such hearsay testimony could be admitted.  Counsel for Ms. Jalloh also objected because he had attempted to obtain the testimony of Mr. Williams and of R.H.'s teachers at the hearing by writing to  DCPS's attorney advisor to compel them to attend the hearing.

Ms. Jalloh's counsel mistakenly presumed that it was DCPS's responsibility to obtain witnesses whom she wished to testify.  In fact, it is the responsibility of the party seeking relief to secure the presence of witnesses and of the requesting party to serve a Notice to Appear.  *See* SHO-SOP 800.1.4.  Ms. Jalloh did not serve a Notice to Appear on Mr. Williams or any other potential witness.  DCPS cannot be faulted with the fact that Mr. Williams and R.H.'s teacher did not attend the hearing.  With regard to R.H.'s report cards, Ms. Jalloh is hard pressed to claim she was denied access to them, as she testified that she received report cards.  A.R. at 252.  Further, as explained above, it was the responsibility of Ms. Jalloh and her counsel to visit Hamilton to obtain access to R.H.'s records.

Ms. Jalloh recognizes that hearsay rules do not apply to administrative proceedings in IDEIA cases.  *See* Pl.'s Mem. at 27; Pl.'s Reply at 15.  Moreover, the Sixth Amendment right of

a criminal defendant to confront witnesses against him simply does not apply in civil cases, much

less administrative hearings. The argument to the contrary has no merit.

### D.  Instructions and Services for R.H.

Ms. Jalloh argues that DCPS produced insufficient evidence through Mr. Ugoji's

testimony to support the hearing officer's ruling that R.H. "ha[d] been provided the services under

the existing IEP since he attended Hamilton." A.R. at 11. She urges the Court to find that R.H. had

not been provided all necessary services:

> Mr. Ugoji's one hearsay statement, that R.H. "is receiving" his
> counseling, does not establish that Hamilton had provided and was
> providing R.H. the instruction and services on his IEP since he
> enrolled. Because DCPS did not deny in its Response that it had
> failed to provide the instruction and services, because DCPS did not
> provide Ms. Jalloh any records of instruction and services other than
> the limited encounter tracking forms, and because DCPS failed to
> offer any other evidence of instruction and services provided at
> hearing [sic], the hearing officer should have ruled on the basis of an
> inference that R.H. had not received instruction and services in
> accordance with his IEPs during his two years at Hamilton.

Pl.'s Mem. at 31. This argument misperceives the burden of proof. Ms. Jalloh bore that burden, not

DCPS. *See Reid*, 401 F.3d at 521 (the burden of proof is with the party challenging the

administrative determination). Thus, the Hearing Officer had testimony from Mr. Ugoji that he

specifically credited to the effect that R.H. had received and was receiving counseling, and he had

testimony from Ms. Jalloh that she received report cards and other reports on R.H.'s progress. Ms.

Jalloh presented no contrary evidence, leaving the Hearing Officer to find that she had failed to prove

her case. A.R. at 11-12. The Court agrees.

### E.  Placement at Hamilton

Ms. Jalloh also alleges that R.H.'s placement at Hamilton was inappropriate because

the Prior Notice that DCPS provided to her when it initially placed R.H. did not include all of the information required by 20 U.S.C. § 1415(c)(1). Section 1415(c)(1) requires that a Prior Notice include:

> an explanation of why the agency proposes or refuses to take action;
>
> a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
>
> a description of other options considered by the IEP team and the reason why those options were rejected; and
>
> a description of the factors that are relevant to the agency's proposal/refusal.

20 U.S.C. § 1415(c)(1).

R.H.'s placement at Hamilton was appropriate, however, because even though the required information was not set forth in the Prior Notice, it was elicited at the MDT/IEP meeting on June 16, 2004. Ms Jalloh attended the June 16, 2004 meeting with her advocate, Ms. Millis, Hamilton principal Brenda Kinsler, and DCPS psychologist Denise Daniels. The psychologist determined that R.H. had an emotional disability based on observation, school assessments, and clinical evaluations. A.R. at 45. She recommended a full time special education program and counseling. While Ms. Jalloh's advocate disputed the diagnosis, she agreed with the recommendation. *Id*. at 47. The entire team rejected a general education setting and a combined general/special education setting due to "continued school failure," *see id*. at 41, and the entire team accepted an "out of" general education setting. *Id*. The entire team also found that extra school year services were warranted. The group also discussed placement. Ms. Jalloh proposed sending R.H. to one of three private schools — Episcopal School, Rock Creek Academy, or High Road Academy — because these schools offered small class size, behavior intervention, support staff and a very

small setting. *Id*. at 43. DCPS proposed the Hamilton Center, a public school, because it also offered small class size, behavior intervention, and related services. *Id*. At the end of the meeting, DCPS promised to perform a psycho-educational evaluation of R.H. and to reconvene. On that date, it also issued a Prior to Action Notice placing R.H. at Hamilton, noting that when DCPS had an appropriate program in a public school, it must give first priority to placement in that program. *Id*. at 52; *see* D.C. Code § 38-2561.02 ("[S]pecial education placements shall be made in the following order of priority provided that the placement is appropriate for the student: (1) DCPS schools or District of Columbia public charter schools."). In sum, all of the required information was elicited at the MDT/IEP meeting — an explanation of what action DCPS proposed to take and why, a description of evaluations of R.H., a description of other options and why they were rejected. DCPS explained that it was complying with its legal mandate of placing R.H. in a DCPS school where there was a program that could meet his needs.

Ms. Jalloh also argues that R.H.'s placement at Hamilton was inappropriate because R.H. had not made sufficient progress there. The Hearing Officer found that under the IEP, R.H. was to receive specialized instruction and counseling, and that according to Mr. Ugoji's credible testimony, R.H. was receiving these services. A.R. at 11. Ms. Jalloh, in fact, had testified that R.H.'s report cards were good and that his teachers all said he was making academic progress at Hamilton. *Id*. The Hearing Officer explained:

> Although the parent testified she does not believe he has made progress, her testimony alone was insufficient for the Hearing Officer to conclude Hamilton is an inappropriate placement. Simply because the student's IEP has been determined inappropriate does not automatically render student [ ] in need of a different placement. There was insufficient evidence presented by parent's counsel, given the student was provided specialized instruction and related services at Hamilton, that the student was denied FAPE. The student's IEP

should be reviewed and revised based on current evaluations and the appropriate placement then determined by a MDT.

*Id.* at 11.  While Ms. Jalloh had the burden of proving that R.H.'s placement at Hamilton was inappropriate, she presented no evidence in support of this claim, leaving the Hearing Officer to find that she had not proven her claim.  *Id.*  The Court agrees.

### F.  DCPS Failure to Perform Speech/Language Evaluation

Ms. Jalloh contends that DCPS failed to perform a speech/language evaluation of R.H., an evaluation that it determined was necessary at the June 16, 2004 MDT/IEP meeting.  Even though the Hearing Officer ordered that this evaluation be completed, *see* A.R. at 12, Ms. Jalloh alleges that this was an insufficient remedy, and she requests that "the MDT convene to determine [an] appropriate compensatory education."  Pl.'s Reply at 20.  The Hearing Officer already ordered an MDT meeting to determine an appropriate compensatory education if warranted:

> DCPS shall, within fifteen (10) [sic] school days of the completion or receipt of the above listed evaluations convene a multi-disciplinary team/individualized educational program (MDT/IEP) meeting to review the student's evaluations, review and revise the student's IEP, discuss and determine placement, and discuss compensatory education and develop a compensatory education plan if warranted.

A.R. at 12.  Accordingly, Ms. Jalloh's request is moot.

### IV.  CONCLUSION

For the reasons explained above, Plaintiff's motion for summary judgment [Dkt. #10] will be denied and Defendant's cross motion for summary judgment [Dkt. #12] will be granted.  The HOD will be affirmed.  A memorializing order accompanies this Memorandum Opinion.

Date: February 12, 2008                                   _____/s/_____
                                                          ROSEMARY M. COLLYER
                                                          United States District Judge