THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ETTA JALLOH,<br>      **Plaintiff,**<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>      **Defendant.** | Civil Action No. 07-63 RMC |

## PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

Plaintiff Etta Jalloh, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, hereby respectfully moves the Court to amend the February 12, 2008 memorandum opinion. Specifically, the Plaintiff requests that the Court find that the Plaintiff properly requested access to R.H.'s educational records, and that the District of Columbia Public Schools improperly denied access to those records.

Because Ms. Jalloh's requests were properly executed under procedures established by the IDEA and its implementing regulations, the Plaintiff respectfully requests the Court to grant her appropriate relief for DCPS' failure to provide access to R.H.'s educational records and in support submits the attached memorandum. {substantial changes, obviously}

               Respectfully submitted,

               /s/_____
               Douglas Tyrka, #467500
               Tyrka & Associates, LLC
               1726 Connecticut Ave. NW, Suite 400
               Washington, DC  20009
               (ph) (202) 265-4260
               (f) (202) 265-4264

tyrka@tyrkalaw.com

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
**ETTA JALLOH,**   )
        **Plaintiff,**   )
)   Civil Action No. 07-63
**v.**   )   RMC
)
**DISTRICT OF COLUMBIA,**   )
        **Defendant.**   )
_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

On January 11, 2007, the Plaintiff filed her Complaint in this case. In the Complaint, the Plaintiff alleged that the Defendant had violated the IDEA and denied her child R.H. free appropriate public education ("FAPE") by, *inter alia*, "failing to provide R.H. with necessary specialized instruction and related services since June 16, 2004 [and] failing to provide R.H. with an appropriate educational placement since June 16, 2004[.]" Compl. ¶ 1.

At the September 29, 2006 administrative hearing regarding these same claims, as well as before this Court, the Plaintiff contended that the District of Columbia Public Schools ("DCPS") had failed to provide access to R.H.'s educational records and requested an appropriate remedy for that failure.

In the Court's February 12, 2008 memorandum opinion, the Court concludes that Plaintiff's counsel failed "to follow the correct procedures to obtain records" and that "the hearing officer correctly concluded that he could not find that DCPS denied R.H. a FAPE based solely on the absence of records." Memorandum Opinion at 10, 12.

I.   THE COURT HAS NOT ADDRESSED THE PLAINTIFF'S CLAIM THAT DCPS FAILED FULLY TO INCLUDE HER IN DECISIONMAKING WHEN IT REFUSED TO CHANGE THE PLACEMENT IN JULY 2006

{check record re August 2006 meeting to see how strong this arg is – can she just say that August 2006 meeting made up for deficiencies of PN?}

In her Motion, the Plaintiff argued that DCPS' violated procedure regarding parent participation both when it initially placed R.H. at Hamilton and years later when it refused to change his placement. {cite} In the Opinion, the Court has addressed only the procedure regarding the initial placement.

In her Motion, the Plaintiff cited the law that an LEA must issue a prior notice whenever it proposes to change or "refuses to initiate or change...the...educational placement of the child." 20 U.S.C. § 1415(b)(3). After addressing the procedural inadequacies of DCPS' initial placement of R.H. at Hamilton, the Plaintiff argued that "DCPS' procedural violations at the July 2006 meeting, when it refused Ms. Jalloh's request for a new placement, were far worse." {cite}

In the Opinion, the Court found that, though DCPS' Prior Notice regarding its initial placement of R.H. was deficient, the necessary information was provided to Ms. Jalloh at the June 2004 meeting. However, the Opinion is silent regarding the Plaintiff's complaints regarding DCPS' failure to explain its refusal to change the placement in 2006.

The Court appears to have had significant concerns regarding the July 2006 meeting, at which Ms. Jalloh requested a placement change: "[T]he student's teacher from the prior year, who would be expected to know most about R.H.'s progress, was away on vacation and not in attendance; those in attendance had no records or documentation with them[.]"

Because DCPS failed to serve a Prior Notice regarding its refusal to change R.H.'s placement in July 2006, and because it did not provide any of that information in any other form, the Court should rule that DCPS effectively failed to include Ms. Jalloh in the decision of whether to change the placement, and should hold that the continuation of the placement at Hamilton after July 2006 was inappropriate. See Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206-07 (1982)**;** Amanda J. v. Clark County Sch. Dist., 267 F. 3d 877, 892 (9th Cir. 2001).


II.   THE DOCUMENTED DECLINE IN R.H.'S ACADEMIC SKILLS PROVES THAT HAMILTON WAS AN INAPPROPRIATE PLACEMENT

In her Motion, the Plaintiff reviewed the stagnation and decline in R.H.'s skills during his time at Hamilton, as documented by DCPS' own evaluations.[1] {cite} The Defendant did not dispute that R.H. had declined. {cite}

---

[1] These evaluations were not disclosed at the administrative hearing, but were attached to the Defendant's Amended Answer to the Complaint in this case. As the Court is aware, the Plaintiff has argued that she repeatedly, properly requested access to records such as these prior to the administrative hearing. Regardless, the Court is authorized to "hear additional evidence at the request of a party" in this case. 20 U.S.C. § 1415(i)(2)(C)(ii).

3

In its Opinion, the Court did not address the findings of these evaluations. The Court should reconsider, find that R.H.'s academic skills declined during his time at Hamilton, and find that Hamilton was and is not an appropriate placement.

### III. THE PLAINTIFF FOLLOWED PROPER PROCEDURES AND TWICE ATTEMPTED TO OBTAIN ACCESSS TO R.H.'S EDUCATIONAL RECORDS, IN PERSON AT HAMILTON

In July 2006, before the Plaintiff had filed her administrative complaint, the Student Hearing Office SOPs did not yet apply,[2] so Federal and District of Columbia Regulations governed access to school records.

> Each participating agency must permit parents to inspect and review any education records relating to their children that are collected, maintained, or used by the agency under this part. The agency must comply with a request without unnecessary delay and before any meeting regarding an IEP, or any hearing pursuant to § 300.507 or §§ 300.530 through 300.532, or resolution session pursuant to § 300.510, and in no case more than 45 days after the request has been made.

34 C.F.R. § 300.613(a) {are the D.C. regs. identical?}

As the Court has found, "At the July [19], 2006 IEP meeting, [the Plaintiff] asked for report cards and progress reports from DCPS." Memorandum Opinion at 11. Contrary to the implication of the HOD, the July 2006 meeting occurred at Hamilton, so that was a request for records made in person at the site at which the records were held. {cite}

Nothing in the regulations suggests that a parent must do anything more than make the initial request but Ms. Jalloh did. As the Court has found, at the August 2006 meeting, "Ms. Jalloh's education advocate continued to complain about the failure of

---

[2] SOPs of the Student Hearing Office have no relevance before a complaint has been filed with that office.

4

DCPS to produce records." Memorandum Opinion at 4; see Exhibit 1.[3] Again, the August 2006 meeting was held at Hamilton. {cite}

In response to those requests, DCPS refused to produce anything for use at the meetings, but promised that "[a]ll requested items will be faxed to Ms. Millis on 202 265 4264 Fax." R. at 67.

{more about history after that – was our request after we got the docs from them, and what did we get, and fact that they didn't indicate that anything else was needed – see Keith's testimony in the record}

In the Opinion, the Court faults the Plaintiff for failing to follow up after the July 2006 access request "by going to Hamilton where the records were located to achieve that access." It is not clear that the Court understood that both the July 2006 and August 2006 meetings occurred at Hamilton. The Plaintiff most certainly went to Hamilton and requested access in August 2006, after her initial request in July 2006. See Exhibit 1.[4]

The Hamilton staff apparently understood Ms. Jalloh to have requested access, and took no issue with the manner in which she had done so. To the contrary, they specifically promised to provide the records by fax. See R. at 67 ("All requested items will be faxed to Ms. Millis.").

{something here like, "Unfortunately, they didn't do it," possibly with a FN about the fact that we don't know whether they withheld or they didn't have them, but either way it's on them}

---

[3] At the hearing, neither the Hearing Officer nor DCPS counsel questioned the assertion that Ms. Millis had requested records during each of the meetings, so there was no call to present Ms. Millis' testimony on that point. See R. at 188-89; 195-96.
[4] See footnote 3, supra.

### IV. THE DEFENDANT SHOULD BEAR THE BURDEN OF ESTABLISHING THAT THE PLAINTIFF WAS NOT PREJUDICED BY DCPS' DEFICIENT RESPONSE

The Court found DCPS' Response to the administrative complaint wholly inadequate, and noted that "it is no small matter when a response fails to convey its obligatory information." Memorandum Opinion at 8-9. However, the Court rejected the Plaintiff's argument for relief because it found that "Ms. Jalloh has not proffered the least bit of evidence that the abbreviated Response from DCPS prejudiced her in any way." Memorandum Opinion at 10.

Because a response must provide a petitioner with information the petitioner might not otherwise have, it is not always possible for a petitioner to establish prejudice from a deficient response. For that reason, the Court should place the burden on the Defendant to establish the absence of prejudice.

Recently, the United States Court of Appeals for the Federal Circuit addressed a very closely analogous situation in a veterans claims case, and held that prejudice is presumed when the agency fails to provide required pre-hearing notice to a petitioner. Sanders v. Nicholson, 487 F.3d 881 (Fed. Cir. 2007).

At issue in Sanders was a provision in the Veterans Claims Assistance Act ("VCAA") that requires the Department of Veterans Affairs ("VA") to provide to a benefits applicant detailed notice of the information that is needed to substantiate the claim for benefits. See 487 F.3d at 885-886, citing 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b)(1).

Respectfully submitted,

/s/_____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264
tyrka@tyrkalaw.com

6

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ETTA JALLOH )
 )
 Plaintiff, )
 )
v. ) Civil Action No. 07-63 (RMC)
 )
DISTRICT OF COLUMBIA )
 )
 Defendant. )
 )

## VERIFIED STATEMENT OF SHARON MILLIS

1) I am over 18 years of age and competent to testify regarding the matters described herein.

2) I currently work as an independent special education advocate and expert with over 36 years of experience, including 12 years as a compliance monitor for DCPS, and I have participated in literally thousands of IEP meetings.[1]

3) I represent Etta Jalloh and R.H. as a special education advocate.

4) I attended multidisciplinary team ("MDT") meetings for Ms. Jalloh and R.H. on July 19, 2006 and August 31, 2006, each at the Hamilton Center.

5) At both of those meetings, I took handwritten notes regarding the proceedings.

6) My handwritten notes do not represent the totality of what occurred at the July 19, 2006 and August 31, 2006 MDT meetings, but rather are a brief outline of the discussions which occurred.

7) During both the July 19, 2006 and August 31, 2006 MDT meetings, I requested Mr. Chuck Ugoji to allow me to see records of R.H.'s educational progress, including

---

[1] See attached resume.

recent evaluations, progress reports, IEP report cards, encounter tracking forms, and other related documents.

8) At neither the July 19, 2006 nor August 31, 2006 MDT meetings were those records made available to me.

9) At no time subsequent to my requests did any District of Columbia Public Schools employee suggest a suitable time and place at which I could view R.H.'s educational records.

10) At no time subsequent to my requests did any District of Columbia Public Schools employee provide me with any copies of those records.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 2/26/08

Sharon Millis

*Sharon L. Millis*
11666 Cygnet Drive
Waldorf, Maryland 20601
(301) 870-6474

---

**Areas of Expertise**

- Special Education Advocacy for Students with Disabilities
- Special Education Advocacy for Parents/Guardians of Students with Disabilities
- Expert Testimony in Special Education in Federal Court in Washington, DC and Maryland
- Expert Testimony in Special Education in Superior Court in Washington, DC
- Expert Testimony in Due Process Hearings
- Parent Training for IEPs, programming, evaluations and placement
- Individualized Education Program (IEP) construction, Teacher and Related Service Provider developmental training, writing and implementation
- School Program Observation and evaluation for adequacy and appropriateness
- Student Observation and evaluation for progress, placement and programming
- Public, Private and Residential School/Program Special Education Compliance Monitoring for IDEIA, State Standards (DC, MD & VA) and Municipal Regulations
- Public, Private and Special Education School/Program Evaluation
- Collection, Organization and Analysis of Special Education School/Program Data to determine degree of School/Program Compliance and Student Progress regarding implementation of IEPs and placement
- Review and Analysis of Student evaluations and educational records
- Observation and Analysis of Special Education Placements in order to determine appropriateness for Clients
- Special Education Curriculum Development and Staff Training in IEPs, developing and implementing academic and behavioral programs and special needs accommodations
- Observation and Analysis of Therapeutic Models for Special Needs Students
- Administrative, Teacher and Related Service Provider Technical Assistance/Instructional Support in Special Education
- Special Education Workshop Development and Presentation in IEPs, placement, program implementation and special needs accommodations
- School-Based Classroom Instruction
- Seriously Emotionally Disturbed Classroom Instruction
- Learning Disabled Classroom Instruction
- Administrative Debriefing regarding program implementation, program evaluation and student progress
- Federal, State and Local Special Education Policy and Procedure Development
- Special Education Teacher Mentoring and Training
- Inclusion Consultant for Special Education and General Education Classrooms and Staff
- Administrative and Volunteer Training for Compliance Monitoring
- Child Count Monitoring
- Dissemination, Analysis, Follow-up and Corrective Action Responses to Data collected from Special Education Programs and application to Program Evaluation and Student Progress

| | |
|---|---|
| **Experience** | 1998 – Present (Washington, DC and Maryland)<br>Independent Special Education Advocate/Expert for Special Education Attorneys/Courts/Parents |
| | 1997 - 1998 (Washington, DC)   Moten Elementary School<br>Acting Director for P.A.C.E & Acting Assistant Principal<br>Directed Special Education Program for ED students requiring separate, full time therapeutic setting |
| | 1986 - 1997 (Washington, DC)   Office of Corporate & Community Relations, DCPS<br>SEA/LEA Special Education Compliance Monitor and Program Evaluator |
| | 1992 - 1993 (Washington, DC)   DC Department of Human Services<br>Educational Assessor, Therapeutic Counselor and Early Childhood Language Facilitator, Chapter I Summer Enrichment Program |
| **Education** | Ongoing classes and workshops in Special Education and Related Areas to maintain current certifications |
| | 1999 Completion of coursework for PhD in Administration and Training in Special Education, George Washington University, Washington, DC |
| | 1997 Completion of LEAD Emerging Leaders Administrative Program, District of Columbia Public Schools, Washington, DC |
| | 1997 Completion of NASSP administrative assessment and acceptance process, District of Columbia Public School, Washington, DC |
| | 1972 M.Ed Special Education of the Seriously Emotionally Disturbed (Cum Laude)  Loyola College, Baltimore, Maryland |
| | 1970 B.S. Elementary Education, DePaul University (Cum Laude) Chicago, Illinois |
| **Certifications** | District of Columbia Teaching Certification, Non-Categorical Special Education K - 12 |
| | District of Columbia Administrative Certification |
| | Recertification for Teaching K- 12, State of Maryland |
| **Publications** | 1979 - District of Columbia Officer Friendly Curriculum Program Guide, Elementary Division. |

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ETTA JALLOH,<br>      Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>      Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 07-63<br>) RMC<br>)<br>)<br>)<br>) |

**ORDER**

In consideration of the Plaintiff's Motion for Summary Judgment and any opposition thereto, it is hereby

ORDERED, that the Plaintiff's Motion is granted, and further

DECLARED, that the District of Columbia Public Schools violated the IDEA and denied R.H. free appropriate public education by failing to perform a speech and language evaluation since June 16, 2004, failing to provide R.H. with necessary specialized instruction and related services since June 16, 2004, and failing to provide R.H. with an appropriate school placement since June 16, 2004;

ORDERED, that DCPS shall fund R.H.'s placement at Rock Creek Academy, with transportation; and further

ORDERED, that DCPS shall convene a multidisciplinary team meeting within thirty days of R.H.'s enrollment at Rock Creek Academy, and at that meeting shall review all current evaluations, revise R.H.'s IEP as appropriate, and develop a compensatory education plan to compensate R.H. for the violations and denials identified in this Order.

                                                       _____
Judge Rosemary M. Collyer
United States District Court Judge

2